IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 14-1317-SLR |
| | ) (consolidated) |
| SANOFI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

At Wilmington this 7th day of March, 2016, having reviewed yet another round of

evidentiary disputes presented by the parties to the above litigation;

IT IS ORDERED that:

1. **Defendants' evidentiary issues 10-11.** Defendants seek to preclude

Amgen from referring to "post-priority date, non-prior art antibodies and fragments to

rebut [d]efendants' obviousness defense." (D.I. 254 at 1) In support of their position,

defendants state that the court "has already ruled that post-priority date antibodies

cannot be used as evidence of pre-priority motivation," and that the parties have "also

agreed that post-priority evidence cannot be used as evidence related to reasonable

expectation of success." (*Id.*) According to defendants, "[t]he converse should also

apply, namely that Amgen cannot rely on post-priority date evidence to rebut

motivation." (*Id.*)

2. Plaintiffs counter that defendants have based their obviousness case on the

Novartis and Schering PCT applications and their expert's opinion that "the PCT applications' dislcosures create motivation and an expectation of success in developing the patent antibodies - stating **sixteen times** in his expert report that the techniques disclosed would 'inevitably' lead to the Amgen patents." (D.I. 259 at 1) (emphasis in original)  The real world evidence, however, is that "the Novartis team of skilled scientists, following the supposed 'obvious' pathway to Amgen's antibodies, in fact developed a different antibody outside the scope of Amgen's claims." (*Id.*)

3.  Although it remains difficult to draw reasonable evidentiary lines in this litigation and stick to them, I conclude with respect to this particular evidentiary dispute that plaintiffs may use the real world facts as impeachment of Dr. Ravetch and his theory of inevitability, as opposed to independent evidence of nonobviousness; i.e., no extrinsic evidence of the Novartis efforts will be admitted.[1]  To the extent documents are admitted, they are admitted for all purposes consistent with the way the case was pre-tried, as explained below.

4.  **Defendants' evidentiary issues 12-13.**  I agree with defendants that plaintiffs' experts are limited to the scope of their expert reports vis a vis secondary considerations of non-obviousness.  Consistent with the above, plaintiffs' experts may not discuss the Novartis and Schering applications absent consent from the court

---

[1] Unless Dr. Ravetch denies plaintiffs' facts and I have satisfied myself that those facts are true.

based on the specific context of how the obviousness issues have been presented.

5. **Dr. Stahl's proffer.** Dr. Stahl will **not** be permitted to testify during the liability phase of the trial. His proffered testimony is that of an expert witness, not a fact witness, and the content of such testimony - particularly what was known to Regeneron during the development of Praluent® - is not relevant to the sole issue presented by defendants, that of obviousness based on two prior art references. The wide-ranging proffer will unfairly prejudice plaintiffs, and confuse and mislead the jury.[2]  Defendants' corporate representative will be introducing the companies and their product generally.

United States District Judge

---

[2]The court, however, may revisit this issue if plaintiffs, during the liability phase of the trial, introduce evidence of, e.g., copying, an issue mentioned by defendants' counsel and one that has no relevance to this phase of the trial.

3