IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., AMGEN MANUFACTURING, LIMITED, and AMGEN USA INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

C.A. No. 1:14-01317-RGA
(CONSOLIDATED)

## JOINT STATUS REPORT

Pursuant to the Court's Oral Order (D.I. 436) dated March 5, 2018, Plaintiffs Amgen Inc.,

Amgen Manufacturing, Limited, and Amgen USA Inc. ("Plaintiffs" or "Amgen") and

Defendants Sanofi, Sanofi-Aventis U.S. LLC, Aventisub LLC, f/d/b/a Aventis Pharmaceuticals

Inc., and Regeneron Pharmaceuticals, Inc., ("Defendants"; together with Plaintiffs, "the parties")

submit this joint status report and their respective proposed schedules, attached as Exhibit A

(Amgen's Proposed Case Schedule) and Exhibit B (Defendants' Proposed Case Schedule).

Counsel for the parties participated in a telephone conference pursuant to the Court's

Oral Order on March 7, 2018.  Melanie K. Sharp and James L. Higgins of Young Conaway

Stargatt & Taylor, LLP, William G. Gaede, III, of McDermott Will & Emery LLP, and Keith R.

Hummel of Cravath Swaine & Moore LLP participated on behalf of Amgen.  David E. Wilks

and Scott B. Czerwonka of Wilks Lukoff & Bracegirdle, LLC participated on behalf of

Defendants.  The parties have set out their separate positions below, supporting their

significantly divergent views on how the case should proceed.

01:22973396.1

During the meet and confer, counsel agreed to jointly request a scheduling conference at the earliest convenience of the Court.

## I.    PROCEDURAL HISTORY.

### PLAINTIFFS' STATEMENT

Amgen initiated this patent litigation in October 2014, accusing Defendants' product, Praluent, of infringing several of Amgen's patents.[1]  Recognizing the importance of resolving the case on a full record instead of "having kind of a glimpse of the record through a preliminary injunction process," the Court encouraged, and both parties expressed a preference for, an accelerated schedule toward a trial on a full record in lieu of a preliminary injunction. (D.I. 409 at 12:25-13:7, 16:11-13, 16:25-17:4)  In April 2015, the Court scheduled trial to commence in March 2016.  (D.I. 410 at 29:23-30:24)  The FDA approved Praluent in July 2015, and Defendants then immediately launched the product at risk.

On November 3, 2015, pursuant to Judge Robinson's direction, Amgen selected eight claims to be tried.  (D.I. 161)  On February 22, 2016, Defendants stipulated that Praluent infringes the eight claims that Amgen had selected for trial.[2]  (D.I. 235)  Before trial, Amgen filed a *Daubert* motion to exclude expert testimony regarding PCSK9 antibodies developed after the priority date by Regeneron and other third parties.  (D.I. 191)  Defendants filed a *Daubert* motion to exclude expert testimony that relied on evidence generated after the priority date to demonstrate the structure of the antibodies that were disclosed in the selected patents.  (D.I. 185)

---

[1] A detailed background of the litigation is included in the parties' joint Pretrial Order filed on February 15, 2016. (D.I. 215 at p. 1-7).

[2] The eight infringed claims are claims 2, 7, 9, 15, 19, and 29 of U.S. Patent No. 8,829,165; claim 7 of U.S. Patent No. 8,859,741; and claim 24 of U.S. Patent No. 8,871,914.  Amgen further narrowed its case before trial, and claim 24 of the '914 was not tried.

On February 18, 2016, Judge Robinson granted both of these *Daubert* motions (D.I. 226 at 4–5), and declined to alter her decision after Defendants' moved for reargument (D.I. 249 at 4).

During the course of the litigation, Judge Robinson resolved numerous discovery disputes, including denying Defendants' request for discovery relating to post-priority date antibodies. (D.I. 88.) Defendants challenged none of Judge Robinson's discovery rulings on appeal, and they now constitute the law of the case.

Trial commenced on March 8, 2016, on the issues of obviousness, written description, enablement, and damages (including for willful infringement). During trial, the Court granted Amgen's motion for judgment as a matter of law of non-obviousness. (D.I. 345 at 1076-1077) The jury returned a verdict on March 15, 2016, in Amgen's favor on written description and enablement. (D.I. 304) Before the damages phase began, Judge Robinson granted Defendants' motion for judgment as a matter of law of no willful infringement, applying the now-abrogated *Seagate* standard (D.I. 302), and the damages issues that would have been put to the same jury were resolved by agreement of the parties. The Court held a two day permanent injunction hearing on March 23 and 24, 2016, followed by post-trial and post-hearing briefing.

On January 3, 2017, Judge Robinson issued a memorandum opinion that denied Defendants' motions for a new trial and for judgment as a matter of law on written description and enablement. (D.I. 389, 391) On January 5, 2017, the Court granted Amgen's motion for a permanent injunction. (D.I. 392) Defendants filed their notice of appeal on January 12, 2017. (D.I. 402) On April 19, 2017, the Court entered an Amended Rule 54(b) Judgment (D.I. 427).

The Federal Circuit stayed the permanent injunction pending the outcome of the appeal. (App. Dkt. No. 59) On October 5, 2017, the Federal Circuit affirmed in part and reversed and remanded in part. *Amgen Inc. v. Sanofi, et al.*, 872 F.3d 1367, 1382 (Fed. Cir. 2017). In

connection with the written description analysis, the Federal Circuit held that it was "legal error for the district court to categorically preclude all of [Defendants'] post-priority-date evidence of Praluent and other antibodies" at trial. *Id*. at 1375. The Federal Circuit added, with respect to enablement, that "[s]uch [post-priority-date] evidence could have been relevant to determining if the claims were enabled as of the priority date and should not have been excluded simply because it post-dated the claims' priority date." *Id.* The Federal Circuit also held that "it was improper for the district court to instruct the jury as it did" with respect to the "newly characterized antigen" test. *Id.* at 1378–79. The Federal Circuit also held that Defendants were not entitled to JMOL of no written description and no enablement, and that "the district court's grant of [Amgen's] motion seeking JMOL of non-obviousness was proper." *Id.* at 1379–80. The Federal Circuit vacated the injunction, and remanded for a new trial on written description and enablement. *Id.* at 1381–82.

## DEFENDANTS' STATEMENT

### A.    Introduction

This is a patent dispute between innovators who independently discovered different antibodies with different chemical structures. Both antibodies reduce cholesterol by targeting a protein, PCSK9, that causes the destruction of liver cell receptors that extract LDL ("bad") cholesterol from the bloodstream. Both antibodies are FDA-approved—Defendants' is marketed under the name Praluent, and Amgen's as Repatha. Defendants patented Praluent by claiming its amino acid sequence, the long-accepted way to claim a protein. Amgen also patented Repatha by claiming its (substantially different) amino acid sequence. But years later—after making and testing Defendants' Praluent, and in an attempt to corner the market on PCSK9 inhibitors—Amgen sought and obtained two additional patents that broadly claim *all* antibodies that perform

a particular function: binding to specific amino acids on PCSK9 and blocking PCSK9 from binding to LDL receptors. Those are the patents at issue in this case.

### B.     The Prior District Court Proceedings

In October 2014, Amgen sued Defendants for patent infringement. Defendants stipulated to infringement of Amgen's broad, functional claims but challenged their validity on written description, enablement, and obviousness grounds. In February 2015, Amgen proposed, and the Court agreed, to forgo preliminary injunction proceedings in exchange for an expedited trial in early 2016. (*See* Feb. 24, 2015 Conference Tr. at 9:1-18, 11:17-12:3.) Given that aggressive timetable, the Court required the parties to argue their legal disputes either through truncated letter briefs or *Daubert* motions decided shortly before trial. (*See, e.g.*, Dkt. 49; 191; 250.) That approach proved to be ill-advised; the Court later acknowledged that it was "struggling" with the issues (Mar. 11, 2016 Trial Tr. 846:21), and it observed that the case "could have benefited from a summary judgment practice." (Mar. 14, 2016 Trial Tr. 1076:9-15.)

In particular, the aggressive timetable and limited briefing led the District Court to render incorrect rulings on multiple critical issues. Most significant, the District Court repeatedly held that evidence regarding antibodies developed after the patents' priority date of January 9, 2008 was irrelevant to Defendants' written description and enablement defenses. (Dkt. 88, ¶ 2; 226; 249.) Under Federal Circuit law, for Amgen's functional genus claims to satisfy the written description requirement of 35 U.S.C. §112, its patents must disclose "either a representative number of species falling within the scope of the genus or structural features common to the members of the genus" such that "one of skill in the art can 'visualize or recognize' the members of the genus." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010) (en banc). And to satisfy the enablement requirement, Amgen's patents must "teach those skilled in

the art how to make and use the full scope of the claimed invention 'without undue experimentation.'" *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997). To demonstrate lack of written description, Defendants intended to show that Praluent and many other anti-PCSK9 antibodies developed after the priority date—including those developed by Amgen and third parties—are encompassed by the claimed genus but are starkly different in structure from (or otherwise unrepresentative of) the two antibodies described in Amgen's patents.  And to demonstrate lack of enablement, Defendants intended to show that even years after the priority date, Amgen was forced to continue its previous trial-and-error search to find antibodies falling within its claimed genus.

To those ends, Defendants sought discovery of, *inter alia*, antibodies developed by Amgen after the priority date.  When Amgen refused, Defendants sought relief from the Court, which requested two-page letter briefs from each side.  In their letter, Defendants argued that the information they sought was "directly relevant" to, *inter alia*, the written description defense. (Dkt. 73.)  Amgen argued that "the case law is clear that technology arising after the filing date of a patent is not relevant to written description."  (Dkt. 72.)  Amgen repeatedly contended that the requested information was "not relevant" and discovery would not "lead to the discovery of any relevant or admissible information."  (*Id.*)  In a one-sentence order, the Court sided with Amgen on this issue and denied Defendants access to Amgen's post-priority-date antibodies. (*See* Dkt. 88, ¶ 2.)

Shortly before trial, Amgen filed a *Daubert* motion for an order "that Defendants may not make any arguments, elicit any testimony, or introduce any evidence at trial of post-priority date antibodies" to demonstrate invalidity.  (Dkt. 191.)  In support, Amgen made the exact same argument that it made in its letter brief addressing discovery of that same information—*viz.*, that

"post-priority date antibodies are irrelevant as a matter of law"—and cited largely the same decisions that it cited in the previous letter brief.  (Dkt. 192 (capitalization altered).)  And, again, the District Court sided with Amgen.  (Dkt. 226.)  Defendants then moved for reargument.  In opposition, citing the same cases, Amgen reiterated its same argument from its earlier briefing: "[D]efendants' position that post-priority date, infringing antibodies are relevant" is "contrary to the established case law."  (Dkt. 233 at 1.)  Yet again, the Court sided with Amgen and "preclud[ed] the admission of any post-priority date evidence."[3]  (Dkt. 249 at 4.)

The jury rejected Defendants' invalidity defenses and entered a verdict for Amgen.  (Dkt. 392 at 2.)  After denying Defendants' motions for new trial and judgment as a matter of law (Dkt. 390), the Court then entered a permanent injunction barring the manufacture and sale of Praluent, despite finding that an injunction would disserve the public interest.  (Dkt. 392.)

## C.      The Federal Circuit's Decision

Defendants filed a notice of appeal to the Federal Circuit, appealing the final judgment "and all orders antecedent to that judgment."  (Dkt. 402.)  Defendants sought a stay of the injunction, which the Federal Circuit granted.  (App. Dkt. No. 59.)

Before the Federal Circuit, the first and principal issue for review concerned whether post-priority-date evidence of antibodies is irrelevant, as the District Court had held three times. As it did before the District Court, and citing essentially the same cases, Amgen argued that such post-priority-date evidence "was irrelevant."  (App. Dkt. No. 120 at 34.)  Defendants contended that such evidence was "plainly relevant" to its written description and enablement defenses. (App. Dkt. No. 130 at 3.)

---

[3]     The *Daubert* motion and reargument motion focused on written description, but the Court subsequently extended its ruling to enablement.  (Mar. 11, 2016 Trial Tr. 843:8-854:22.)

The Federal Circuit rejected Amgen's (and the District Court's) position and ruled in favor of Defendants on this issue. *See generally Amgen Inc. v. Sanofi*, 872 F.3d 1367 (Fed. Cir. 2017). As the Federal Circuit put it, the District Court's conclusion that post-priority-date antibody evidence is "not relevant 'to determine whether there is sufficient disclosure of the claimed invention'" was "based on a misapplication of the law." *Id*. at 1373. The Federal Circuit squarely held that such evidence "is relevant to the representativeness question," *i.e.*, written description, and also is "relevant to determining if the claims were enabled." *Id.* at 1374, 1375.

The Federal Circuit also held that the District Court's "newly-characterized antigen" jury instruction was "not legally sound,"[4] and that the District Court's entry of the permanent injunction was a "clear violation of" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *Amgen*, 872 F.3d at 1375-79, 1380-81.[5]

Amgen petitioned for rehearing *en banc*. (App. Dkt. No. 163.) In its petition, Amgen acknowledged that the panel had "held" that "embodiments discovered after the priority date . . . are relevant to whether the patentee met the Court's written-description requirement." (*Id.* at 2.) And it acknowledged that the panel had also "held" that "Amgen's post-priority-date efforts to develop new embodiments are . . . relevant to 'undue experimentation,'" which is the "test for enablement." (*Id.* at 14-15.) In short, Amgen conceded that "[u]nder the panel decision, [post-

---

[4]    In response to this ruling, the U.S. Patent Office recently issued a memorandum to patent examiners citing the appellate decision in this case as the basis for clarifying that the "newly-characterized antigen" test was not a proper test for written description support for an antibody claim. *See* http://bit.ly/2tAq4tw.

[5]    Defendants also appealed the District Court's grant of judgment as a matter of law to Amgen on Defendants' obviousness defense. Although the Federal Circuit affirmed the Court on that issue, *see* 872 F.3d at 1379-80, the same issue is currently before the Federal Circuit on a request for rehearing *en banc* in *Ariosa Diagnostics, Inc. v. Illumina, Inc.*, Case Nos. 2016-2388, 2017-1020.

priority-date] embodiments are now relevant to invalidating the innovator's patent." (*Id.* at 16.) The Federal Circuit denied the petition. (App. Dkt. No. 178.)

## II.      CASE SCHEDULE AND PROCEEDINGS ON REMAND.

### <u>PLAINTIFFS' STATEMENT</u>

This patent litigation involves therapeutic anti-PCSK9 antibodies that reduce levels of LDL-cholesterol ("bad" cholesterol) in high-risk cardiovascular patients. Amgen's Repatha and Defendants' Praluent are the only PCSK9 antibodies approved by the FDA for lowering LDL-cholesterol. Amgen's Repatha is also FDA-approved to reduce the risk of cardiovascular events in adults with established cardiovascular disease. Both products reduce cholesterol by targeting a protein known as PCSK9.

Amgen filed suit in October 2014 to stop Praluent's infringement of several Amgen patents relating to PCSK9 antibodies. The case was fully litigated, with both parties taking extensive discovery, and the Court making numerous discovery and evidentiary rulings. Defendants stipulated on the eve of trial that Praluent infringed the seven patent claims tried. In March 2016, the jury returned a verdict that the claims were not invalid, and the Court subsequently granted Amgen a permanent injunction against Defendants' making, using, or selling Praluent in the United States, which was stayed pending appeal. On appeal, the Federal Circuit, in pertinent part, found that the Court had improperly "categorically" excluded certain evidence relating to Defendants' written description and enablement defenses. The Federal Circuit remanded the case for the limited purpose of retrying these defenses.

At issue here is the timing of the trial and injunction hearing on remand, pursuant to the narrow and specific Federal Circuit mandate. (D.I. 435-1 at 3) ("[W]e reverse-in-part and remand for a new trial on written description and enablement.") Amgen requests, and justice

requires, expeditious resolution of this three and a half year-old case. Defendants made a calculated decision to launch Praluent at risk nearly three years ago, and that launch and Defendants' subsequent actions in the market have been causing harm to Amgen ever since. Among the several harms from Defendants' conduct has been diminished patient access to Amgen's Repatha and continuing damage to Amgen's reputation, patent rights, and business model. For these reasons, Amgen has submitted a proposed schedule that puts this case on a path to be retried, subject to the Court's schedule, in a few months. (*See* Ex. A (Amgen's Proposed Case Schedule.)

Nothing stands in the way of the parties re-trying this case on the schedule Amgen proposes, if the Court's calendar can accommodate the request. The first jury trial and verdict followed full fact and expert discovery, and full opportunity for motion practice (including on discovery, *Daubert*, and evidentiary issues), all of which was conducted by large teams of experienced trial counsel. Dozens of disputes between the parties were addressed by Judge Robinson in numerous rulings, which were not appealed and are now the law of the case. The case is ready to be retried on the already fully-developed record.

Defendants' proposed schedule is unnecessarily protracted, resulting in a trial of this case no earlier than 388 days after remand. It is a remarkable schedule that assumes that the remand is an invitation to hit the reset button and "redo" the entire case. But the remand did not invite such delay. The Federal Circuit remanded this case for a retrial without the "categorical exclusion" of Defendants' *previously proffered* "post-priority date" evidence (*i.e.* evidence that was developed after the priority date of the patents-in-suit), not for Defendants to begin anew. What is needed now are rulings on what previously excluded evidence (which was fully explicated in the parties' expert reports) can be used during the retrial; some updating of the

damages and injunction record (which is built into Amgen's schedule); and then the retrial and permanent injunction hearing.  As the first trial occurred 16 months after Amgen filed its complaint, this case can and should be retried on the limited issues for remand in a few months.

Below, we discuss the remaining issues – other than the schedule – on which the parties disagree.

## A.    Liability Discovery

Fact discovery was completed on October 9, 2015, and expert discovery was completed on January 22, 2016.   The document productions between the parties, third party subpoenas and fact and expert reports and depositions involved vast amounts of both pre and post-priority date antibody evidence.  Defendants' quest to seek even *more* post-priority evidence should be precluded for several reasons.

First, as explained below, liability discovery is not warranted because Defendants already have had a full and fair opportunity to discover evidence of post-priority date antibodies – indeed, the *exclusion* of this evidence, long in Defendants' possession through discovery, formed the basis for the Federal Circuit's reversal of the jury verdict.

Second, the Court has previously observed that remand is not an invitation to redo discovery.  *See E.I. DuPont de Nemours & Co. v. Philips Petroleum Co.*, 711 F.Supp. 1205, 1212 n. 24 (D. Del. 1989) ("Ordinarily, a case is not remanded by an appellate court to give a party an opportunity to supplement the evidence presented at trial.").  Defendants' proposed schedule contemplates just such a redo in the form of a full round of new discovery.

Third, the mandate rule precludes Defendants from seeking additional post-priority date evidence because the Court previously denied it and Defendants did not appeal that ruling.

1.    <u>Defendants Appealed the Exclusion of Their Post-Priority Date Antibody Evidence and Have Possession of That Excluded Evidence</u>.

Defendants appealed an evidentiary ruling that was made pretrial, not a discovery ruling. Discovery is unnecessary to re-try the written description and enablement issues remanded by the Federal Circuit.

 The core of Defendants' appeal to the Federal Circuit was their contention that the Court had, in a pretrial ruling, improperly precluded them from presenting evidence at trial regarding "post-priority antibodies."[6]  Defendants already have this evidence – otherwise they could not have appealed this issue.  Indeed, the evidence was the subject of Defendants' proffers to the Court, comprising *179 pages*, and which were submitted to the Federal Circuit.  (D.I. 343 (Mar. 10, 2016) Tr. 573:4–21.).  That proffer was largely drawn from Defendants' expert reports and was the subject of expert depositions by both parties.  Defendants' experts opined on so much evidence relating to post-priority date antibodies that they could not have presented all of it even had it not been excluded.  As the Court noted:  "I just want the record to demonstrate that that detailed evidence would not have been presented at trial, because there's simply not the time to present it at trial."  (D.I. 343 (Mar. 10, 2016) Tr. 573:13–16.)  Allowing further discovery now would be beyond the scope of the information excluded by the Court on Amgen's *Daubert* motion, which was the subject of the case on appeal, now mandated for retrial by this Court.

 With respect to written description, post-priority date evidence is only relevant to Defendants' argument that the antibodies disclosed in the patent are not "representative" of the

---

[6]    Amgen argued that Defendants' experts should not be permitted to rely on post-priority date antibodies because both written description and enablement are decided as of the priority date of a patent.  Amgen moved to exclude Defendants' evidence of post-priority date antibodies in a *Daubert* motion (D.I. 191), which the Court granted.  (D.I. 226 at 4–5 (Feb. 18, 2016), reargument denied, D.I. 249.)  As a result, Defendants did not present their post-priority date antibody evidence to the jury.  Defendants appealed the *Daubert* ruling, and the Federal Circuit ruled that "[i]t was legal error for the district court to *categorically* preclude all of [Defendants'] post-priority-date evidence of Praluent and other antibodies."  *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017) (emphasis added).

antibodies covered by the patent claims to be tried.  As to enablement, the post-priority date evidence "could have been relevant" only to Defendants' contention that Amgen engaged in potentially undue experimentation to enable the full scope of the claims.  *Amgen*, 872 F.3d at 1375.  Defendants were fully prepared to use the discovered post-priority date evidence at trial, as is clear from their 179-page proffer on both written description and enablement.  (*See* Defs' Opening Appellate Br. 33; D.I. 343 (Mar. 10, 2016) Tr. 573:2–10; D.I. 345 (Mar. 14, 2016) Tr. 1088:20–1089:8.)  Re-opening discovery will delay resolution of this case while Defendants go in search of more, inevitably cumulative evidence.

      2.   <u>Defendants Already Have Extensive Discovery of Post-Priority Date Antibodies.</u>

Despite the fact that they already have the evidence they were prepared to present at trial (and that was excluded), Defendants have stated that they seek (i) additional discovery of Amgen's testing of post-priority-date antibodies and (ii) discovery of any PCSK9 antibodies, including third party antibodies, that were developed after Amgen's document collection during fact discovery.  The Court should decline Defendants' request to initiate an entire new round of discovery.

Defendants do not have a right to take discovery on remand.  The Federal Circuit did not order additional discovery.  "The Federal Circuit's failure to specifically direct the taking of additional evidence can, at most, be construed as leaving the matter to the sound discretion of this Court."  *DuPont*, 711 F.Supp. at 1209.  Here, allowing more discovery would unduly delay final resolution of this proceeding, would be cumulative of evidence already available to Defendants, and would be completely disproportional to the current needs of this remanded case.

Moreover, discovery on remand is not warranted because Defendants already have vast amounts of PCSK9 antibody evidence.  While not the subject of any current dispute, Defendants

have complete discovery regarding all antibodies disclosed in the patents.  Importantly, those produced documents also included information relating to Amgen's second and third generation PCSK9 antibody projects sufficient to show the important biological characteristics of Amgen's *post-priority date antibodies*, which is precisely the category of documents Defendants now seek.  This means that Defendants already have discovery on PCSK9 antibody development projects that Amgen undertook *after* the priority date of the patents in suit, including documents describing binding, blocking, and binning experiments of *PCSK9 antibodies that were not disclosed in the asserted patents*.

Amgen also produced thousands of pages about Defendants' post-priority antibody Praluent and third party post-priority date antibodies, including characterization of the very third-party antibodies upon which Defendants' experts relied to form their opinions.  Defendants also subpoenaed third parties on their post-priority date PCSK9 antibody programs, as well as discovered publicly available evidence on such antibodies.

Defendants had the opportunity to – and did – take deposition testimony from scientists and experts covering this broad swath of PCSK9 antibody work, including Amgen's own post-priority-date PCSK9 antibody development.

There would be no undue prejudice to Defendants if the Court were to conduct the retrial based on the extensive discovery already taken.  Defendants had "ample opportunity" to obtain and did obtain post-priority-date discovery, so much so, they did not even include all of what they had in their expert reports.  Any additional discovery would be "unreasonably cumulative or duplicative" of the post-priority-date evidence that Defendants already have obtained (as described above).  Fed. R. Civ. P. 26(b)(2); *see also Union Carbide Chems. & Plastic Tech. Corp. v. Shell Oil Co.*, 270 F.Supp.2d 519, 524 (D. Del. 2003).

As this Court has noted, remand is not an opportunity for the parties to supplement the record.  Allowing further discovery, particularly when Defendants did not use all the evidence already at their disposal in their expert reports and, as Judge Robinson observed, they could not have presented all of the evidence in their 179-page proffer, would be inconsistent with the mandate, disproportional to the needs of this case and would cause unnecessary delay.

3.   The Mandate Rule Precludes Further Discovery of Amgen.

The mandate rule bars a district court from reconsidering issues "actually decided" by the court but not challenged on appeal.  *See Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).  In July 2015, Defendants moved to compel Amgen's production of two types of additional post-priority-date discovery, "(1) information dated after August 22, 2008 related to PCSK9 antibody examples disclosed in the asserted patents, and (2) information related to testing of non-prior art [post-priority-date] PCSK9 antibodies."  (D.I. 73.)  On August 6, 2015, the Court granted Defendants' request for discovery relating to the antibodies disclosed in Amgen's patents, which Amgen then produced.  (D.I. 88.)  But the Court denied Defendants' request for discovery relating to post-priority-date antibodies.  (D.I. 88.)

Defendants did not appeal the Court's August 2015 discovery order, even though they had an opportunity to do so.  For this reason, they may not seek the same discovery on remand.  "An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived."  *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014); *see also Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1422 (3d Cir. 1991) ("[A]n order denying discovery may be reviewed on appeal from the final judgment.").

**B.   Fact Witnesses**

Amgen does not intend to call any liability fact witness who was not previously disclosed as a potential trial witness and subject to deposition.

### C.   Expert Witnesses

(1)   Amgen does not intend to present testimony from any liability expert witness who did not testify at the first trial.

(2)   Defendants' Proposed Replacement of Expert Dr. Donald Siegel

In addition to seeking to reopen liability document discovery, Defendants wish to replace their primary liability expert, Dr. Donald Siegel, by suggesting that he is "unavailable." Defendants also refuse to limit their proposed new expert's opinions to the scope of Dr. Siegel's disclosed opinions.  Amgen opposes the attempt to replace Dr. Siegel.

Defendants have not offered any evidence that Dr. Siegel's condition rises to the level of the unavailability that courts require for replacement of an expert on remand.[7]  Dr. Siegel's role in the remand is limited to offering the opinions that he has already disclosed and on which he was deposed.  This should not take longer than a day.

To the extent that Defendants seek to change or add to the expert opinions offered by Dr. Siegel, such a change is improper.  "[A]s a general rule, a retrial should not involve the addition of new issues, evidence or witnesses."  *Yong v. Nemours Foundation*, 432 F.Supp. 2d 439, 441 (D. Del. 2006) (refusing to allow plaintiffs to introduce a new expert to testify on new issues on retrial).  If the Court permits Defendants to substitute a new expert for Dr. Siegel, the rule

---

[7]   Defendants have stated that Dr. Siegel is unavailable because he is working essentially "4 fulltime jobs," even though the Court has not even set a date for when Dr. Siegel would be called to testify.  "[P]ressing time commitments" are insufficient for an expert witness to be considered "unavailable."  *See, e.g., Morales v. Palomar Health*, 2016 WL 3763070, at *1 (S.D. Cal. July 14, 2016) (holding that the expert's attempt to withdraw "is insufficient to overcome the prejudice to the [other party] and the Court's interest . . . in the speedy and inexpensive determination of the case.").

limiting that expert's testimony to the scope of the prior expert's disclosure should be applied

here.  In situations in which substitution of experts has been justified, *e.g.*, when a previous

expert has passed away*, see Apple v. Samsung*, 2013 WL 5737310, at *1 (N.D. Cal. Oct. 22,

2013)), district courts have limited the substitute expert's testimony to the scope of the prior

expert's disclosure.  *See id.*

### D.    Summary Judgment

Summary judgment motion practice on the disputed § 112 factual issues would not

advance this case.  It would only cause delay.  In light of the prior trial proceedings and the

Federal Circuit's ruling, there are no issues amenable to summary judgment in Defendants'

favor.  Amgen *prevailed* on the issues of written description and enablement in the first trial,

after Judge Robinson denied Defendants' motion for JMOL on these issues, and the Federal

Circuit affirmed that denial.  *Amgen v. Sanofi*, 872 F.3d 1367, 1379 (Fed. Cir. 2017) (declining

to conclude that "a reasonable jury would not have a legally sufficient evidentiary basis to find

for" Amgen).

 The post-priority date evidence upon which Defendants now wish to rely does not make

the case *more* suitable for summary resolution.  In fact, part of the reason the Court excluded this

evidence was the "complexity" of the case and the concern that the post-priority date evidence

would make the jury's role as factfinder more difficult.  (D.I. 226 at 4.)  Further, the Federal

Circuit's decision, while limiting retrial to only two liability issues, may increase the volume of

competing factual evidence the jury will have to consider on those issues; it did not in any way

create a path by which to resolve this case through summary disposition.  That this case must be

tried becomes even clearer when one appreciates that Amgen has extensive post-priority date

evidence of its own that will serve to rebut, point-by-point, the evidence Defendants present.

Finally, Defendants' arguments at the first trial were largely duplicative of the arguments they would have made with the excluded evidence in hand. This was a finding the Court made throughout trial when noting that Defendants' proffered post-priority date evidence would be "at best cumulative" to evidence already before the jury. (D.I. 342 (Mar. 9, 2016) Tr. 218:15–24.) Because Amgen prevailed at trial, summary judgment in favor of Defendants on remand is not conceivable and therefore the schedule should not be drawn out for needless and resource-intensive summary judgment briefing and hearing.

### E.    Injunction

The parties engaged in full injunction related discovery, briefing, and a two-day hearing. That record was supplemented in January 2017 when Defendants moved to stay the injunction. (D.I. 395; App. Dkt. 14.) Now, more than a year after the Court granted Amgen's permanent injunction motion, the circumstances warranting injunctive relief continue (although the severity of harm has worsened). Therefore, on remand, if Amgen prevails at the liability trial, it intends to renew its motion for a permanent injunction on the existing injunction record.

Should the Court desire, Amgen does not oppose supplemental briefing as well as supplemental declarations, both fact and expert, to aid the Court in considering Amgen's anticipated permanent injunction motion. Such supplementation should be limited  to injunction related evidence for the time period after the parties supplemented the record in January 2017. Both parties' proposed schedules also provide for an injunction hearing after the liability trial is completed.[8] There is simply no need for full blown expert reports and document productions.

---

[8]    Neither party intends to present testimony from any injunction expert witness who did not testify in the prior trial. Because of employment changes, the parties agree that they should be permitted to substitute certain injunction fact witnesses.

Amgen's suggested method for updating the injunction record using supplemental declarations is commonly used by district courts on remand.  *See, e.g.*, *Acumed LLC v. Stryker Corp.*, 2007 WL 4180682, at *1–2 (D. Or. Nov. 20, 2007) (granting plaintiff's motion for a permanent injunction on remand based on the existing trial transcript and supplemental declarations after an oral argument); *Apple v. Samsung*, No. 11-cv-01846, 2014 WL 976898, at *22–23 (N.D. Cal. Mar. 6, 2014); *see also Apple v. Samsung*, No. 11-cv-01846, ECF Nos. 2915, 2925.

By contrast, Defendants seek to re-litigate virtually all injunction issues on remand, suggesting that they intend to present evidence on "Praluent and Repatha safety, adverse events, and efficacy information, physician and patient preferences."  (Mar. 7, 2018 Letter from D. Wilks; *see also* Ex. B (Defs' Proposed Schedule).)  Amgen is troubled by Defendants' attempt to retread the same issues on remand, when they already had a chance to present them in March 2016.  The FDA already determined that both Praluent and Repatha are safe and efficacious to lower LDL, and both parties presented evidence on those subjects at the 2016 hearing.  The only differences now are that Amgen's Repatha was approved by the FDA in December 2017 to reduce the risk of cardiovascular events in adults after reviewing the results of Amgen's FOURIER clinical trial and that Defendants announced just this Saturday (March 10, 2018) positive topline results from their ODYSSEY clinical trial, also examining the reduction of risk of events, which has not yet been submitted to or reviewed by the FDA.  The Federal Circuit has recognized that "eliminating a choice of drugs is not, by itself, sufficient to disserve the public interest," rendering any evidence on physician and patient preferences irrelevant.  *See Amgen*, 872 F.3d at 1381; *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1343 (Fed. Cir. 2016).  There is no reason to revisit these issues.

### F.      Damages and Willfulness

Beyond updating the damages experts' prior calculations to account for recent sales and financial information, there is no need for further discovery on past damages.  Just before the March 2016 trial, the parties supplemented their prior damages documents which the experts used to update their final calculations.  This is precisely what the parties should do on remand.

There is no need to redo damages discovery.  Both parties will substitute certain damages fact witnesses solely due to changes in employment.  However, both parties can easily accommodate this change by taking short, targeted depositions.  Given the large size of the parties' respective trial teams, this can readily be managed.

Amgen's case includes a claim for willful infringement.  Even though the Court granted JMOL of no willful infringement against Amgen, that decision was based solely on the objective prong of the *Seagate* test, which has since been abrogated by the Supreme Court's *Halo* decision. Defendants' position is that willfulness is no longer appropriate for retrial because Amgen did not appeal Judge Robinson's JMOL.  But Defendants ignore that (i) the Federal Circuit would not have permitted a cross-appeal of the JMOL on damages because it would not have expanded the scope of the judgment in Amgen's favor, *see Aventis Pharma S.A. v. Hospira, Inc.*, 637 F.3d 1341, 1343 (Fed. Cir. 2011) (granting Sanofi-Aventis U.S., LLC's motion to dismiss improper cross-appeal), and (ii) the Amended Rule 54(b) Judgment deferred until after the appeal a determination of whether enhancement might be appropriate under *Halo*, (D.I. 427).  The parties agreed to resolve issues relating to past damages soon after the Court granted the JMOL and there was no damages award incorporated into the final judgment under Rule 54(b).  Appealing the JMOL would not have expanded the scope of judgment in Amgen's favor.

## DEFENDANTS' STATEMENT

Defendants respectfully submit that the numerous errors that occurred during the previous District Court proceedings were the unfortunate byproduct of the overly aggressive schedule that, at Amgen's urging, the Court adopted at the outset.  Indeed, by the end of the previous proceedings, even the Court expressed regret at the manner by which the proceedings had taken place.  Amgen nevertheless proposes essentially the same accelerated approach this time around, practically inviting a repeat of the mistakes of the past and presaging yet another appeal before the ink is barely dry on the Federal Circuit's last decision.  That approach has nothing to recommend it.  Instead, as Defendants set forth below, the Court should establish a schedule that reflects the complexities of this case, remains faithful to the Federal Circuit's decision, and accommodates the additional issues implicated by the Federal Circuit's vacatur of the previous judgment.  That schedule would include, among other things, the briefing of several threshold disputes; sufficient time to take additional but targeted fact and expert discovery; summary judgment briefing; and a seven-day trial, if needed.

### A.      Preliminary Motions

Defendants believe that there are two threshold disputes that require early resolution by the Court.  First, Defendants intend to move to reopen liability discovery for the limited purposes of obtaining the post-priority-date antibody information that Amgen previously withheld (on grounds that the Federal Circuit later rejected) and updated post-priority-date antibody evidence from third parties.  Second, Defendants intend to move to substitute an expert who has informed

Defendants that he is no longer available to participate in this matter.  Defendants' current understanding is that Amgen opposes these efforts.[9]

### (1)    Reopening Limited Discovery on Post-Priority-Date Evidence

As set forth above, when this case was previously in the District Court, Defendants sought discovery of post-priority-date antibody evidence from Amgen.  Although Defendants had access to their own PCSK9 research and some third party research, Amgen withheld from Defendants research on PCSK9 antibodies it developed after the priority date.  Amgen refused on grounds that the requested information was not relevant to Defendants' invalidity defenses, and the Court sided with Amgen, denying Defendants access to that critical information.  (Dkt. 88, ¶ 2.)  The Federal Circuit, however, squarely rejected Amgen's position and authorities and held that post-priority-date antibody evidence *is* relevant to Defendants' written description and enablement defenses—as Amgen expressly conceded in its petition for rehearing.

With Amgen's sole basis for withholding post-priority-date information having been rejected as a matter of law, Defendants are now entitled to that information from Amgen. Accordingly, Defendants intend to move to reopen liability discovery for the limited purposes of obtaining from Amgen the information they were wrongly deprived of last time.  The time period for the discovery would be from the post-priority date to the present day, just as Defendants previously sought.  Relatedly, to the extent third parties have continued their PCSK9 research since discovery last closed, Defendants would also seek updated post-priority-date antibody

---

[9]    Defendants' references throughout this report to Amgen's apparent positions are drawn exclusively from Amgen's February 23, 2018 letter to this Court (Dkt. 431) and subsequent letter correspondence between the parties through March 6, 2018.  To the extent Amgen believes that Defendants have relied on any other materials or engaged in an untoward manner in formulating their position in this report, Defendants emphatically deny the accusation and stand ready to demonstrate as much upon the Court's request.

discovery from those parties.  *See, e.g.*, *United States v. Science Applications Int'l Corp.*, 301

F.R.D. 1, 2-5 (D.D.C. 2013) (granting motion to reopen discovery on remand for new trial).[10]

In addition to this disputed liability discovery, Amgen and Defendants appear to agree on

the need to update damages- and injunction-related fact and expert discovery.  For example, the

vast majority of sales of Praluent and Repatha took place after the end of the prior discovery

period.[11]  Moreover, clinical trials concerning both drugs have only been completed recently and

include efficacy, patient response, and safety data that further establish the differences between

Praluent and Repatha.[12]  These are but two examples of new information that has come into

existence in the intervening time since the previous close of fact discovery.  Finally, as for fact

witnesses, the parties agree that both sides will need to make certain substitutions.[13]

---

[10]    Because *compliance* with 35 U.S.C. §112 is measured at the time of filing, *Ariad*, 598 F.3d at 1355, Amgen has no reciprocal right to post-priority-date evidence.

[11]    Praluent and Repatha had only been on the market for a couple of months at the previous close of discovery.

[12]    *See* Press Release, Regeneron, Praluent® (Alirocumab) Injection Significantly Reduced Risk of Cardiovascular Events in High-Risk Patients, and was Associated with Lower Death Rate (Mar. 10, 2018), *available at* http://bit.ly/2p31EV7 ("Regeneron Pharmaceuticals, Inc. . . . and Sanofi today announced that the ODYSSEY OUTCOMES trial met its primary endpoint, showing Praluent® (alirocumab) Injection significantly reduced the risk of major adverse cardiovascular events (MACE) in patients who had suffered a recent acute coronary syndrome (ACS) event, such as a heart attack"; "[f]or the first time, adding a lipid-lowering therapy to maximally tolerated statins was associated with reduced death from any cause").  Even Amgen recognizes the importance of new information like this to the injunction issues in this case.  For example, in Amgen's Federal Circuit briefing, it relied on its GLAGOV clinical study of Repatha published more than seven months after the trial to argue that removal of Praluent from the market would not result in harm to the public.  (App. Dkt. No. 56 at 30.)

[13]    Two of Defendants' fact witnesses who testified at the injunction hearing last time, Robert J. Terifay and Victoria Carey, are no longer employed by Defendants.  Defendants will put forward replacement witnesses.  Amgen has indicated that it will also put forward replacement witnesses for at least Vanessa Broadhurst and Mike Ryan, fact witnesses who testified on behalf of Amgen at the injunction hearing.  The parties will need to depose all of the new witnesses.

(2)    **Substitution of an Expert**

Defendants must replace one of their previous antibody experts, Professor Siegel, who informed Defendants that he is no longer able to serve as an expert witness because of substantial additional professional responsibilities he has undertaken in the interim.  Defendants have disclosed their replacement expert, Professor Scott Boyd, an Associate Professor of Pathology at Stanford University, to Amgen.  Prompt substitution of Boyd, whose opinions are substantially similar to Siegel's, will in no way prejudice Amgen and is necessitated by an unavoidable change in circumstances during the two years that have passed since the trial.  Because Amgen opposes Defendants' proposed replacement of Siegel, Defendants intend to file a motion to substitute Boyd for Siegel, which will be supported by a declaration from Siegel.[14]

**B.    Summary Judgment Briefing**

As noted, when this case was last before the District Court, Amgen proposed and the Court agreed to forgo preliminary injunction proceedings in exchange for an expedited trial. (*See* Feb. 24, 2015 Conference Tr. at 9:1-18, 11:17-12:3.)  Given the aggressive timetable, the Court required the parties to argue their legal disputes largely through short letter briefs and *Daubert* motions decided shortly before trial.  (*See, e.g.*, Dkt. 49; 191; 250.)  The Court later expressed regret about that approach, specifically conceding that "this case could have benefited from a summary judgment practice."  (Mar. 14, 2016 Trial Tr. at 1076:9-15.)

Amgen's proposed schedule once again does not allow for any summary judgment practice.  Taking into account these lessons learned from the first round, Defendants believe

---

[14]    Amgen informed Defendants that at this time it does not intend to present testimony from any new experts.  Defendants informed Amgen that it will be considering other fact and expert witnesses to respond to Amgen's claims for damages and injunctive relief, and to evaluate the substantial volume of new Praluent and Repatha information that has emerged since the close of fact discovery.

summary judgment briefing is warranted on the question of whether Amgen's patent claims fail as a matter of law to satisfy written description or enablement. Courts have held that patents—including antibody patents—may fail to satisfy the requirements of 35 U.S.C. §112 as a matter of law. *See, e.g.*, *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1344 (Fed. Cir. 2011) (holding, as a matter of law, that antibody patent was "invalid for failure to meet the statutory written description requirement"); *Centrak, Inc. v. Sonitor Techs., Inc.*, No. 14-183-RGA, 2017 WL 3730617, at *9 (D. Del. Aug. 30, 2017) (Andrews, J.) (granting summary judgment of invalidity for lack of written description); *Enzo Life Sci., Inc. v. Hologic, Inc.*, C.A. No. 12-276-LPS (D. Del. June 28, 2017 (Dkt. 258)) (Stark, J.) (granting summary judgment of invalidity for lack of enablement); *see also Idenix Pharm. LLC v. Gilead Sci., Inc.*, C.A. No. 14-846-LPS (D. Del. Feb. 16, 2018 (Dkt. 591)) (Stark, J.) (granting judgment as a matter of law of invalidity for lack of enablement). And, of course, summary judgment would eliminate the need for a trial. Therefore, it is more than appropriate to build summary judgment briefing of these issues into any schedule.

Indeed, in its decision vacating the previous judgment, the Federal Circuit expressly acknowledged that it could not determine whether Defendants were entitled to judgment as a matter of law on written description or enablement because of the "incomplete record on these issues"—*i.e.*, because of the absence of "relevant post-priority-date evidence regarding written description and enablement." *Amgen*, 872 F.3d at 1379. Now that Defendants are entitled to that post-priority-date evidence—given the Federal Circuit's holding that such evidence is unambiguously relevant—there is no reason not to permit Defendants to attempt to show that, as a matter of law, the patents are invalid. Amgen cannot dispute that its claims cover numerous post-priority-date antibodies developed not just by itself and Defendants but also by third parties,

and that its patents fail to disclose those antibodies or any structurally similar antibodies. Furthermore, Amgen's core position is that describing a binding site on PCSK9 suffices to claim the entire genus of antibodies that bind there and block binding to LDL-Rs.  But the undisputed science disproves that contention, defeating written description.[15]  Furthermore, to make an antibody claimed by the patents, one must engage in a trial-and-error process of generating and screening antibodies for binding, which is the epitome of undue experimentation defeating enablement.

In short, because courts have held that patents, including antibody patents, may fail 35 U.S.C. §112 as a matter of law, and because summary judgment briefing could obviate the need for a jury trial, the Court should provide for summary judgment practice here.

### C.       Schedule

Given the foregoing, this case would be best-served by a schedule that (1) permits Defendants to file a motion to reopen targeted liability fact discovery; (2) provides for corresponding updated expert discovery; and (3) permits summary judgment practice.  The limited fact discovery would encompass (a) post-priority-date discovery from Amgen through the present, which the Court previously denied on grounds that the Federal Circuit subsequently rejected; and (b) updated post-priority-date discovery from third parties through the present.  In addition, the parties appear to agree that updated fact and expert discovery relevant to Amgen's claims for damages and injunctive relief is warranted.

---

[15] The Federal Circuit characterized the science as "hotly disputed," but, notably, cited only evidence that unanimously supports *Defendants'* position.  *See* 872 F.3d at 1378.  Several *amici* also submitted briefs explaining that the science does not support Amgen's premise.  (*See* Br. of *Amicus Curiae* Eli Lilly & Co. at 3-15, No. 17-1480 (Feb. 23, 2017) (App. Dkt. No. 73); Br. of *Amici Curiae* Pfizer Inc. & Ipsen Pharma S.A.S. at 19-27, No. 17-1480 (Feb. 24, 2017) (App. Dkt. No. 92).)

Defendants' proposed schedule (attached as Exhibit B) requests a final pretrial conference about 14 months after the initial scheduling conference, depending on the Court's schedule and time needed to decide summary judgment.  This schedule takes into account the lessons learned from round one and provides the parties and the Court with a reasonable amount of time to complete the necessary discovery and motion practice.  The dates in this schedule would be determined after the Court rules on the threshold discovery and expert substitution issues addressed above, so that the parties can proceed in an orderly fashion.  In addition, Defendants' schedule contemplates that each side will provide a technology presentation to the Court at the initial Scheduling Conference, which the parties appear to agree would aid the Court in its administration of this case.

In stark contrast, Amgen's proposed schedule essentially pretends that neither the previous District Court proceedings nor the Federal Circuit's decision exists.  Instead, it seeks to prove the adage that those who ignore history are doomed to repeat it.  The last time this case was before the Court, proceedings moved so quickly that even the Court later expressed regret about the scheduling choices it made early on—choices that resulted in a schedule so aggressive that it unfortunately led to critical errors.  Amgen nevertheless proposes an equally—if not more—aggressive schedule that is a recipe for the same unfortunate (and wasteful) outcome, particularly in so complex a case as this one.  And now that the Federal Circuit has identified the legal errors from the previous proceedings, Amgen cannot wish away the consequences of the Federal Circuit's decision, which include discovery of the previously "irrelevant" post-priority-date evidence, and summary judgment briefing to determine if Amgen's patents fail as a matter of law.

Amgen's proposed schedule is not only inconsistent with what has already occurred in this case; it is, in all candor, inconsistent with reality.  With no apparent appreciation for the limited resources of this Court, Amgen proposes a trial in May 2018—*two months* away.  What is more, Amgen proposes *permanent* injunction briefing in April 2018, a month *before* trial—to be followed by re-filing permanent injunction briefs with updated record citations some time after a permanent injunction hearing.  To put it charitably, this completely backwards approach—briefing a remedy before liability is even determined—is completely baffling.  That is apart from the fact, no less critical, that Amgen's proposal provides no time for the parties to produce and analyze years of post-marketing, post-discovery cutoff Praluent and Repatha data, nor time to depose fact witnesses and experts on their newly developed opinions on the basis for injunctive relief—critical information if this Court is to remove from the market the only PCSK9 inhibitor that has a low-dose option and is associated with a lower risk of death.  Given that the Federal Circuit held that the previous permanent injunction was legally erroneous, it is hard to understand why Amgen would propose a confusing approach that only increases the likelihood of error in a subsequently issued permanent injunction.

To the extent Amgen thinks its aggressive schedule is necessary because Praluent is already on the market, there is a well-recognized procedure to allay Amgen's concerns:  Amgen can seek a preliminary injunction.  If Amgen is that confident in the merits of its case and the equities, it can and should pursue this path (albeit on a schedule providing for expedited discovery on (i) the post-priority-date antibody information it previously withheld, corresponding third party discovery and (ii) information relating to the other equitable factors for preliminary injunctive relief).  But if it is not, and it chooses not to seek a preliminary injunction, that does not mean that the only alternative is an accelerated schedule that railroads this Court

and Defendants into a quick trial in two months and then a potential permanent injunction hearing within a matter of days.  Instead, the Court should avoid these unnecessary burdens, heed the previous proceedings, remain faithful to the Federal Circuit's decision, and adopt Defendants' reasonable schedule.

### D.      Willfulness

Amgen has informed Defendants that it will continue to assert willful infringement of its patents.  It is undisputed, however, that (1) the Court previously granted judgment as a matter of law in favor of Defendants on Amgen's willfulness claim (Dkt. 302); and (2) Amgen failed to cross-appeal that order.  To be sure, in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), the Supreme Court abrogated the Federal Circuit's two-part test for enhanced damages (formulated in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc)), which this Court had applied in granting JMOL to Defendants.  Unfortunately for Amgen, *Halo* was issued in June 2016—well before the appeal was filed in this case.  In the months following *Halo*, the entirety of Amgen's efforts to ask this Court to reconsider its decision in light of *Halo* was a footnote stating that "it would be appropriate to vacate the ruling, or give it no effect, because it is legally erroneous under the subsequent and controlling *Halo* decision."  (Dkt. 406 at n.5.)  And even then, the Court *did not do so*.  Despite clearly believing that the JMOL order was "legally erroneous," Amgen nevertheless failed to cross-appeal the Court's order for consideration by the Federal Circuit.  Accordingly, it has forfeited further consideration of the issue on remand.  *See, e.g.*, *Art Midwest, Inc., v. Clapper*, 3:99-CV-2355-N, 2008 WL 11271256, at *5 (N.D. Tex. Aug. 15, 2008) ("[A]fter winning on the title issue . . . , [plaintiffs] chose not to cross-appeal when [defendants] appealed.  Accordingly, [plaintiffs] have waived any argument other than their already-rejected marketable title argument.") (vacated-in-part on other grounds).

01:22973396.1

29

Amgen has nevertheless informed Defendants that willfulness remains in the case because the Court entered an Amended Rule 54(b) Judgment (Dkt. 427.)   That position is untenable for several reasons.  First, the Amended Judgment did not amend or vacate the Court's order granting of JMOL against Amgen's willfulness claim (despite Amgen's so requesting). Indeed, the Amended Judgment does not even *mention* that order, despite referencing numerous other prior orders, including on obviousness (Dkt. 282, 345), written description and enablement (Dkt. 304, 308, 390), and denial of Defendants' new trial request (Dkt. 331).  Second, as relevant here, Amgen sought, and the Court granted, the Amended Judgment to obtain what Amgen deemed "supplemental damages" for the period after the jury verdict and "enhancement" of those supplemental damages.   (Dkt. 406.)   But because the Federal Circuit has overturned Amgen's verdict, there is no more supplemental damages time period (and there will not be one unless Amgen obtains another verdict).  Thus, the Amended Judgment, at least as it pertains to Amgen's willfulness argument, is moot and has no legal effect—much less to resuscitate a forfeited claim.

Accordingly, it is clear that Amgen may no longer assert willful infringement of its patents.  Nevertheless, to the extent the Court requests further briefing on this issue, Defendants stand ready to provide such briefing.

### E.      Length of Trial

Defendants propose seven days for trial.  Defendants believe that this amount of time is necessary for the jury to understand the complex underlying technology; evaluate testimony from several Amgen, Regeneron, and Sanofi scientists; assess competing opinions from the parties' four technical experts; hear fact and expert testimony regarding damages (if necessary); and engage in thoughtful deliberation regarding the difficult facts and law at issue.  Defendants'

01:22973396.1

schedule also provides an opportunity for the parties to request bifurcation, which would help the jury separate invalidity issues from remedies issues and shorten the trial in the event of an invalidity verdict.  Finally, Defendants' suggested time period also permits this Court to give fulsome consideration to any disputes between the parties that may arise during trial.

Indeed, when this case was last before the Court, seven days were allotted for trial, and although the trial was bifurcated into liability and damages phases, testimony in the liability phase *alone* took almost five days.  This time around, there will be *more* evidence regarding written description and enablement (given the additional post-priority-date evidence), and *more* evidence as to damages (given the updated data relevant to damages).[16]  Accordingly, there is no reason to schedule *fewer* than the seven days previously allotted for trial—and certainly no reason to adopt Amgen's entirely (yet characteristically) unrealistic proposal of *four* days for a trial.

### F.  Injunction Hearing

Defendants propose three days for an injunction hearing, if such a hearing is necessary. This Court previously held an injunction hearing spanning two days.  That short period of time not only made it difficult for the parties to present their evidence (which included opening statements, nine fact witnesses, four experts, and deposition testimony); it resulted in an injunction so flawed that the Federal Circuit immediately stayed it, later deeming it legally erroneous.  That would seem to be reason enough to schedule at least one additional day for an injunction hearing this time around.  But there is an even more compelling reason.  The March 2016 hearing took place only several months after the two products were first marketed.  Now, however, there is a substantial quantity of market, pricing, safety, and efficacy data for Praluent

---

[16] While the last trial also involved Defendants' obviousness defense, only 4.5 hours of trial time were dedicated to that defense.

and Repatha that did not previously exist and will be presented to the Court in an injunction hearing.  Given this larger volume of evidence—and the corresponding need for expert opinion regarding that evidence—a modest one-day increase for the injunction hearing is appropriate.

In stark contrast, Amgen proposes one day for the entire hearing.  As with its other proposals, Amgen's suggestion may be part a conscious effort toward steering this Court into "splitting the baby" when it comes to scheduling.  But as in any negotiation, a starting bid should at least be realistic.  And like the other aspects of Amgen's proposed schedule, its proposal to allot one day for an injunction hearing—where the previous two-day hearing involved significantly *less* evidence and *still* resulted in an erroneous injunction—is simply detached from the facts and history of this case.  Neither this Court nor the parties are served by a schedule that repeats the flaws of the previous proceedings and only increases the likelihood of additional appeals and additional trials.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Melanie K. Sharp
_____
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com

OF COUNSEL:

MCDERMOTT WILL & EMERY LLP
William G. Gaede, III
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

WILKS, LUKOFF & BRACEGIRDLE, LLC

/s/ Scott B. Czerwonka
_____
David E. Wilks (No. 2793)
Scott B. Czerwonka (No. 4844)
4250 Lancaster Pike, Suite 200
Wilmington, DE  19805
(302) 225-0850
dwilks@wlblaw.com
sczerwonka@wlblaw.com

OF COUNSEL:

ARNOLD & PORTER KAYE SCHOLER LLP
Matthew M. Wolf
601 Massachusetts Ave, NW
Washington, DC  20001
(202) 942-5000

Sarah C. Columbia
K. Nicole Clouse
28 State Street
Boston, MA 02109-1775
(617) 535-4074

Rebecca Harker Duttry
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

LONDON & MEAD
Christopher B. Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

KING & SPALDING LLP
Daryl L. Joseffer
1700 Pennsylvania Avenue NW, Suite 200
Washington, D.C.  20006
(202) 626-2388

CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel
David N. Greenwald
Geoffrey G. Hu
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

*Attorneys for Amgen Inc., Amgen Manufacturing,
Limited and Amgen USA Inc.*

David K. Barr
Daniel L. Reisner
Abigail Langsam
250 West 55th Street
New York, NY  10019-9710
(212) 836-8000

Deborah Fishman
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-3807
(650) 319-4500

STEPTOE & JOHNSON LLP
John Josef Molenda, Ph.D.
Vishal Chandra Gupta
1114 Avenue of the Americas
New York, NY  10036
(212) 506-3900

KIRKLAND & ELLIS LLP
Paul D. Clement
George W. Hicks, Jr.
655 Fifteenth Street, N.W.
Seventh Floor
Washington, DC  20005-5793
(202) 879-5000

*Attorneys for Sanofi, Sanofi-aventis U.S. LLC,
Aventisub LLC, and Regeneron Pharmaceuticals,
Inc.*

March 12, 2018

## EXHIBIT A

### Amgen's Proposed Case Schedule

| Event | Date |
|-------|------|
| Parties produce supplemental damages documents | April 11, 2018 |
| Amgen's permanent injunction brief/declarations/evidence | April 13, 2018 |
| Depos of Amgen's declarants if ordered (3.5 hrs max) | April 19-20, 2018 |
| Parties exchange updated expert damages calculations | April 27, 2018 |
| Defendants' permanent injunction opposition/declarations/evidence | April 30, 2018 |
| Depos of Defendants' declarants if ordered (3.5 hrs max) | May 4-5, 2018 |
| Amgen's permanent injunction reply/declarations | May 9, 2018 |
| Pretrial order submission | May 11, 2018 |
| Pretrial conference | Week of May 14, 2018 |
| Proposed trial date (4 days, including jury selection) | May 21, 2018 |
| Permanent injunction hearing (1 day) | Week of May 28, 2018 |
| Re-file permanent injunction briefs with updated record citations | One week after PI hearing |
| Post-trial JMOL/Rule 59 motion/brief | June 15, 2018 |
| Answering post-trial JMOL/Rule 59 brief | July 11, 2018 |
| Reply post-trial JMOL/Rule 59 brief | July 25, 2018 |

**EXHIBIT B**

**Defendants' Proposed Case Schedule**

Schedule for Preliminary Motions

| Event | Timeline | Days from Order |
|---|---|---|
| Entry of order scheduling briefing on (1) Defendants' request to reopen liability discovery and (2) Defendants' request to substitute an expert | | 0 |
| Defendants file Motions to Reopen Liability Discovery and Substitute Expert | 2 weeks after Order scheduling briefing on the Motions | 14 |
| Plaintiffs file Oppositions to Motions | 2 weeks after Defendants file Motions | 28 |
| Defendants file Replies to Motions | 1 week after Plaintiffs file Oppositions | 35 |
| Hearing on Motions | TBD | |

Rule 16 Schedule[17]

| Event | Timeline | Days from Scheduling Conference |
|---|---|---|
| Scheduling Conference with each side providing a presentation on the technology | | 0 |
| Identification to opposing party of previously propounded discovery requests to be updated; service of any new discovery requests, and third party discovery period opens | 1 week after Scheduling Conference | 7 |
| Updated responses and responses to any new discovery requests to the opposing party | 30 days after identification of requests for updated discovery | 37 |
| Document production substantially complete | 90 days after requests for updated discovery | 97 |
| Plaintiffs' disclosure of narrowed list of asserted claims | 15 days before close of fact discovery | 142 |

---

[17] To be held after the Court rules on the Preliminary Motions.

| Event | Timeline | Days from Scheduling Conference |
|---|---|---|
| Fact discovery cutoff (including third party discovery) | 60 days after document discovery substantially complete | 157 |
| Opening and supplemental expert reports (on issues for which the party has the initial burden of proof); updated invalidity contentions | 30 days after completion of fact discovery | 187 |
| Rebuttal expert reports | 30 days after opening and supplemental expert reports | 217 |
| Reply expert reports | 30 days after rebuttal expert reports | 247 |
| Expert discovery cutoff | 30 days after reply expert reports | 277 |
| Opening summary judgment briefs | 3 weeks after close of expert discovery | 298 |
| Responsive summary judgment briefs | 30 days after opening summary judgment briefs | 328 |
| Reply summary judgment briefs | 30 days after responsive summary judgment briefs | 358 |
| Deadline to submit motion to bifurcate (briefing to follow according to D. Del. Local Rule 7.1.2(b)) | 15 days after reply summary judgment briefs | 373 |
| Summary Judgment oral argument | To be scheduled by Court | |
| Daubert objections | 30 days after completion of summary judgment briefing | 388 |
| Filing of joint proposed final pretrial order (incorporating *in limine* requests and responses to be prepared in accordance with Local Rule 16.3(d)) | TBD after trial date is set | |
| Pretrial conference | TBD after trial date is set | |
| Trial (7 days) | TBD | |
| Injunction hearing (if necessary) (3 days) | TBD after trial date is set | |

| Event | Timeline | Days from Scheduling Conference |
|---|---|---|
| Opening Post-Trial Briefs | 30 days after Judgment | |
| Responsive Post-Trial Briefs | 30 days after Opening Post-trial briefs | |
| Reply Post-Trial Briefs | 30 days after Responsive Post-Trial Briefs | |