IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC.; AMGEN MANUFACTURING, LIMITED; and AMGEN USA INC. <br><br> Plaintiffs, <br><br> v. <br><br> SANOFI; SANOFI-AVENTIS U.S. LLC; AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., <br><br> Defendants. | C.A. No.:  14-1317-RGA (CONSOLIDATED) <br><br> **JURY TRIAL DEMANDED** <br><br> REDACTED - <br><br> PUBLIC VERSION |

**JOINT PROPOSED PRETRIAL ORDER**

**Exhibit 15 Part 1**

Dated: January 18, 2019

# Exhibit 15-A

Plaintiffs' Motion to Exclude from Liability Phase of Trial Evidence that Regeneron, Merck and Pfizer Antibodies are Patented, Evidence that Evolocumab is Patented by Sequence, and Evidence Concerning the Development of the Regeneron, Merck and Pfizer Antibodies

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC.; AMGEN MANUFACTURING,     )
LIMITED; and AMGEN USA INC.           )
                                      )
                                      )     C.A. No.:  14-1317-RGA
        Plaintiffs,                   )     (CONSOLIDATED)
                                      )
        v.                            )     **JURY TRIAL DEMANDED**
                                      )
SANOFI; SANOFI-AVENTIS U.S. LLC;      )
AVENTISUB LLC, f/d/b/a AVENTIS        )
PHARMACEUTICALS INC., and REGENERON   )
PHARMACEUTICALS, INC.,                )
                                      )
        Defendants.                   )


**PLAINTIFFS' MOTION TO EXCLUDE FROM LIABILITY PHASE OF TRIAL
EVIDENCE THAT REGENERON, MERCK AND PFIZER ANTIBODIES ARE
PATENTED, EVIDENCE THAT EVOLOCUMAB IS PATENTED BY SEQUENCE, AND
EVIDENCE CONCERNING THE DEVELOPMENT OF
THE REGENERON, MERCK AND PFIZER ANTIBODIES**

Amgen moves under FRE 402 and 403 to exclude from the liability phase of the trial (1) evidence that Defendants' alirocumab, Merck's 1D05 and AX132 antibodies and Pfizer's J16 antibody (collectively, the "Merck and Pfizer Antibodies") are patented and that Amgen's evolocumab is patented by sequence (U.S. Patent No. 8,030,457); and (2) evidence concerning the development of and the methodology used to make these four antibodies, including witness testimony, U.S. Patent Nos. 8,062,640 (alirocumab), 8,188,234 (1D05), 8,877,900 (AX132), 8,080,243 (J16), and including the documents identified in Exhibit A to this brief. Amgen does not, through this motion, seek to exclude evidence of the antibodies themselves.[1]

*Issue 1: Patent Evidence.* To the extent the Court permits Defendants to introduce evidence of alirocumab and the Merck and Pfizer antibodies, evidence that these antibodies are patented should be excluded as irrelevant to the question of whether Amgen's disclosure satisfies the § 112 requirements for the claims to be tried.[2] The relevant legal question is whether the Amgen patents provide sufficient written description and enablement support for the claimed genus,[3] not whether a specific post-priority antibody was patented, or whether Amgen secured sequence-based claims to evolocumab in another patent. Judge Robinson recognized as much

---

[1] The Federal Circuit held that post-priority date antibodies may be relevant to whether a patent satisfies Section 112. *Amgen v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017). Amgen reserves the right to object to the admissibility of these antibodies based on Defendants' failure to satisfy their burden of production that the antibodies reflect the state of the art as of the filing date. *See Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373-74 (Fed. Cir. 2017) ("[E]vidence illuminating the state of the art subsequent to the priority date is not relevant to written description."). Further, Amgen disagrees that the proposed evidence is relevant in this case and therefore objects to it.

[2] Detailed testimony from Amgen's expert, Dr. Petsko, that Defendants sought and obtained patent claims by advancing scientific positions inconsistent with those taken here is relevant for a different reason; as Judge Robinson stated: "Defendants 'should not be permitted to make statements in this case that are inconsistent with [their] statements to the PTO.'" D.I. 250 at 6; see also D.I. 635.

[3] *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010).

when she excluded evidence that alirocumab was patented in the first trial.[4]  Defendants never

appealed this ruling, and there is no reason to revisit it on remand.[5]

Evidence that alirocumab and the Merck and Pfizer antibodies are covered by issued

patents is highly likely to confuse and mislead the jury and cause great prejudice to Amgen.  For

example, the jury likely will not appreciate that a later species can be patented over a genus that

includes the species.[6]  Thus, faced with evidence that the Patent Office granted other PCSK9

antibody patents, the jury may wrongly conclude that Amgen's claims must be invalid.



***Issue 2: Antibody Development Evidence.***  Defendants' alirocumab development story

and evidence concerning Merck's and Pfizer's development of their antibodies should be

excluded as irrelevant and prejudicial in the liability phase.  Defendants' expert, Dr. Boyd, relied

[9]  But Defendants must show

---

[4]  D.I. 250 at 6; *see also* D.I. 247 at 100:9-21.
[5]  *In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432, 439 (3rd Cir. 2009) (Courts should be loath to revisit prior rulings unless "the initial decision was clearly erroneous and would make a manifest injustice").
[6]  *Eli Lilly & Co. v. Bd. of Regents of Univ. of Wash.*, 334 F.3d 1264, 1270 (Fed. Cir. 2003).
[7]  Ex. B, Boyd Opening Report at p. 53.
[8]  Exhibit B, Boyd 10/24/18 Tr. at 215:10-219:4; D.I. 350 at 378:3-15.
[9]  Exhibit C, Boyd Opening report at page 53-58, 148-149.

that *Amgen's disclosed methods* require undue experimentation,[10] and ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[11]   Accordingly, this

evidence is irrelevant and should be excluded.  For these reasons, Defendants' expert should also

be precluded from basing any conclusion that Amgen's claims are non-enabled on work done by

others *not* following Amgen's disclosure.[12]

Judge Robinson recognized the "limited relevance" of Defendants' development story in

view of the fact that "infringement has been decided and damages has been bifurcated...."[13]

Because Defendants' development story "may be not only not relevant, but introduce issues that

are prejudicial," the Court ordered a proffer before deciding whether to permit it.[14]  Upon review,

the Court excluded the evidence as improper expert testimony that would "unfairly prejudice

plaintiffs, and confuse and mislead the jury."[15]  There is no need to depart from this ruling.

Furthermore, evidence concerning the development of and the methods used to make

Merck, Pfizer and Defendants' antibodies may also confuse and mislead the jury and prejudice

Amgen.  For example, the jury may also mistakenly conclude that Amgen's claims are not novel

or inventive in view of the work of other companies; those are questions of anticipation and

obviousness that are not at issue on remand.

---

[10]  *Johns Hopkins University v. CellPro, Inc.,* 152 F.3d 1342, 1361 (Fed. Cir. 1998) ("[T]he enablement requirement is met if the description enables any mode of making and using the invention."
[11]  *Id.* at 58.
[12]  *Id.* at 1361 n.29 (expert testimony "did not bear significantly on enablement" where the expert "did not copy the protocol described in [the] specification"); *Hologic, Inc. v. Minerva Surgical, Inc.,* 325 F.Supp.3d 507, 527 (D. Del. 2018) (Defendant's "arguments with respect to undue experimentation focus on the amount of experimentation necessary to make [the accused product], which is not the relevant enablement analysis...The relevant enablement analysis is whether the specification teaches how to make and use [the claimed] system....").
[13]  D.I. 414 at 32:15-19; D.I. 264 at 3.
[14]  D.I. 414 at 32:23-33:2.
[15]  D.I. 264 at 3.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC.; AMGEN MANUFACTURING, LIMITED; and AMGEN USA INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No.:  14-1317-RGA (CONSOLIDATED) |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| SANOFI; SANOFI-AVENTIS U.S. LLC; AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE FROM LIABILITY PHASE OF TRIAL EVIDENCE THAT REGENERON, MERCK AND PFIZER ANTIBODIES ARE PATENTED, EVIDENCE THAT EVOLOCUMAB IS PATENTED BY SEQUENCE, AND EVIDENCE CONCERNING THE DEVELOPMENT OF THE REGENERON, MERCK AND PFIZER ANTIBODIES**

This matter having come before this Court on Plaintiffs' Motion in Limine to Exclude from the Liability Phase of Trial Evidence that the Regeneron, Merck and Pfizer Antibodies are Patented, Evidence that Evolocumab is Patented by Sequence, and Evidence Concerning the Development of the Regeneron, Merck and Pfizer Antibodies, the Court having considered the supporting and opposing submissions thereto, having heard the arguments of counsel, and having reviewed the record herein, and good cause appearing therefor,

IT IS HEREBY ORDERED that Plaintiffs' Motion in Limine to Exclude from the Liability Phase of Trial Evidence that the Regeneron, Merck and Pfizer Antibodies are Patented, Evidence that Evolocumab is Patented by Sequence, and Evidence Concerning the Development of the Regeneron, Merck and Pfizer Antibodies is GRANTED.  Defendants are hereby precluded from presenting, through fact witness, expert witness or counsel, any testimony, demonstrative exhibit, or argument during the liability phase, if any, relating to (1) the fact that alirocumab,

Merck antibodies 1D05 and AX132, and Pfizer antibody J16 are patented and the fact that Amgen obtained a patent covering the sequence of evolocumab, and (2) Defendants' development of alirocumab, Merck's development of 1D05 and AX132, and Pfizer's development of J16, and precluding Defendants' expert, Dr. Boyd, from concluding that Amgen's claims are non-enabled or require undue experimentation based on such development, including but not limited through the documents from Defendants' trial exhibit list set forth in Exhibit A to Plaintiffs' Motion.

     SO ORDERED this ___ day of _____, 2019.


                    _____
                    United States District Judge


01:24036550.1

# Exhibits Redacted

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:14-01317-RGA (CONSOLIDATED) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) | ████████████ |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE FROM LIABILITY PHASE OF TRIAL EVIDENCE THAT REGENERON, MERCK AND PFIZER ANTIBODIES ARE PATENTED, EVIDENCE THAT EVOLOCUMAB IS PATENTED BY SEQUENCE, AND EVIDENCE CONCERNING THE DEVELOPMENT OF THE REGENERON, MERCK AND PFIZER ANTIBODIES

Amgen's motion seeks to circumvent the Federal Circuit's ruling reversing the exclusion of post-priority-date antibody evidence by demanding the exclusion of (1) all evidence that Amgen's Competitors (Defendants, Pfizer and Merck) developed their own entirely different PCSK9 antibodies using the same types of trial-and-error methods that Amgen used and described in its patents; and (2) all evidence that Amgen could only make the Competitors' antibodies, or anything like them, by examining the Competitors' patent disclosures and copying their amino acid sequences.[1]  The motion (two motions, in fact) should be denied.

**Issue 1:   Evidence Regarding Post-Priority-Date Antibodies.**   Amgen seeks to preclude evidence of how the Competitors developed their antibodies.   Amgen does not dispute that this evidence is relevant if Amgen used the methods disclosed by Amgen's patent.   Nor could it.  *See Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017).   Instead, Amgen's entire argument is predicated on the false premise that "Dr. Boyd admits that Defendants, Merck and Pfizer did not use Amgen's disclosed methods."   Mot. 3.   But that misstates the record.



As he explained, Amgen's patents merely ▮▮▮▮▮ ▮▮▮▮▮ *see* '165 Patent at 51:40-53:2. Amgen and its Competitors all performed the same type of ▮▮▮▮ ▮▮▮▮▮ to find their unique PCSK9 antibodies. ▮▮▮▮▮

---

[1] Defendants reverse the order of Amgen's two issues because the relevance of Amgen's Competitors' research demonstrates the relevance of Amgen's efforts to replicate their success.

[2] Ex. A ¶¶142, 350, 354; Ex. B (Rees Rebuttal) ¶436; Ex. C (Petsko Depo.) 177:5-21.

[3] Merck utilized phage display; Pfizer and Regeneron used transgenic mice. Ex. A ¶¶131-132, 137-140. Amgen's patents described both of these methods. *See* '165 Patent at 52:23-25, 51:41-

The fact that Amgen's competitors found entirely different PCSK9 antibodies by making and testing thousands of antibodies, using the same known trial-and-error methods described in Amgen's patent, is highly probative evidence that Amgen failed to describe and enable the full scope of its claims.[4]  To the extent Judge Robinson ruled that this development story was irrelevant, Mot. 3, any such decision was based on her erroneous belief that the post-priority-date antibodies had no relevance, which Defendants appealed and the Federal Circuit later rejected.

There is no basis for Amgen's speculation that the jury may be confused by this evidence. Defendants have no intention of arguing any theories of "anticipation [or] obviousness," *id.*, and any possible confusion on that point can easily by prevented by proper jury instructions.

**Issue 2: Patent Evidence.**    Amgen also seeks to exclude any evidence of patents covering the Competitor antibodies.  This evidence is plainly relevant.  Before filing its patents,

██████████████████████████████████████████████████████████████

████████████████████████████████████████████ *After* filing its

patents, ██████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████ ██████████████████████████████████████

---

53; Ex. C at 178:20-23 █████████████████████████████████████

[4] *See AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.,* 759 F.3d 1285 (Fed. Cir. 2014) (relevant antibody product "supports the jury verdict of invalidity for lack of an adequate written description"); *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247, 1260 (Fed. Cir. 2004) (affirming reliance on post-priority antibody evidence to prove lack of enablement); *Enzo Biochem, Inc. v. Calgene, Inc.,* 188 F.3d 1362, 1376 (Fed. Cir. 1999) (acknowledging relevance of post-priority evidence of third party attempts to practice the claimed invention); *Univ. of Rochester v. G.D. Searle & Co.,* 249 F. Supp. 2d 216, 235 (W.D.N.Y. 2003), *aff'd on other grounds,* 358 F.3d 916 (Fed. Cir. 2004).

[5] *See* Ex. A at n.458; *see also* █████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████ is thus relevant

to Defendants' §112 defenses.  *See* 872 F.3d at 1375 (holding that "post-priority-date evidence

showing that [Amgen] engaged in lengthy and potentially undue experimentation to enable the

full scope of the claims" may be "relevant" to enablement); *supra*, n.3. Amgen's own expert

████████████████████████████████████████████████████████

████████████████████████.[6]  Accordingly, the fact that the Competitor antibodies are described in

public patent filings is relevant to this case, and poses no threat of unfair prejudice to Amgen.

Indeed, if anything, *Defendants* would be unfairly prejudiced if that evidence were excluded.[7]

    Amgen tries to shoehorn additional issues into its motion, but its arguments are equally

meritless. ████████████████████████████████████████████████████████

██████████████ Amgen's own document, however, states that Amgen █████████████████

███████████████████████████████████████████. Second, Amgen attempts to

preclude Defendants from explaining the difference between a sequence-limited claim specific to

evolocumab and the broad functional claims Amgen asserts.  But the jury cannot assess written

description and enablement without understanding the difference between a claim that covers an

antibody by its structure (sequence) and a claim that covers an entire class of antibodies purely

by their function.  *See Ariad Pharm. Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1349 (Fed. Cir. 2010)

(explaining the "acute" problems with "genus claims that use functional language.").  Amgen's

motion should be denied in its entirety.

---

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

[6] *See* Ex. H at 111:3-10.
[7] Amgen is wrong to claim that Judge Robinson resolved this issue in its favor.  The Court never ruled on the admissibility of this evidence, and the Court's more general ruling excluding post-priority date antibody evidence was overruled. 872 F.3d at 1375.

████████████████████████████████████████████████████████

# Exhibits Redacted

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC.; AMGEN MANUFACTURING,  )
LIMITED; and AMGEN USA INC.  )
  )
     Plaintiffs,  )
  )
     v.  )
  )
SANOFI; SANOFI-AVENTIS U.S. LLC;  )
AVENTISUB LLC, f/d/b/a AVENTIS  )
PHARMACEUTICALS INC., and REGENERON )
PHARMACEUTICALS, INC.,  )
  )
     Defendants.  )

C.A. No.: 14-1317-RGA
(CONSOLIDATED)

**JURY TRIAL DEMANDED**

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
FROM LIABILITY PHASE OF TRIAL EVIDENCE THAT REGENERON,
MERCK AND PFIZER ANTIBODIES ARE PATENTED, EVIDENCE THAT
EVOLOCUMAB IS PATENTED BY SEQUENCE, AND EVIDENCE CONCERNING
<u>THE DEVELOPMENT OF THE REGENERON, MERCK AND PFIZER ANTIBODIES</u>**

**Reply on Issue 1:  Patent Evidence.**   Defendants do not dispute that whether the Competitor antibodies are *patented* is irrelevant to whether Amgen's claims satisfy §112.[1] Rather, Defendants explain that the Competitor patents are relevant to show that Amgen



. (Br. at 2-3).  But Defendants' argument is nonsensical.  The Competitor patents obviously do not describe ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as Defendants admit, they reflect a later state of the art.  (*See* MIL regarding Amgen's Catabolic Research Program.).

Defendants fail to establish how Amgen's Repatha sequence patent is relevant to this litigation.  The jury is not tasked with weighing the relative merits of different types of patent claims.   Introduction of this evidence would be prejudicial and confusing, as Defendants will attempt to imply that Amgen should be "satisfied" with certain types of claims.  It is also irrelevant to whether Amgen's specification provides adequate support for the selected claims.

**Reply on Issue 2:  Antibody Development Evidence.**  Amgen's patent discloses a roadmap that involves using Amgen's exemplary antibodies to make additional claimed antibodies.[2]  At most, Defendants contend that Competitors used "similar" or the "same types of" methods to make their antibodies; they never – and cannot – say the antibodies were made using Amgen's antibodies or its roadmap.  Thus, the evidence is simply irrelevant to whether the roadmap and specific methods taught in Amgen's patent enable the selected claims.[3]

---

[1]  Amgen does not seek to exclude the Competitor antibodies through this motion; instead, Amgen seeks to preclude evidence that they are patented and of their development.
[2] *E.g.*, Ex. A, Corrected Rees Remand Report at ¶¶ 318, 403-414, 436.
[3]  *Johns Hopkins University v. CellPro, Inc.,* 152 F.3d 1342, 1361 (Fed. Cir. 1998) (Enablement is "met if the description enables any mode of making and using the invention.")

# Exhibits Redacted

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC.; AMGEN MANUFACTURING, LIMITED; and AMGEN USA INC. )<br><br>Plaintiffs, )<br><br>v. )<br><br>SANOFI; SANOFI-AVENTIS U.S. LLC; AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., )<br><br>Defendants. ) | C.A. No.: 14-1317-RGA (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' MOTION TO PRECLUDE REFERENCE TO PURPORTED CLINICAL DIFFERENCES**

Repatha and Praluent are the two anti-PCSK9 antibodies FDA-approved to reduce LDL cholesterol ("LDL-C") in patients at risk of cardiovascular events. Both have the same mechanism of action. Both have been shown to reduce LDL-C and cardiovascular events to similar extents. Neither product is FDA-approved to reduce any risk of death. Neither has been shown to have a statistically significant incidence of any adverse event other than of injection-site reactions, which is common for injected biologics. No head-to-head clinical trial has been conducted to compare the drugs' efficacy, safety, or patient response. (*See* Ex. A (Stein 9/7/2018 Rpt.) at ¶¶ 13, 21-23, 33-35, 49, 62; Ex. B (Stein 10/19/2018 Rpt.) at ¶¶ 2, 31, 33, 50.)

Defendants do not contend any clinical difference between Repatha and Praluent bears upon any liability issue. To counter Amgen's claim of lost profits due to Defendants' infringement, Defendants' damages expert, Carla Mulhern, an economist, posits certain clinical differences between Praluent and Repatha.[1] (Ex. C (Mulhern 10/5/2018 Rpt.) at ¶¶ 127-28.) Mulhern asserts that these "product differentiators" undermine Amgen's position that it would have sold a unit of Repatha for every infringing unit of Praluent Defendants sold. (*Id.*) But Mulhern did not adjust her calculation of Amgen's lost profits because of these purported clinical differences. (*Id.* at ¶ 162 & nn.460-61.) Thus, these purported clinical differences have no effect on the damages verdict the jury will be asked to render.

Amgen moves under F.R.E. 402 and 403 to preclude any reference before the jury to any of these purported clinical differences. Evidence is irrelevant and inadmissible if "the fact is of [no] consequence in determining the action." F.R.E. 401, 402. Evidence concerning the

---

[1]   The "differentiators" Mulhern posits are: ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (Ex. C at ¶¶ 143-59.)

purported clinical differences is of no consequence to the jury's determination of liability, and Defendants have never contended otherwise.  And the purported clinical differences have no "consequence in determining" damages because they did not lead Mulhern to adjust Amgen's claimed damages.  Such irrelevant evidence is inadmissible under Rule 402.

Even if clinical differences between the products existed and were relevant, their probative value would be far outweighed by the prejudice from suggesting to the jury that Praluent has properties that Repatha does not, or that Repatha causes unique harms to patients. See F.R.E. 403.  Dueling expert testimony on whether the products have relevant clinical differences—when none has been shown through a head-to-head clinical trial, which the FDA requires for statements comparing drugs[2]—will require mini-trials on highly complex medical and statistical questions, all in the context of a damages trial limited to not more than two days.

Take, for example, the purported "differential mortality benefit."  Defendants claim Praluent has an unexplained, elixir-like ability that Repatha lacks to prevent death from any cause.  But in their own clinical trial (ODYSSEY), ████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████ (Ex. A at ¶ 53; Ex. E at 34-35.)  Defendants cannot offer any explanation why a drug whose sole effect is to lower LDL-C could decrease the risk of death for causes other than cardiovascular.  The assertion that Praluent reduces all-cause mortality is based on flawed interpretations of clinical trial data that ████████████████████████

---

[2]    See Ex. D (FDA Guidance for Industry: Medical Product Communications That Are Consistent With the FDA-Required Labeling — Questions and Answers), at 17-18 (stating that claims of product difference not based on results of head-to-head trials are misleading). See also Ex. E (Eckel 10/30/18 Deposition) at 35-36, 37 (head-to-head trials required for drug comparisons); Ex. F (Praluent Label), at 6.1 (adverse event rates from different trials not comparable).

2



. (Ex. G (SAN-R373986-94) at 988-92.[3])

(SAN-R495876-880) at 877.[4])  And in a related parallel patent case, the

. *See*

Ex. I (*Sanofi-Aventis Deutschland GmbH v. Amgen, Inc.*, 3 LiQ 1/18 (EP), Bundespatentgericht

[BPatG] Sep. 6, 2018 (German original and uncertified English translation)), at 20.[5]

In sum, the medical community has not accepted Defendants' theory that Praluent

reduces the risk of death.  But testimony[6] about a purported differential mortality benefit, as well

as about the several other unsubstantiated clinical differences, would take up trial time on non-

overlapping statistical, clinical, and pharmacological subjects, better budgeted to subjects that

might actually affect the jury's verdict.  Allowing Defendants to claim that Praluent, but not

Repatha, has some unique, unexplained ability to reduce mortality would also prejudice Amgen.

All this justifies exclusion under Rules 402 and 403.

---

[3]



The grant of this motion will eliminate the need to play any deposition designation testimony from third-party physicians.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC.; AMGEN MANUFACTURING, LIMITED; and AMGEN USA INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No.: 14-1317-RGA (CONSOLIDATED) |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| SANOFI; SANOFI-AVENTIS U.S. LLC; AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO PRECLUDE
REFERENCE TO PURPORTED CLINICAL DIFFERENCES**

This matter having come before this Court on Plaintiffs' Motion to Preclude Reference to Purported Clinical Differences, the Court having considered the supporting and opposing submissions thereto, having heard the arguments of counsel, and having reviewed the record herein, and good cause appearing therefor,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Preclude Reference to Purported Clinical Differences is GRANTED. Defendants are hereby precluded from presenting, through fact witness, expert witness or counsel, any testimony, demonstrative exhibit, or argument during the liability or damages phase, if any, that Praluent in any of its dosage forms differs clinically from Repatha or offers any clinical advantage over Repatha.

SO ORDERED this ___ day of _____, 2019.

_____
United States District Judge

01:24034878.1

6

█████████████████████████████████

# Exhibits Redacted

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMGEN INC., AMGEN MANUFACTURING  )
LIMITED, and AMGEN USA INC.,  )
                                                   )
            Plaintiffs,  )     C.A. No. 1:14-01317-RGA
                                                   )     (CONSOLIDATED)
v.  )
                                                   )     **JURY TRIAL DEMANDED**
SANOFI, SANOFI-AVENTIS U.S. LLC,  )
AVENTISUB LLC, f/d/b/a AVENTIS  )
PHARMACEUTICALS INC., and REGENERON  )
PHARMACEUTICALS, INC.,  )
                                                   )
           Defendants.  )

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO
PRECLUDE REFERENCE TO THE CLINICAL DIFFERENCES BETWEEN
PRALUENT AND REPATHA**

Amgen's motion seeks to preclude Defendants from explaining how clinical differences between Repatha and Praluent undermine Amgen's position that it would have sold a unit of Repatha for every single unit of Praluent that Defendants sold.  Those clinical differences are plainly relevant to the jury's determination of damages, are well-supported by the available evidence, and pose no risk whatsoever of unfair prejudice.  Amgen's motion should be denied.[1]

Amgen's damages expert, Paul Meyer, asserts that  Ex. A [Meyer 9/7/2018 Report] at 50.  In response, Defendants' expert Carla Mulhern opines that and that Mr. Meyer's calculations are Ex. B [Mulhern Report] ¶ 116.  One of the three categories of market expansion that Ms. Mulhern discusses arises out of id., including what Amgen identifies as five specific clinical "differentiators" in Ms. Mulhern's report.  See Mot. 1 n.1.

While Amgen notes that Ms. Mulhern does not adjust her lost profits damages calculations based on these differences, her analysis and opinions regarding market expansion— including those based on clinical differentiation—are relevant considerations to both her rebuttal lost profits and price erosion opinions.  Defendants are entitled to present Ms. Mulhern's testimony describing how the clinical differences between Repatha and Praluent could easily mean that more PCSK9 inhibitors are being sold with both Repatha and Praluent on the market

---

[1] Defendants do not intend to introduce evidence of clinical differences during the liability trial unless Amgen opens the door to those issues.  Defendants understand Amgen's motion as limited to whether the evidence of clinical differences should be presented in the liability and damages trials, since Amgen presents no grounds for excluding that evidence from any injunction briefing or proceedings.

than would be sold if just Repatha were on the market. As Ms. Mulhern puts it, the differences between Repatha and Praluent ███████████████████████████████████████ ████████████████████████████████ Ex. B [Mulhern] ¶ 143.

Contrary to what Amgen suggests, there is abundant evidence of significant clinical differences between Repatha and Praluent, both as to their clinical benefits and as to their side effects. Praluent (but not Repatha) has been shown to reduce the risk of death for treated patients. Ex. B [Mulhern] ¶ 154; Ex. C [G.G. Schwartz et al., *Alirocumab and Cardiovascular Outcomes After Acute Coronary Syndrome*, New Eng. J. Med. (published online Nov. 7, 2018)] tbl. 2. Praluent (but not Repatha) has been shown to reduce the risk of hospitalization for unstable angina. Ex. B [Mulhern] ¶ 155; Ex. C [Schwartz NEJM] tbl. 2. Praluent (but not Repatha) has been demonstrated to reduce levels of lipoprotein(a), and thereby reduce the risk of cardiovascular events independent of its simultaneous reduction of LDL-C. Ex. B [Mulhern] ¶ 155; Ex. D [Vera Bittner et al., *The ODYSSEY OUTCOMES Trial: Lp(a) and Cardiovascular Outcomes*, XVIIIth Int'l Symposium on Atherosclerosis (June 12, 2018)]. In addition, some patients respond to Praluent but not to Repatha, or suffer side effects from Repatha but not Praluent. Ex. B [Mulhern] ¶¶ 157-58. Finally, Praluent is available in low dose (75 mg) and high dose (150 mg) options, while Repatha is only available in a high dose option. This last point is a fundamental difference between the products; as Ms. Mulhern explains, ███████████ ████████████████████████████████████████████████████████ ████████—presumably due at least in part to the clinical benefits associated with lowering LDL-C only in moderation, as the low-dose form of Praluent allows. *See* Ex. B [Mulhern] ¶¶ 145-52.

To be sure, Amgen disputes these clinical differences between Praluent and Repatha, and argues that they are "unsubstantiated," noting that there have been no head-to-head clinical trials

comparing the two drugs.  Mot. 2-3.  Unsurprisingly, Amgen cites no support for the proposition

that head-to-head clinical trials are necessary to present such differences to the jury, particularly

where each one is supported by peer-reviewed publications, scientific documents, and/or the

testimony of Defendants' own experts.  That evidence easily raises a jury question over whether

there are clinical differences between Repatha and Praluent that have expanded the market for

PCSK9 inhibitors.  Indeed, the dispute between the parties on these issues underscores that this

evidence is relevant under FRE 402 and not unfairly prejudicial under FRE 403.

In addition, to the extent willful infringement is tried with damages, the clinical

differences between Repatha and Praluent are also relevant to Defendants' case on that issue.

The evidence shows that Defendants developed Praluent independently before Amgen published

the patent application that led the patents-in-suit—that is, Defendants did not just copy an

existing patented invention.  *See, e.g.*, *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567

F.3d 1314, 1336 (Fed. Cir. 2009) ("[E]vidence of copying . . . may show what the accused

infringer knew or should have known about the likelihood of its infringement.").  The clinical

differences between Praluent and Repatha accentuate that these are different molecules, resulting

from different, independent development programs, and are not the result of "copying."  *See,*

*e.g.*, Ex. E [Eckel Report] ¶ 48 ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████  For that reason as well, Amgen's motion to

preclude evidence of the clinical differences between Repatha and Praluent should be denied.[2]

---

[2] Amgen identified its clinical expert, Dr. Evan Stein, on its "Will Call" witness list and its
biostatistics expert, Dr. Charles McCulloch, on its "May Call" witness list for the remedies trial.
If Defendants are precluded from offering evidence of the clinical differences between Praluent
and Repatha, Amgen should likewise be precluded from offering evidence on that issue,
including through the testimony of these two disclosed Amgen expert witnesses.

████████████████████████████████████████████████████████████████████████

# Exhibits Redacted

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC.; AMGEN MANUFACTURING,        )
LIMITED; and AMGEN USA INC.             )
                                        )
                                        )       C.A. No.:  14-1317-RGA
        Plaintiffs,                     )       (CONSOLIDATED)
                                        )
                v.                      )       **JURY TRIAL DEMANDED**
                                        )
SANOFI; SANOFI-AVENTIS U.S. LLC;        )       ▮▮▮▮▮▮▮▮▮▮▮▮
AVENTISUB LLC, f/d/b/a AVENTIS          )
PHARMACEUTICALS INC., and REGENERON     )
PHARMACEUTICALS, INC.,                  )
                                        )
        Defendants.                     )

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION**
**TO PRECLUDE REFERENCE TO PURPORTED CLINICAL DIFFERENCES**

Defendants' opposition confirms that evidence of the five purported clinical differences ("Alleged Differences") between Repatha and Praluent should be excluded under Rules 402 and 403. Defendants acknowledge they have no bearing on liability. (Opp. n.1.) As for damages, Defendants acknowledge that Mulhern's damages calculation was not adjusted for the Alleged Differences. (*Id.* 1.) Inviting the jury to make a downward, "do-it-yourself" adjustment to Amgen's damages without guidance would be extremely prejudicial and violate Rule 403.

Evidence of the Alleged Differences will also call for distracting, time-consuming sideshows at a time-restricted trial. Defendants describe the Alleged Differences in a cursory, misleading way, and contesting them will require testimony and documents on numerous, unrelated subjects. For example, ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Defendants' purported evidence of a death benefit unique to Praluent is highly inflammatory and has been met with skepticism from the FDA. (MIL at 3.) Far from making the Alleged Differences relevant (Opp. 3), their contested nature underscores how mini-trials would be a confusing waste of time, especially if Mulhern, a damages expert, becomes the "mouthpiece" for opinions on these complex medical and statistical questions. *Dura Automotive Sys. v. CTS Corp.,* 285 F.3d 609, 614 (7th Cir. 2002) (expert cannot be "mouthpiece of a scientist in a different specialty").

Defendants also argue that the Alleged Differences bear upon willfulness because they "accentuate that [Repatha] and [Praluent] are different molecules." (Opp. 3.) But Defendants' purported evidence of the Alleged Differences emerged only *after* Defendants launched Praluent and *after* Defendants' decision to willfully infringe, and is therefore irrelevant to any willfulness issue. Moreover, the patent claims that Defendants willfully infringe are not claims to Repatha alone, but to a large genus of antibodies. That Praluent differs from other antibodies within the genus does not negate Defendants' willfulness.

████████████████████████████████████████████████

# Exhibits Redacted