IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC.; AMGEN MANUFACTURING, )
LIMITED; and AMGEN USA INC. )
           )
       Plaintiffs, )
           )
         v. )
           )
SANOFI; SANOFI-AVENTIS U.S. LLC; )
AVENTISUB LLC, f/d/b/a AVENTIS )
PHARMACEUTICALS INC., and REGENERON )
PHARMACEUTICALS, INC., )
           )
       Defendants. )

C.A. No.: 14-1317-RGA
(CONSOLIDATED)

**JURY TRIAL DEMANDED**

REDACTED -

PUBLIC VERSION

**JOINT PROPOSED PRETRIAL ORDER**

**Exhibit 16**

Dated: January 18, 2019

# EXHIBIT 16A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN INC., AMGEN MANUFACTURING     )
LIMITED, and AMGEN USA INC.,     )
    )
    Plaintiffs,     )     No. C.A. No. 1:14-01317-RGA
    )     (CONSOLIDATED)
v.     )
    )     **JURY TRIAL DEMANDED**
SANOFI, SANOFI-AVENTIS U.S. LLC,     )
AVENTISUB LLC, f/d/b/a AVENTIS     )
PHARMACEUTICALS INC., and REGENERON     )
PHARMACEUTICALS, INC.,     )
    )
    Defendants.     )

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE
## AMGEN'S USE OF POST-PRIORITY-DATE EVIDENCE
## TO DEMONSTRATE THAT ITS PATENTS SATISFY 35 U.S.C. §112

Satisfaction of §112's written description and enablement requirements is determined by the sufficiency of a patent's disclosure as of the priority date—here, January 9, 2008. *New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2004); *Amgen v. Sanofi*, 872 F.3d 1367, 1372 (Fed. Cir. 2017) (noting the "undisputed priority date of January 9, 2008"). But in contending that Amgen's patents-in-suit contain sufficient information to satisfy §112, Amgen's experts rely on antibodies and data added *after* the priority date. This evidence is both irrelevant to the §112 question and highly likely to confuse the jury in an already complex case. Accordingly, pursuant to F.R.E. 402 and 403, Amgen should be precluded from telling or suggesting to the jury that antibodies and data not included in its January 9, 2008 61/010,630 priority application (the "'630" (Ex. A)) are part of the patents-in-suit's disclosure and thus can be considered when determining whether the patents satisfy written description and enablement.[1]

**Antibodies Added to the Patent Specification After the Priority Date.** Amgen added 14 antibodies to a specification postdating January 9, 2008. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ But these 14 antibodies were *not* disclosed in the '630 as of the January 9, 2008 priority date. Consequently, they cannot, as a matter of law, be used to assess whether the patents satisfy the written description or enablement requirements, and thus they lack relevance. *New Railhead*, 298 F.3d at 1294.

---

[1] Defendants raised this issue in seeking to file a *Daubert* motion, but the Court recently ruled that it did not present "a *Daubert* issue." D.I. 702. Defendants therefore promptly sought to file this MIL in place of their MIL concerning their priority review voucher ("PRV"). Amgen refused to agree to any briefing schedule that would have allowed Defendants an opportunity to file a reply before the pretrial conference and demanded that Defendants forfeit all evidentiary objections to the PRV MIL. Defendants could not agree to those unreasonable demands. If the Court only considers three of Defendants' MILs, this MIL should take precedence over the PRV MIL.

Amgen has argued that it made these undisclosed antibodies "before the priority date." D.I. 670 at 2. But compliance with §112 is determined by what the applicant *disclosed* within the four corners of the priority application, not by what it allegedly possessed but failed to disclose. *See Ariad Pharma., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Amgen has never credibly claimed that it disclosed these antibodies by the priority date. At most, Amgen has contended that the antibodies "are among the 85 antibodies recovered from the screen . . . described in the patent." D.I. 670 at 2. But the '630, which is the relevant document, does not identify by name any of the six antibodies on which its experts rely—let alone provide sequence information or any other identifying data consistent with the requirement of disclosure (or do so with respect to the other eight antibodies, for that matter).

Amgen has also argued that it needs these antibodies to rebut Defendants' argument that "well after the priority date even Amgen itself had not made antibodies with certain characteristics." D.I. 670 at 2. But Defendants do not seek to preclude Amgen from using such evidence in an attempt to rebut that assertion, which concerns *post-priority-date* activity. The problem is that Amgen intends to use the undisclosed antibodies as evidence that its patents satisfied the written description and enablement requirements *as of the priority date*. Because that attempt flatly contradicts §112 and Federal Circuit law, it should be prohibited, and the Court should instruct the jury that any post-priority-date antibody evidence Amgen does present cannot be considered part of the disclosure of the patent.

**Data Generated by Amgen After the Priority Date.** Amgen also relies on data not disclosed in the '630. Specifically, Amgen relies on ██████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████



Amgen does not—and could not—contend that these data were actually disclosed in the '630 application. Instead, Amgen's experts have stated that these data can be treated as if disclosed under the "inherency" doctrine—that is, that by merely disclosing antibodies in the '630, Amgen inherently also disclosed whatever data it may later generate regarding those antibodies.[2] That reasoning "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013). The '630 discloses that Amgen made 3,000 antibodies (Ex. D (Boyd Op.) at ¶¶99-109), sequenced 32 (*see* Ex. A at Figs. 2A-3KK), and ran binning, scanning, blocking, and x-ray crystallography experiments on some of them. Ex. D at ¶¶99-111. By Amgen's logic, it need not disclose *any* of these data as of the priority date because all data for these antibodies are inherent. Unsurprisingly, the Federal Circuit has rejected the counterintuitive notion that a skilled artisan would know which compounds support claims based on experiments performed *after* the priority date to discern their properties. *See Ariad*, 598 F.3d at 1357-58 (rejecting patentee's attempt to expand the "state of the art at the time of filing" by relying on post-priority data). Put simply, a skilled artisan reading the '630 would not know that undisclosed antibodies or later-developed data are part of the disclosure. To pretend otherwise violates the public notice function of the disclosure. As a matter of law, Amgen cannot rely on this post-priority-date information as evidence of what its patent specification discloses. Because such evidence is irrelevant and would confuse the jury, it should be precluded.

---



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC.; AMGEN MANUFACTURING, )
LIMITED; and AMGEN USA INC. )
                                   )    C.A. No.: 14-1317-RGA
         Plaintiffs,          )    (CONSOLIDATED)
                                     )
         v.                )    **JURY TRIAL DEMANDED**
                                       )
SANOFI; SANOFI-AVENTIS U.S. LLC; )
AVENTISUB LLC, f/d/b/a AVENTIS )
PHARMACEUTICALS INC., and REGENERON )
PHARMACEUTICALS, INC., )
                                     )
         Defendants.       )

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION IN LIMINE TO
PRECLUDE AMGEN'S USE OF POST-PRIORITY-DATE EVIDENCE
TO DEMONSTRATE THAT ITS PATENTS SATISFY 35 U.S.C. §112**

This matter having come before this Court on Defendants' Motion in Limine to Preclude Amgen's Use of Post-Priority-Date Evidence to Demonstrate that Its Patents Satisfy 35 U.S.C. §112, the Court having considered the supporting and opposing submissions thereto, having heard the arguments of counsel, and having reviewed the record herein, and good cause appearing therefor,

IT IS HEREBY ORDERED that Defendants' Motion in Limine to Preclude Amgen's Use of Post-Priority-Date Evidence to Demonstrate that Its Patents Satisfy 35 U.S.C. §112 is GRANTED. Plaintiffs are hereby precluded from presenting, through fact witness, expert witness or counsel, any testimony, demonstrative exhibit, or argument during the liability or damages phase, if any, evidence that is not included in the 60/010,630 application as if it was part of the disclosure as of the priority date of January 9, 2008, including (1) Figures 3LL-3BBB, 3CCC-3JJJ, 13H, 13I, 13J, 21A to 28D and Examples 36, 37, 38, 39, 40, and 41 from the patents-in-suit; (2) the x-ray crystal structures of ███████████████ and (3) the █████████████ ████████████████.

SO ORDERED this ___ day of _____ , 2019.


_____
United States District Judge

# Exhibits Redacted

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., Amgen Manufacturing, Limited, and Amgen USA Inc. | ) ) ) | **C.A. No. 14-1317 RGA** (CONSOLIDATED) |
| Plaintiff, | ) ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE AMGEN'S USE OF POST-PRIORITY-DATE EVIDENCE TO DEMONSTRATE THAT ITS PATENTS SATISFY 35 U.S.C. § 112

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Michelle M. Ovanesian (No. 6511)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
movanesian@ycst.com

MCDERMOTT WILL & EMERY LLP
William G. Gaede, III
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
(650) 815-7400

Sarah Chapin Columbia
K. Nicole Clouse
28 State Street
Boston, MA 02109-1775
(617) 535-4074

Rebecca Harker Duttry
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

LONDON & MEAD
Christopher B. Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334

CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel
David N. Greenwald
Lauren A. Moskowitz
Geoffrey G. Hu
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lauren Martin
111 Huntington Ave., Suite 520
Boston, MA  02199
(617) 712-7100

*Attorneys for Amgen Inc., Amgen Manufacturing, Limited, and Amgen USA Inc.*

Dated:  January 18, 2019

The April Scheduling Order limited each side to three MILs and required MIL briefing to be completed by the January 18, 2019 submission date for the Pretrial Order, consistent with Your Honor's Form Scheduling Order paragraph 14. Defendants' fourth and unbriefed MIL violates the Scheduling Order and the parties' agreement with respect to serving MILs, burdening the Court with a late and unnecessary MIL. Amgen requests that Defendants' fourth MIL be stricken.[1]

In November Defendants moved for leave to file a *Daubert* motion to preclude Amgen's experts from citing certain post-date antibody evidence. D.I. 628. While the *Daubert* requests were pending, the parties agreed that briefs on the three permitted MILs[2] would be served by January 7, with oppositions served January 14, and replies served January 17, to enable the parties to comply with the Scheduling Order's January 18 filing date for the Pretrial Order.

On January 7, Defendants served their three MILs, including one to exclude evidence that they spent $67.5 million dollars to leapfrog Amgen at the FDA by purchasing a priority review voucher ("PRV MIL"). Defendants did not serve a MIL to exclude any post-priority date evidence.

On January 10, the Court denied Defendants' request to file a *Daubert* motion on Amgen's post-priority evidence, finding that the issue involved "factual disputes (what is inherent?) and a legal dispute about relevancy (does the evidence rebut Sanofi's evidence?)." D.I. 702 at 2.

---

[1] If the Court permits Defendants to proceed with this MIL, then Amgen respectfully requests an opportunity to file an opposition.
[2] This motion objects to Defendants' second attempt at four motions in *limine*. In December 2018, Defendants had sought to convince Amgen to agree to four motions *in limine* total, an invitation that Amgen declined in an effort to abide by the Court's preferences. *See* Ex. A, 12/19/18 Fishman email; Ex. B, 12/31/18 Fishman-Moskowitz email exchange.

That evening, Defendants represented to Amgen that the Court's January 10 *Daubert* ruling prompted them for *the first time* to view the relevant evidence as "a relevancy issue and not a Daubert issue." Ex. C, 1/10/19 10:10 pm Czerwonka email; D.I. 702. The representation is flatly inconsistent with Defendants' decision to present this exact issue as both a *Daubert* issue and a MIL in February 2016. 2/15/16 Pretrial Order, D.I. 215 at Ex. 16, Issue #4. Defendants could have again raised this issue as both a *Daubert* issue and a MIL, particularly after the Court expressed its reluctance to grant *Daubert* motions (4/20/18 Tr., D.I. 454 at 33:14-20), but instead strategically chose to use their three MILs on other issues.

After the Court's ruling, Defendants expressed a desire to substitute their fourth MIL for the PRV MIL, but on a briefing schedule that would have extended beyond January 18, the filing date of the Pretrial Order. Ex. C. Not wanting to be complicit in violating the Scheduling Order – and solely in the spirit of cooperation and trying to avoid burdening the Court – Amgen proposed a compromise that would allow Defendants to late-substitute the new MIL for the PRV MIL (by requiring that it be permanently withdrawn) and to complete briefing in time for inclusion in the Pretrial Order. Ex. D, 1/11/19 4:16 pm Sharp email. Defendants rejected this proposal, offering instead a briefing schedule that provided Amgen half the time to provide its opposition, and refusing to withdraw the PRV MIL. Ex. E, 1/11/19 4:56 pm Czerwonka email.

Defendants have engaged in self-help to circumvent the requirements of the Court's Scheduling Order and the ruling in its Order Denying Leave to File a *Daubert* Motion. There are no good grounds for this MIL given the Court's January 10 Order. D.I. 702 at 2. Defendants' MIL on Amgen's post-priority evidence should be stricken as prohibited self-help in violation of the Scheduling Order, as untimely and as duplicative of issues resolved in the January 10 Order.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

Dated:  January 18, 2018

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Michelle M. Ovanesian (No. 6511)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
movanesian@ycst.com

OF COUNSEL:

*Attorneys for Amgen Inc., Amgen Manufacturing,
Limited, and Amgen USA Inc.*

MCDERMOTT WILL & EMERY LLP
William G. Gaede, III
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

Sarah Chapin Columbia
K. Nicole Clouse
28 State Street
Boston, MA  02109-1775
(617) 535-4074

Rebecca Harker Duttry
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

LONDON & MEAD
Christopher B. Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel
David N. Greenwald
Lauren A. Moskowitz
Geoffrey G. Hu
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lauren Martin
111 Huntington Ave., Suite 520
Boston, MA  02199
(617) 712-7100

# Exhibits Redacted

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:14-01317-RGA (CONSOLIDATED) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | ▆▆▆▆▆▆▆▆▆ ) |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO AMGEN'S OBJECTION TO DEFENDANTS'
MOTION IN LIMINE TO PRECLUDE AMGEN'S USE OF POST-PRIORITY- DATE
EVIDENCE TO DEMONSTRATE THAT ITS PATENTS SATISFY 35 U.S.C § 112**

Defendants sought relief from Amgen's improper attempt to assert that post-priority-date evidence not contained within its patents should be treated as if it was part of the priority application to demonstrate that its patents satisfy 35 USC § 112 by requesting permission to file a *Daubert* motion.  Although the post-priority evidence Amgen relies upon is irrelevant as to how a skilled artisan would understand the priority application, Defendants believed the issue should be raised as a *Daubert* because the Court addressed this issue pre-remand as a *Daubert*. D.I. 628.  When the Court recently ruled that it did not present "a *Daubert* issue" and was therefore not considering the relevance of the evidence (D.I. 702), Defendants immediately tried to negotiate with Amgen to schedule briefing for a substitute motion in limine ("MIL"), offering to replace Defendants' MIL concerning their priority review voucher ("PRV").  Amgen refused to agree to any briefing schedule that would have allowed Defendants an opportunity to file a reply before the pretrial conference and demanded that Defendants forfeit all evidentiary objections to the PRV MIL.  Defendants could not agree to those unreasonable demands.

Defendants served this MIL on Amgen on Sunday, January 13, 2018.  Amgen had five business days to respond, or to provide Defendants with their objections to this MIL.  Instead, Amgen did not provide their objections to this MIL, which Amgen intended to include with the Pretrial Order, until prompted by Defendants upon review of the pretrial order documentation only an hour before the filing deadline.  Defendants should be entitled to file a reply in the event that Amgen files an opposition, and to receive a ruling on its motion.

# EXHIBIT 16B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:14-01317-RGA (CONSOLIDATED) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE REGARDING THE PROSECUTION OF DEFENDANTS' PATENTS AND PATENT APPLICATIONS

Defendants Sanofi, Sanofi-Aventis U.S. LLC, Aventisub LLC, f/d/b/a Aventis Pharmaceuticals Inc., and Regeneron Pharmaceuticals, Inc. (collectively "Defendants") submit this motion *in limine* to preclude Amgen from introducing evidence that Sanofi and Regeneron have filed patent applications, and in some instances have obtained patents, with claims that Amgen asserts are similar in scope to its functional genus antibody claims at issue in this litigation.

The only patent liability issue to be decided at trial is whether *Amgen's* patents-in-suit are invalid for lack of written description and enablement. Instead of focusing on that issue, Amgen seeks to distract and confuse the jury with evidence about at least ten of *Defendants'* patents and patent applications, asserting that they show Defendants obtained (or attempted but did not obtain) patents similar to the Amgen patents at issue here. That evidence is improper and should be excluded. The validity or invalidity of *Defendants'* patents, and the prosecution of *Defendants'* patent applications, simply are not at issue in this case, and the evidence Amgen

seeks to introduce does not go to any element of any claim or defense to be tried. Because that evidence is irrelevant, it should be excluded under Federal Rule of Evidence 402. And because any minimal probative value it may have is easily outweighed by the risk of jury confusion, unfair prejudice, and waste of time, it should be excluded under Federal Rule of Evidence 403 as well.

Amgen moved for summary judgment that judicial estoppel and quasi-estoppel should preclude Defendants from asserting their written description and enablement defenses at trial in light of the positions Defendants have taken before the Patent Office regarding unrelated patents and patent applications. D.I. 634. Defendants cross-moved for summary judgment on the same issue. D.I. 673.[1] At the January 3, 2019 hearing, the Court indicated that it will deny Amgen's motion for summary judgment. As judicial estoppel and quasi-estoppel are equitable doctrines to be decided by the Court, not the jury, there is no reason why the evidence that Amgen seeks to present regarding Defendants' patents and patent applications would be at all relevant to the sole issue before the jury: whether *Amgen's* patents satisfy the written description and enablement requirements.[2]

The evidence Amgen advances not only has little to no probative value, but also raises a significant risk of jury confusion, unfair prejudice, and waste of time. Admitting evidence about

---

[1] The record shows that Defendants have either abandoned or amended any claims directed to PCSK9 antibodies so that those claims are limited to the amino acid sequence of alirocumab. The other patents and patent applications that are the subject of Amgen's motion are directed to entirely different antibodies with entirely different target antigens, and many of those patent claims were also amended to be limited to specific amino acid sequences. D.I. 674.

[2] Amgen will undoubtedly argue that Judge Robinson previously suggested that judicial estoppel might be a basis for allowing Amgen to use Defendants' patents and patent application to cross-examine Defendants' witnesses. D.I. 250, at 6. But as Amgen recognized in its subsequent summary judgment motion, estoppel is a purely equitable issue for the Court, not for the jury. For the reasons set forth herein, such evidence can only serve to prejudice Defendants and confuse the jury.

Defendants' patents and patent applications in this manner will necessarily confuse the jury by inviting it to evaluate the merits of those patents and patent applications rather than focusing on the Amgen patents that are actually at issue here.  Moreover, admitting that evidence would force Defendants to respond in kind with evidence defending their unrelated patents and patent applications, creating a series of wholly unnecessary, irrelevant, and distracting mini-trials in what is already an extremely time-limited proceeding, and adding unnecessary complexity to what is already a very complex trial.  That flood of tangential information would overwhelm the jury, divert it from its proper task, and waste tremendous time.  *See Interdigital Communications Inc., et al. v. Nokia Corporation, et al.*, 2014 WL 8104167, at *1 (D. Del. 2014) (Andrews, J.) (finding that "the probative value is greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence" and that "because of the complexity involved in giving the full context, there would also be a significant risk of confusion of the issues").

This Court has precluded the introduction of such collateral evidence even in much less compelling circumstances.  In *Solvay, S.A. v. Honeywell, Inc.*, for example, Judge Robinson excluded statements made during the prosecution of an unrelated patent because "the marginal relevance of the evidence is far outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury and wasting the limited time of the parties explaining the satellite patent prosecutions." *Solvay, S.A. v. Honeywell, Inc.,* 886 F.Supp.2d 396, 410 (D. Del. 2012).

In short, evidence relating to Defendants' patents and patent applications is of little to no probative value in this litigation, and its consideration by the jury raises an overwhelming risk of confusion, unfair prejudice, and waste of time.  That evidence should therefore be excluded under Federal Rules of Evidence 402 and 403.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC.; AMGEN MANUFACTURING, LIMITED; and AMGEN USA INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No.:  14-1317-RGA (CONSOLIDATED) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SANOFI; SANOFI-AVENTIS U.S. LLC; AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE REGARDING THE PROSECUTION OF DEFENDANTS' PATENTS AND PATENT APPLICATIONS**

Defendants do not want the jury to hear about positions Defendants took before the PTO, bound by their duty of candor, regarding the amount of disclosure necessary to support antibody genus claims under 35 U.S.C. 112. It is not juror confusion Defendants wish to avoid, but their statements against interest offered under at least FRE 801(d)(2). These statements strongly corroborate Amgen's experts' opinions that the Amgen Patents' specification conveys to the skilled person possession and enablement of Amgen's antibody genus claims, while debunking the testimony of defense experts. Defendants' positions before the PTO – adopted while pursuing their own antibody genus claims – are highly relevant to the jury's task of weighing competing expert testimony to decide the validity of Amgen's claims.[1]

At trial, Amgen's experts will explain why Amgen's 350-page specification, including dozens of exemplary antibodies, with extensive binding, binning, blocking, and x-ray crystallography data, provides more than sufficient written description and enablement support for Amgen's claims. Defendants' patents and PTO submissions support these opinions. They reflect how a skilled person reads and understands antibody patents as satisfying § 112 based on far fewer working examples and far less disclosure than what Amgen provided.[2] Amgen's expert Dr. Petsko will provide unrebutted testimony demonstrating that the scientific principles underlying the Amgen Patents are equally applicable to Defendants' PTO submissions.

For example, Dr. Petsko will explain why Amgen's exemplary antibodies, x-ray crystallography data, and binning and blocking data provide sufficient support for Amgen's

---

[1] Defendants imply that their inconsistent patent filings are relevant solely to the non-jury issues of judicial estoppel or quasi-estoppel. Br. at 2. Not true. Defendants' positions before the PTO are independently admissible as classic statements against interest under FRE 801(d)(2). Defendants PTO submissions are also relevant and admissible during the damages phase; they are relevant to willfulness as will be set forth in Amgen's proffer on willful infringement

[2] *E.g.*, D.I. 636, Ex. 9 at ¶¶ 204-215, 218-219, 222-227, 257, 261-264, 267-281, attached hereto as Exhibit A.

claim to antibodies that bind PCSK9 residue D238. Dr. Petsko will explain that Defendants continued through November 2018 to prosecute their own method claim for all antibodies that bind to D238, impliedly representing to the PTO that their specification, providing only a single antibody example without crystallography, satisfied § 112.[3] Similarly, he will explain that there is a correlation between the structures of antibodies that bind a specified region on an antigen and that produce a resulting biologic function. Defendants corroborated that scientific principle before the PTO.[4] Likewise, Dr. Petsko will explain that Defendants repeatedly took the position before the PTO that disclosure of routine screening methods was sufficient to enable antibody genus claims[5]—again supporting the scientific testimony Amgen's expert Dr. Rees will advance.

Defendants' PTO submissions are highly relevant for cross-examining Defendants' experts. Defendants' experts will testify that Amgen's disclosure does not enable or convey possession of the full scope of the claimed genera of antibodies, despite Amgen's description of dozens of antibody examples, demonstration of a structure/function relationship, and disclosure of a roadmap for using routine methods to make additional antibodies. Defendants' positions before the PTO undermine those opinions. *In re Copaxone Consol. Cases,* 2017 WL 401943, *20 (D. Del. Jan. 30, 2017) (Plaintiff's prior argument to FDA regarding clinical trial was admissible because it undermined Plaintiff's position); *see also In re Zonagen Inc. Sec. Litig.,* 322 F.Supp.2d 764, 783 (S.D. Tex. 2003) ("Statements a party makes in pleadings in one case that are inconsistent with the positions a party takes in another case may be admissible as admissions against interest....")

---

[3]   D.I. 635 at 12, 16.  Article of manufacturing and method claims covering a category of compounds must still satisfy the written description requirement for the claimed genera. *Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916 (Fed. Cir. 2004).
[4]   D.I. 636, Ex. 13 at 240:15-241:2, attached hereto as Exhibit B.
[5]   *E.g.*, Exhibit A, D.I. 636, Ex. 9 at ¶¶ 231-237.

Defendants raise prejudice and confusion under FRE 403 (Br. at 2-3). But Defendants provide no evidence of *unfair* prejudice, because they have not disputed that their own PTO submissions contradict their defenses here. *Veress v. Alumax/Alcoa Mill Producers, Inc.*, 2004 WL 1151725 at *2 n.3 (E.D. Penn. May 21, 2004) ("[M]ost relevant evidence offered against a party tends to prejudice that party in some manner.") In fact, excluding this evidence will prejudice Amgen because it is highly relevant to the factual, scientific disputes at the heart of this litigation. *See Magna Electronics, Inc. v. TRW Automotive Holdings Corp*, 2016 WL 4238769 at *3 (W.D. Mich. Jan. 28, 2016) (Defendant "would be unfairly prejudiced if it cannot submit evidence from the IPR proceedings where...[Plaintiff] makes inconsistent arguments....").

There is little risk of jury confusion; Dr. Petsko's testimony concerning Defendants' PTO submissions will be simple and brief, as explained above. Evidence of Defendants' PTO submissions will not cause a series of mini-trials or waste time. (Br. at 3). Defendants' experts have not rebutted Dr. Petsko's scientific conclusions concerning Defendants' PTO submissions. And in a tightly-timed trial, Amgen must be brief.

The two cases Defendants cite are inapposite. *Interdigital Commc'ns Inc. v. Nokia Corp.*, 2014 WL 8104167, at *1 (D. Del. 2014) involved the admissibility of a PTO decision denying inter partes review, not the admissibility of admissions by a party opponent. In *Solvay, S.A. v. Honeywell, Inc.,* 886 F.Supp.2d 396, 410 (D. Del. 2012), Judge Robinson excluded evidence of inconsistent positions that were of "marginal relevance." However, here, Judge Robinson allowed Plaintiffs to cross examine Defendants' expert regarding one of Defendants' patent applications.[6]

---

[6] D.I. 641, Ex. 30, Tri. Tr. at 1135, attached hereto as Exhibit C.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Michelle M. Ovanesian (No. 6511)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
movanesian@ycst.com

OF COUNSEL:

MCDERMOTT WILL & EMERY LLP
William G. Gaede, III
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

Sarah C. Columbia
K. Nicole Clouse
28 State Street
Boston, MA  02109-1775
(617) 535-4074

Rebecca Harker Duttry
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

LONDON & MEAD
Christopher B. Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

*Attorneys for Amgen Inc., Amgen Manufacturing,
Limited, and Amgen USA Inc.*

4

CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel
David N. Greenwald
Lauren A. Moskowitz
Geoffrey G. Hu
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lauren Martin
111 Huntington Ave., Suite 520
Boston, MA  02199
(617) 712-7100

Dated:  January 14, 2019

01:24065928.1

# Exhibits Redacted

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC., AMGEN MANUFACTURING )
LIMITED, and AMGEN USA INC., )
)
            Plaintiffs, )        C.A. No. 1:14-01317-RGA
)        (CONSOLIDATED)
v. )
)        **JURY TRIAL DEMANDED**
SANOFI, SANOFI-AVENTIS U.S. LLC, )
AVENTISUB LLC, f/d/b/a AVENTIS )        ██████████████████
PHARMACEUTICALS INC., and REGENERON )
PHARMACEUTICALS, INC., )
)
            Defendants. )


**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO
PRECLUDE EVIDENCE REGARDING THE PROSECUTION OF DEFENDANTS'
PATENTS AND PATENT APPLICATIONS**

The evidence that Amgen seeks to present regarding *Defendants'* unrelated patents and patent applications is simply irrelevant to the validity of *Amgen's* patents. Allowing Amgen to present that evidence—and forcing Defendants to rebut it—would confuse the jury, create unfair prejudice, and waste precious trial time. Mot.1-3.

Amgen argues that Defendants' statements regarding unrelated patents constitute "statements against interest" and are admissible under Rule 801(d)(2) (statements by party-opponents). Opp.1. But Defendants' statements regarding their patents obviously were not against their interest "when made," and so cannot be statements against interest. Fed. R. Evid. 804(b)(3)(A). And both "statements against interest" and admissions by party-opponents are exceptions to the rule against *hearsay*. They are not exceptions to Rules 402 and 403 and cannot make irrelevant or prejudicial/confusing evidence admissible.

Defendants' patents are irrelevant as both substantive evidence and cross-examination material. *Contra* Opp.1-2. Any position Defendants took in different patent proceedings, addressing different antibodies and different claims, simply cannot be translated to the patents-in-suit here—or at least not without extended mini-trials on the unrelated patents Amgen seeks to introduce. The testimony of Amgen's expert Dr. Petsko regarding those patents will be neither "brief" nor "unrebutted," *contra* Opp.1, 3, in light of the ample evidence that Defendants' patents reflect myriad differences from the patents-in-suit, including the wealth of post-priority-date evidence of invalidity here. *See, e.g.*, Ex. A, Boyd Reply at ¶¶ 77-93; Ex. B, Boyd Dep. at 259:15-270:1; Ex. C, Eck Dep. at 300:12-311:21. This Court should not permit Amgen to divert this case into a series of mini-trials on those many differences at the expense of unfairly prejudicing Defendants. Amgen must be required to defend the validity of its patents on their own merits, not by confusing the jury with misleading comparisons.

1

# Exhibits Redacted

# EXHIBIT 16C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:14-01317-RGA (CONSOLIDATED) |
| v. | ) ) | ▮▮▮▮▮▮▮▮▮▮ ) |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION IN LIMINE TO LIMIT TESTIMONY REGARDING AMGEN EMPLOYEE STEVEN PIERI'S UNDISCLOSED AND UNSUPPORTED PRICE EROSION DISCOUNT RATE ANALYSIS**

Defendants Sanofi, Sanofi-Aventis U.S. LLC, Aventisub LLC, f/d/b/a Aventis Pharmaceuticals Inc., and Regeneron Pharmaceuticals, Inc. (collectively "Defendants") hereby submit this motion in limine to preclude testimony regarding or relying on Amgen employee Steven Pieri's undisclosed and unsupported analysis of a "but-for" discount rate for Repatha in the absence of competition from Praluent.

Amgen's damages expert, Mr. Paul Meyer, offers a price erosion opinion that assumes that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ) Ex. A [Meyer Report] § V.E; Ex. B [Meyer Schedule 9.REM].   Mr. Meyer's "but-for" discount rate relies on (among other things) an uncorroborated off-the-record conversation with Amgen's Executive Director for Reimbursement, Value, and Access, Steven Pieri, in which Mr. Pieri purportedly stated that ▮▮▮ ) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ )

1

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) Ex. A [Meyer Report] ¶ 157; *see also id.* at 68 n.419.

Amgen has produced no documents related to Mr. Pieri's purported discount rate analysis.[1]  Furthermore, when questioned at deposition, Mr. Pieri disclaimed knowledge of any such analysis.  Mr. Pieri was Amgen's Rule 30(b)(6) designee on topics including irreparable harm and pricing in the absence of competition.  *See* Ex. C [Pieri Dep. Ex. 1] at 1-2; Ex. D [Defs.' Notice of 30(b)(6) Dep.] at 12, 13-14 (topics 23, 28).  Yet, ▮▮▮▮▮▮▮▮▮▮▮)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)
▮▮▮▮▮)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮)

When questioned about Mr. Pieri's supposed analysis, Mr. Meyer testified that he had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) Ex. F [Meyer Dep. Tr.] at 142:16-22.  Mr. Meyer was also unclear as to ▮▮▮▮▮▮▮▮▮▮▮)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮) *Id.* at 143:15-18.
Similarly, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)
▮▮▮▮▮)

Given Amgen's failure to disclose and provide discovery on Mr. Pieri's supposed but-for discount analysis on Repatha, Amgen should not be permitted to introduce such testimony through the back door as a purported basis for Mr. Meyer's opinions.  "The Federal Rules of

---

[1] Both fact and expert discovery are now closed.  *See* D.I. 458, at 2, 8.

Evidence do not permit experts to simply 'parrot' the ideas of other experts or individuals." *Auther v. Oshkosh Corp.*, No. 09–CV–00527(A)(M), 2013 WL 5272959, at *3 (W.D.N.Y. Sept. 16, 2013) (quoting *In re Wagner*, No. 06–CV–01026, 2007 WL 966010, at *4 (E.D. Pa. Mar. 29, 2007)). Expert testimony instead must be the product of "reliable principles and methods" applied to "sufficient facts or data." Fed. R. Evid. 702(b), (c). "[W]hen the underlying source is so unreliable as to render it more prejudicial than probative, . . . Rule 703 cannot be used as a backdoor to get the evidence before the jury." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013) (alterations in original) (quoting *Emigh v. Consol. Rail Corp.*, 710 F. Supp. 608, 612 (W.D. Pa. 1989)). In addition, to the extent that Amgen seeks to have Mr. Pieri provide evidence of a "but-for" discount rate, it would also be improper, undisclosed expert opinion since Mr. Pieri admitted never having performed such analysis in the ordinary course of business. Fed. R. Civ. P. 26(b), 37(c); *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 145-48 (D. Del. 2013) (Andrews, J.) (excluding "untimely disclosed" testimony from a lay witness regarding patent damages as "improper expert opinion").

Here, the basis for Mr. Pieri's unsupported discount rate opinion has never been disclosed at all, let alone disclosed in a timely fashion. The opinion can and should be excluded on that ground alone. Fed. R. Civ. P. 37(c). Moreover, given the apparent lack of any facts to support that opinion—which, based on Mr. Pieri's deposition, seems to have been plucked out of thin air—the opinion should also be excluded as unreliable and as substantially more prejudicial than probative under Rule 403. Any other evidence or testimony that relies on Mr. Pieri's unsupported opinion should likewise be excluded for the same reasons. *See also* Fed. R. Evid. 703.

# Exhibits Redacted

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC.; AMGEN MANUFACTURING,     )
LIMITED; and AMGEN USA INC.          )
                                     )      C.A. No.:  14-1317-RGA
        Plaintiffs,                  )      (CONSOLIDATED)
                                     )
        v.                           )      **JURY TRIAL DEMANDED**
                                     )
SANOFI; SANOFI-AVENTIS U.S. LLC;     )      ▮▮▮▮▮▮▮▮▮▮▮▮
AVENTISUB LLC, f/d/b/a AVENTIS       )
PHARMACEUTICALS INC., and REGENERON  )
PHARMACEUTICALS, INC.,               )
                                     )
        Defendants.                  )


**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO LIMIT TESTIMONY REGARDING PLAINTIFFS' EMPLOYEE
<u>STEVEN PIERI'S PRICE EROSION DISCOUNT RATE ANALYSIS</u>**

Nearly ████████ of Amgen's lost profits damages is from price erosion caused by Defendants' infringing competition. Since the launch of Praluent, Defendants have waged a campaign of ever-increasing rebates, chargebacks, and other discounts ("discounts") to sell Praluent, which has forced Amgen to offer similarly deep discounts on Repatha, ████████ ████████████████████ (Ex. A (Meyer 09/07/18 Rpt. ("Meyer Rpt.")) at ¶ 155.) The discounting is far greater than typically observed for a first-in-class therapeutic not facing competition. But for Praluent, ███████████████████████████ ████████████████████████ (Ex. A (Meyer Rpt.) at ¶¶ 156, 160.)

Steven Pieri serves as Amgen's Executive Director, Reimbursement, Value and Access ("RVA") (Ex. B (Pieri Dep. Ex. 3.)) In that role and as Director, Repatha RVA since 2013, Pieri, who holds an MBA, ████████████████████████████ ███████████████████████████████ ██████████████████████ As such, Pieri has first-hand knowledge of the facts surrounding Defendants' devastating discounting campaign and what Amgen's discount rate for Repatha would have been absent Defendants' infringement (the "but-for discount"). Defendants ask this Court to silence Pieri on the erroneous theory that at his deposition, Pieri was asked what Amgen's "but-for" discount rate for Repatha was, but did not provide it. But Defendants never asked Pieri this question.

At his deposition, Pieri confirmed that he was able to testify on the 30(b)(6) topics on which he was designated, and he did so. (Ex. C (Pieri Dep.) 16:7-17:14; Exs. D, E (Pieri Dep. Exs. 1-2).) For example, Pieri testified about ███████████████████████████ ███████████████████████████████ ██████████████████████████





And yet the linchpin of Defendants' motion is their attack on Pieri's answer to a very different question: "Has Amgen attempted to *quantify the harm* that this price erosion, through rebates and price protection, may have caused Amgen?" (MIL 2 (emphasis added).) Not being Amgen's damages expert, Pieri truthfully answered that he was not aware of any analysis *by Amgen* quantifying its price erosion damages. (*Id.*) The questions Defendants posed did not ask Pieri to state his view of the "but-for" discount rate for Repatha.

Later, while preparing his expert report, Amgen's damages expert, Paul Meyer, asked Pieri the question Defendants didn't. Based on his experience,████████████████████████████████████████████ Ex. A (Meyer Rpt.) at ¶ 157.) Damages experts may rely on interviews with company personnel. *E.g.*, *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 443 (D. Del. 2007). *Auther v. Oshkosh Corp.*, 2013 WL 5272959, at *3 (W.D.N.Y. Sept. 16, 2013), is inapposite; unlike Meyer (Ex. A at ¶¶ 156-57), the *Auther* expert "did nothing beyond reading the reports of other experts in reaching the conclusions set forth in his [own] report."

Equally important, Pieri's response to Meyer's interview question is not improper expert opinion. Experienced corporate employees may offer opinion testimony about a business's lost profits and the associated inputs, even when similar testimony from a non-employee would

qualify as "expert" testimony. *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1174-75 (3d Cir. 1993). In *Lightning Lube*, a corporate employee was not permitted to testify as an expert, but the court nonetheless permitted him to offer lay opinion testimony on damages, including his own calculation of lost future profits, *id.,* which necessarily relied on his predictions about sales in a "but-for" world. The Court permitted the testimony because of his "knowledge and participation in the day-to-day affairs of his business." *Id. Lightning Lube* has been followed in this Circuit and elsewhere. *E.g.*, *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002); *Accurso v. Infra-Red Servs.*, 169 F. Supp. 3d 612, 622 (E.D. Pa. 2016); *E. Allen Reeves, Inc. v. Michael Graves & Assocs.*, 2015 WL 105825, at *9 (D.N.J. Jan. 7, 2015). Indeed, when Rule 701 was amended in 2000 to restrict admission of lay opinion testimony, the Advisory Committee singled out *Lightning Lube* as surviving the amendment. 2000 Adv. Comm. Note. Pieri's experience as Amgen's Executive Director, RVA includes his participation in Repatha pricing negotiations and oversight over the internal, Sarbanes-Oxley-certified discount-tracking data sources (the "LEDR" Report) that he uses to formulate discounting strategies. (Ex. C (Pieri Dep.) 152:8-156:5.)

Defendants cite *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 145-48 (D. Del. 2013), for the proposition that Pieri's estimate of the but-for discount is an expert opinion. (MIL 3.) But the proffered testimony in *AVM* was what "would have happened in a hypothetical [*Georgia-Pacific*] negotiation," *id.* at 146, which calls for a ranging assessment of many specialized factors. As discussed, Pieri's knowledge of the discounts Amgen would have offered in the "but-for world" is discrete and rooted in his day-to-day work. It is exactly the type of hands-on knowledge about which business executives like Pieri may, under *Lightning Lube*, testify.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

_____

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Michelle M. Ovanesian (No. 6511)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
movanesian@ycst.com

OF COUNSEL:

MCDERMOTT WILL & EMERY LLP
William G. Gaede, III
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

*Attorneys for Amgen Inc., Amgen Manufacturing,
Limited, and Amgen USA Inc.*

Sarah C. Columbia
K. Nicole Clouse
28 State Street
Boston, MA  02109-1775
(617) 535-4074

Rebecca Harker Duttry
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

LONDON & MEAD
Christopher B. Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

4

CONTAINS AMGEN CONFIDENTIAL INFORMATION

CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel
David N. Greenwald
Lauren A. Moskowitz
Geoffrey G. Hu
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lauren Martin
111 Huntington Ave., Suite 520
Boston, MA  02199
(617) 712-7100

Dated:  January 14, 2019

01:24065554.1

CONTAINS AMGEN CONFIDENTIAL INFORMATION

# Exhibits Redacted

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:14-01317-RGA (CONSOLIDATED) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE STEVEN PIERI'S UNDISCLOSED AND UNSUPPORTED PRICE EROSION DISCOUNT RATE ANALYSIS**

Amgen tacitly concedes, as it must, that Mr. Pieri's purported "but-for" discount rate analysis for Repatha was never disclosed under FRCP 26(a)(2) and so cannot be admitted as an expert opinion. Instead, Amgen attempts to transform Mr. Pieri's purported analysis into "lay opinion testimony" under FRE 701. There are two fundamental problems with that approach.

First, ███████████████████████████████████████████████ As such, he is not a percipient witness under FRE 701(a).[1] Amgen's claim for price erosion damages rests on the assertion that Amgen could have offered lower discounts for Repatha. Yet Mr. Pieri admitted at his deposition that ████████████████████████████████████████████) ██████████████████) Mot.2. Unlike the lay witnesses in the cases Amgen cites, ███████████) ████████████████████████████████████████████████████████) ██████████████[2]

Second, FRE 701 does not relieve Amgen of its disclosure and discovery obligations. Amgen was required to produce all documents underlying its computation of damages. FRCP 26(a)(1)(iii). Defendants sought all factual bases for Amgen's price erosion claim, and asked Amgen's designee (Mr. Pieri) about its price erosion claim.[3] Yet Mr. Pieri's "lay opinion testimony" regarding a "but-for" discount rate was never produced to Defendants, and it was never subject to discovery (again, unlike the testimony in the cases Amgen cites). Amgen may not use FRE 701 as an end-run around its discovery obligations. *See United States v. York*, 600 F.3d 347, 360 (5th Cir. 2010). The appropriate remedy is exclusion. FRCP 37(c); *see Markos v. Sears, Roebuck & Co.*, 2007 WL 5162457, at *3 (C.D. Cal. Mar. 19, 2007) (Rule 37(c) exclusion appropriate for failure to disclose basis for lay lost profits opinion during discovery).

---

[1] Because Mr. Pieri never actually performed a price erosion analysis for Repatha, he cannot provide a "lay opinion" about what that analysis would show; instead, any testimony he could offer would run afoul of FRE 701(c).
[2] *See, e.g., Donlin v. Philips Lighting N.A. Corp.*, 581 F.3d 73, 80-84 (3d Cir. 2009); *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 689-90 (8th Cir. 2009).
[3] Ex. A [Letter Requesting Updated Remedies Discovery] at 2-4; Ex. B [Defs.' Interrogs.] no. 11; Mot.2.

1

# Exhibits Redacted

# EXHIBIT 16D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:14-01317-RGA (CONSOLIDATED) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE TESTIMONY REGARDING SANOFI'S FDA PRIORITY REVIEW VOUCHER**

Defendants Sanofi, Sanofi-Aventis U.S. LLC, Aventisub LLC, f/d/b/a Aventis Pharmaceuticals Inc., and Regeneron Pharmaceuticals, Inc. (collectively "Defendants") submit this motion in limine to preclude testimony regarding or relying on Defendants' FDA Priority Review Voucher (PRV). A PRV is a statutory mechanism by which a company can obtain expedited FDA review of a new drug or biologic application. 21 U.S.C. §260ff. The statute also provides that a PRV can be sold to another company. *Id.* §260ff(b)(2). In July 2014, Defendants lawfully purchased a PRV from another company, BioMarin, and used that PRV to obtain expedited review for Praluent. Amgen contends that the PRV enabled Defendants to launch Praluent before Amgen launched Repatha. But even if so, that fact is entirely irrelevant to the upcoming trial on liability and damages. *See* Fed. R. Evid. 402. To the extent that evidence has any minimal probative value, it is substantially outweighed by the risk of confusion, unfair prejudice, and waste of time. *See* Fed. R. Evid. 403. This Court should therefore exclude all testimony regarding or relying on Defendants' PRV.

With regard to the liability phase of the trial, the sole issue before the jury will be whether the Amgen patents-in-suit are valid.  Whether the FDA approved Praluent before or after Repatha—and in particular, *why* the FDA approved Praluent before or after Repatha—is totally irrelevant to that issue.  It should therefore be excluded.  Fed. R. Evid. 402.

Moreover, if Amgen is permitted to argue to the jury that Defendants only obtained approval of Praluent ahead of Repatha because of their PRV, there is a strong risk that the jury may mistakenly believe that the purchase and use of that PRV was somehow unfair or improper. To attempt to counteract that significant risk of jury confusion and unfair prejudice, Defendants would have to introduce evidence explaining the full context of their purchase of the PRV, including the FDA procedures for issuing a PRV, the established law and practice permitting the sale of a PRV, and the specific circumstances surrounding the transaction in which Defendants purchased their PRV from BioMarin.  In addition, Defendants would also have to introduce evidence ███████████████████████████████████████████████████████████ Allowing Amgen to introduce evidence regarding Defendants' PRV would thus not only create an unacceptable risk of jury confusion and unfair prejudice, but would also lead to an unnecessary and time-consuming mini-trial on issues that have nothing to do with whether Amgen's patents are valid—during proceedings that are already on a compressed time schedule. Given that Defendants' PRV has no bearing on question of whether Amgen's patents are valid— which will be the sole focus of the liability trial—it necessarily has no probative value that could justify the risk of jury confusion, unfair prejudice, and waste of time.  Defendants' purchase of the PRV should be excluded from the liability phase of the trial on that ground as well.  Fed. R. Evid. 403.

Defendants' purchase and use of a PRV is similarly irrelevant to the remedies phase of

the trial.  Amgen has never suggested any way in which the PRV could be relevant to its claim for damages.  There is thus no reason to believe that Amgen's purported lost profits would be different in any way depending on whether Repatha launched before or after Praluent.

Moreover, Defendants obtained the PRV nearly two years before the damages period at issue in this remand trial, which runs only from February 1, 2016 through September 30, 2018, a period when both drugs were already on the market.  As such, the probative value of any evidence regarding the PRV—which has nothing to do with the purported infringement for which Amgen seeks damages—is minimal at best.  And in response to that evidence, Defendants would again be compelled to introduce evidence regarding the FDA regulations governing PRVs, the lawful and accepted practice of buying and selling PRVs, the specific transaction through which Defendants bought their PRV, and ████████████████████ ) ████████████████████ ) Under these circumstances, even if Amgen could assert some minimal probative value in the evidence regarding Defendants' PRV, that minimal probative value would be substantially outweighed by the risk of jury confusion, unfair prejudice, and waste of time in the damages phase of the trial as well as the liabilities phase.  Any evidence regarding or relying on Defendants' purchase and use of a PRV should therefore be excluded.[1]

---

[1] Defendants' position is that willfulness is not at issue in this case.  *See* Defendants' Motion for Judgment on the Pleadings regarding willfulness, which is still pending before the Court.  D.I. 448.  Therefore, Defendants reserve all rights to object to any testimony regarding the priority review voucher in the willfulness phase of trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC.; AMGEN MANUFACTURING, )
LIMITED; and AMGEN USA INC. )
                                           )
        Plaintiffs, )
                                             )
        v. )
                                             )
SANOFI; SANOFI-AVENTIS U.S. LLC; )
AVENTISUB LLC, f/d/b/a AVENTIS )
PHARMACEUTICALS INC., and REGENERON )
PHARMACEUTICALS, INC., )
                                             )
        Defendants. )

C.A. No.: 14-1317-RGA
(CONSOLIDATED)

**JURY TRIAL DEMANDED**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE
TESTIMONY REGARDING SANOFI'S FDA PRIORITY REVIEW VOUCHER**

Defendants seek to preclude testimony concerning Defendants' FDA Priority Review Voucher (the "PRV"), purchased for $67.5 million to allow them to leapfrog Amgen in the FDA approval queue. The use of the PRV allowed Defendants to obtain FDA approval for their infringing Praluent before Amgen won approval for Repatha, even though Amgen sought approval for Repatha first. While Amgen filed for approval on August 27, 2014, three months before Defendants sought approval on November 24, 2014, Defendants' purchase of this voucher from a third party secured their approval from the FDA one month ahead of Amgen. (Praluent was approved on July 24, 2015; Repatha on August 27, 2015). It also allowed Defendants to deprive Amgen of the reputational benefit associated with being able to claim status as the first to launch a PCSK9 antibody and to make available to the public the innovative health benefits this novel drug class offers. These actions have caused and continue to cause Amgen irreparable harm, and they will be an important part of Amgen's proof during the injunction phase. With respect to the jury trial on liability, however, Amgen agrees with Defendants that evidence regarding the PRV is not relevant, unless Defendants "open the door" in either of two ways described below. With respect to damages, evidence concerning the PRV should be admitted because the timing and circumstances of its acquisition bear upon the evaluation of a *Georgia-Pacific* royalty factor. The PRV is also relevant to willfulness because Defendants used the voucher to accelerate and increase the harm to Amgen caused by their knowingly infringing launch of Praluent.

   ***Liability.*** Amgen agrees that PRV is irrelevant to liability. The sole liability issue is whether certain claims of the patents-in-suit meet the written description and enablement requirements of 35 U.S.C. §112. The PRV has no bearing on those issues.

Unless, that is, Defendants "open the door" by prejudicing the jury with similarly irrelevant evidence of when and how they developed, obtained approval of, and launched Praluent. Amgen has moved to preclude that evidence, noting that it was already precluded by Judge Robinson at the first trial. (Amgen's MIL on Patents and Antibody Development Evidence ("Antibody MIL") at 2.) But if that motion is denied, Amgen should, in fairness, be permitted to show that Defendants were able to gain FDA approval of Praluent first, not because they were first to invent or develop a PCSK9 antibody, but merely because they paid a lot of money to cut Amgen's place in the regulatory line. Even if Amgen's Antibody MIL is granted, Defendants will crack the door open if they are allowed to show nevertheless that they independently developed Praluent or launched Praluent before Repatha. In this case too, Amgen should be allowed to counter evidence of the earlier launch date with evidence of the PRV to dispel a notion that the earlier approval/launch reflected earlier invention.

*Damages*. Defendants claim that "Amgen has never suggested any way in which the PRV could be relevant to its claim for damages." (*See* MIL at 3.) Incorrect. █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

The damages experts' reliance on the PRV to calculate damages is appropriate. One of the *Georgia-Pacific* factors is how much a business would customarily pay to obtain access to "the use of the invention or analogous inventions." (Ex. A (Meyer Rpt.) ¶¶ 187–191.) The value Defendants ascribed being able to launch Praluent one month before Repatha – which cannot be

█████████████████████████████████████████████

less than what they paid for the PRV – is probative of how much Defendants valued the ability to launch Praluent ahead of Repatha.  (Ex. C (Email re: Voucher Analysis) at 2681–2682; Ex. D (Defendants' Executive Summary of the PRV Agreement)).)

Defendants contend the PRV is irrelevant because they bought it two years before the start of the damages period.  (MIL at 3.)  But the purchase date does not undermine its utility as an indicator of how much Defendants valued their ability to launch Praluent before Amgen launched Repatha.  The purchase of the PRV has substantial probative value, which is not substantially outweighed by any "prejudice" to Defendants from recitation of the simple undisputed facts that in 2014, Defendants purchased the PRV for $67.5 million, and thereby accelerated Praluent's launch by several months.  Moreover, the types of "rebuttal evidence" Defendants point to—FDA regulations governing PRVs and the practice of acquiring such PRVs—are themselves irrelevant, since they do not have any bearing on how Defendants' decision to acquire the PRV signifies the value they placed on launching Praluent early.

*Willfulness*.  Defendants' motion explicitly ignores the relevance of the PRV to Amgen's willful infringement claim.  (*See* MIL at 3 n.1.)  When Defendants purchased the PRV in 2014, certain of Amgen's PCSK9 patent claims had already issued, an█████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████) Nevertheless, Defendants knowingly continued their development efforts ████████████████████████████, and, indeed, used the PRV to accelerate it.  They employed the PRV specifically to harm Amgen by jump-starting their launch of Praluent without the competition they would have faced had Amgen been able to launch first in the U.S. and protect its innovator status and reputation.

CONTAINS DEFENDANTS' CONFIDENTIAL INFORMATION

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

_____

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Michelle M. Ovanesian (No. 6511)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
movanesian@ycst.com

OF COUNSEL:

MCDERMOTT WILL & EMERY LLP
William G. Gaede, III
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
(650) 815-7400

Sarah C. Columbia
K. Nicole Clouse
28 State Street
Boston, MA 02109-1775
(617) 535-4074

*Attorneys for Amgen Inc., Amgen Manufacturing, Limited, and Amgen USA Inc.*

Rebecca Harker Duttry
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

LONDON & MEAD
Christopher B. Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334

4

CONTAINS DEFENDANTS' CONFIDENTIAL INFORMATION

CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel
David N. Greenwald
Lauren A. Moskowitz
Geoffrey G. Hu
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lauren Martin
111 Huntington Ave., Suite 520
Boston, MA  02199
(617) 712-7100

Dated:  January 14, 2019


01:24065644.1

5

CONTAINS DEFENDANTS' CONFIDENTIAL INFORMATION

# Exhibits Redacted

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 1:14-01317-RGA (CONSOLIDATED) |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO
PRECLUDE TESTIMONY REGARDING SANOFI'S FDA PRIORITY REVIEW
VOUCHER**

Amgen correctly agrees that Defendants' FDA Priority Review Voucher ("PRV") is irrelevant to liability.[1]  Opp.1.  As to damages, however, Amgen asserts the PRV is relevant because its expert Paul Meyer mentions the PRV in the section of his report that purports to deal with the twelfth *Georgia-Pacific* factor—namely, the reasonable royalty that "may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions."  *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  But neither Meyer nor Amgen gives any plausible explanation for how the price of the PRV—which Defendants purchased in July 2015, well before a hypothetical negotiation would have occurred—would be probative of the customary royalty for a similar invention during the damages period here—February 2016 and September 2018.  Whatever value Defendants may have placed in July 2015 on launching Praluent before Repatha is not relevant to a reasonable royalty rate between February 2016 and September 2018.[2]

As to willfulness, Defendants continue to maintain that willfulness is not at issue.  MIL.3. Regardless, Amgen's contention that the PRV is relevant to willfulness is premised on its assertion that "certain of Amgen's PCSK9 patent claims had already issued" when Defendants purchased the PRV.  Opp.3.  That assertion is fundamentally misleading.  While some claims had issued by July 2014—when Defendants purchased the PRV and announced they would use it—no claims of the *patents-in-suit* issued until September 2014, well *after* the PRV purchase. (Exs. A and B).  The PRV thus could not possibly have been directed at these later claims.

---

[1] Evidence regarding Praluent's development would not "open the door" to irrelevant evidence regarding the PRV. Opp.2.  The research process leading to Praluent's development is directly relevant to showing that Amgen did not fully describe or enable the genus.  By contrast, evidence that the PRV expedited the FDA approval process has no bearing on written description or enablement—and Amgen does not even attempt to explain how it could.

[2] Amgen also states that Defendants' expert Carla Mulhern relied on the cost of the PRV in assessing a reasonable royalty.  (Opp. at 2.)  Not so. ██████████████████████████████████ ██████████████████████████████  Those analyses, however, would be the same whether Defendants had spent those funds on the PRV or on any other expense—making the fact that those funds were spent on the PRV irrelevant.

# Exhibits Redacted