IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., AMGEN MANUFACTURING, LIMITED, and AMGEN USA INC., <br><br> Plaintiffs, <br><br> v. <br><br> SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACUETICALS INC., and REGENERON PHARMACUETICALS, INC., <br><br> Defendants. | Civil Action No. 14-1317-RGA |

ORDER

The Court, having considered the parties' motions *in limine*, together with the briefing and exhibits thereto, arguments thereon during the pretrial conference held January 25, 2019, and post-hearing letters (D.I. 748, 750), ORDERS as follows:

**Plaintiffs' Motion *in Limine* No. 1** (Evidence Concerning Development of Competitor Antibodies): My previous order left pending whether Defendants may introduce evidence of Defendants' development of alirocumab, Merck's development of 1D05 and AX132, Pfizer's development of J16, and whether Defendants' expert, Dr. Boyd, may rely on such evidence in the liability trial.

I determine that the evidence shall be excluded under Federal Rule of Evidence 402 as irrelevant to the issue of enablement, and, as to written description, to the extent there is any marginal relevance, it is excluded under Rule 403 as potentially confusing and misleading to the

1

jury. Defendants at the pretrial conference admitted that Regeneron, Merck and Pfizer "did not use the shortcuts" to test and identify antibodies within the scope of the claims that Amgen disclosed in the specification. (D.I. 736 at 28:9-12, 24). Defendants have not asserted that competitor development evidence would show an attempt to use Amgen's full disclosures from the specification to generate and identify claimed antibodies. (*Id.*) It is therefore irrelevant to the issue of enablement. The development of the competitor antibodies is also irrelevant to written description as development has no bearing on the characteristics of the competitor antibodies or whether there is adequate written description within the patent to support the claims. Moreover, allowing evidence regarding the development of other competitor antibodies may mislead the jury into believing that Plaintiffs' claims are not novel or inventive. Thus, I **GRANT** Plaintiffs' Motion to preclude evidence concerning development of competitor antibodies at the liability trial.

**Plaintiffs' Motion *in Limine* No. 3** (Amgen's Research Program for Catabolic Antibodies): Plaintiffs move to preclude Defendants from offering evidence related to Amgen's post-priority research program for novel catabolic antibodies as irrelevant to issues of written description and enablement under Rule 402 and prejudicial to Plaintiff, confusing and misleading to the jury, and wasteful of the Court's time under Rule 403.

The Federal Circuit determined, "Evidence showing that a claimed genus does not disclose a representative number of species may include evidence of species that fall within the claimed genus but are not disclosed by the patent, and evidence of such species is likely to postdate the priority date." *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1374 (Fed. Cir. 2017). More specifically, the Federal Circuit stated, "[Sanofi] sought to introduce evidence *not to illuminate the state of the art on the priority date* but to show that the patent purportedly did not disclose a

representative number of species. . . . As a logical matter, such evidence is relevant to the representativeness question." *Id.* (emphasis added).

As I understand it, the mere fact that an antibody within a claimed genus may later be called "catabolic" due to a change in the art does not affect whether that antibody is relevant for the representativeness question. As the Federal Circuit held in this case, "the use of post-priority-date evidence to show that a patent does not disclose a representative number of species of a claimed genus is proper." *Amgen*, 872 F.3d at 1375. Therefore, I determine that antibodies discovered by Amgen's research program that fall within the claimed genus are relevant for the written description issues. I do not understand these issues to be overly confusing to a jury, nor prejudicial to Plaintiffs.

As to the enablement issue, the Federal Circuit held that post-priority-date evidence "could have been relevant to determining if the claims were enabled as of the priority date and should not have been excluded simply because it post-dated the claims' priority date." *Id.* I do not understand Plaintiffs' motion to be based solely on the research program's status as post-priority-date evidence. Rather Plaintiffs assert that the research program reflects a subsequent state of the art, where the goal was to generate catabolic antibodies. As it is undisputed that the goal of the research program was to identify catabolic antibodies and not antibodies within the specific genus (D.I. 736 at 37:20-25, 40:9-10), I determine evidence of the research program is irrelevant to the issue of enablement under Rule 402. Further, to the extent there may be any probative value, if offered to prove a lack of enablement, the evidence is likely to confuse the issues, mislead the jury, and waste time in the presentation of the issues, and thus such evidence's probative value is substantially outweighed by these concerns and is excluded under Rule 403. Therefore, Plaintiffs' Motion is **GRANTED-IN-PART** as to evidence about Amgen's research

program offered to prove lack of enablement and **DENIED-IN-PART** as to research program evidence regarding the representative species issue for written description.

**Defendants' Motion *in Limine* No. 1** (Post-Priority Evidence): Defendants move to preclude Plaintiffs "from telling or suggesting to the jury that antibodies and data not included in its January 9, 2008 [priority application] are part of the patents-in-suit's disclosure and thus can be considered when determining whether the patents satisfy written description and enablement" as of the priority date. (D.I. 711 at 4). Plaintiffs assert that the post-priority evidence is relevant because it "(1) illuminates the state of the art at the priority date, (2) elucidates inherent properties of antibodies disclosed in the priority application, and (3) confirms enablement of Amgen's disclosed roadmap." (D.I. 730 at 3).

I do not understand Defendants' motion to seek the exclusion of all evidence presented about post-priority antibodies. Defendants request only to exclude testimony that six post-priority antibodies (12H11, 8A3, 11F1, 11H4, 11H8, and 8A1) "are disclosed in the patent" as of the January 9, 2008 priority date. Plaintiffs argue that these antibodies are relevant to rebut Defendants' written description and enablement assertions, including rebutting written description attacks with the doctrine of inherency. The doctrine of inherency provides that "when a specification describes an invention that has certain undisclosed yet inherent properties, that specification serves as adequate written description to support a subsequent patent application that explicitly recites the invention's inherent properties." *Yeda Res. & Dev. Co., v. Abbott GMBH & Co.*, 837 F.3d 1341, 1345 (Fed. Cir. 2016).

It is unclear to me exactly what arguments Plaintiffs intend to make at trial regarding inherency and disclosure at the time of the priority date. I will exclude statements by the Plaintiff that these six antibodies were *explicitly* disclosed in the '630 priority application as of the January

4

9, 2008 priority date. These statements are excluded under Rules 402 and 403 as irrelevant to the § 112 question and highly likely to confuse the jury. This ruling does not prevent Plaintiffs from presenting evidence of these six antibodies for other purposes, such as enablement, to support an argument that the later disclosure of these six antibodies has adequate written description support under the doctrine of inherency, or to illuminate the state of the art at the priority date. Thus, I **GRANT** Defendants' motion as to the narrow scope I understand it to reach.

**Defendants' Motion *in Limine* No. 3** (Testimony Regarding Mr. Pieri's Undisclosed & Unsupported Price Erosion Discount Rate Analysis): My previous order denied Defendants' Motion *in limine* without prejudice and ordered Plaintiffs to produce Mr. Pieri for a one hour deposition. After Mr. Pieri's deposition, Defendants renewed their motion *in limine* to preclude testimony regarding or relying on Mr. Pieri's opinion under Rules 403, 702, and 703 because:

> (1) Mr. Pieri's testimony is improper lay opinion under [Rule] 701 since it is not based on Mr. Pieri's percipient knowledge; and (2) Amgen's damages expert, Mr. Meyer, improperly relies on Mr. Pieri's "but-for" discount rate under [Rule] 702, since he was unaware of the bases or methodology for the opinion and was merely 'parroting' the opinion as though it were fact.

(D.I. 748 at 1). Mr. Meyer's discussion with Mr. Pieri is one of four sources that Mr. Meyer uses to support his opinion on rebates and discounts in the but-for world. (D.I. 750-1, Ex. C ¶ 157). Mr. Meyer's expert report states the conclusion of Mr. Pieri's discount rate analysis, and provides a footnote disclosing the assumptions that Mr. Pieri made in the undisclosed analysis. (D.I. 750-1 at 25, 25 n.419).

Mr. Pieri's discussion with Mr. Meyer about discount rates does not extend beyond his personal knowledge. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) recognizes the admissibility of lay witness testimony where "it is well-founded on personal knowledge and susceptible to specific cross-examination." *Id.* at 1175 (citation omitted). In *Lightning Lube*, the

court permitted testimony regarding lost profits by a lay witness where the witness had sufficient experience in the quick-lube business to predict how well his company could have been expected to do in the but-for world. *Id.* at 1174. Here, Mr. Pieri has demonstrated that testimony about rebates offered on products are within his personal knowledge as an employee who negotiates contracts with wholesalers, pharmacies, and insurance companies. (D.I. 750-1, Ex. A at 199:11-20, 223:10-23). Moreover, the analog which Mr. Pieri selected is one with which he is familiar. (*Id.* at 198:17-199:7, 202:4-23). Mr. Pieri's opinion is therefore not improper lay witness testimony under Rule 701 and will not be excluded.

At deposition, however, Mr. Pieri made clear he could not explain why certain assumptions had been made in his confirmatory analysis.[1] (D.I. 748-1, Ex. A at 227:11-24, 240:18-242:24). Moreover, Mr. Pieri testified that the confirmatory analysis was a team effort, and as such, it is not within his personal knowledge. (*Id.* at 205:13-23; 208:10-14). Because the confirmatory analysis was heretofore undisclosed and extends beyond facts within Mr. Pieri's personal knowledge, the confirmatory analysis is excluded as improper lay witness testimony under Rule 701(c), and substantially more prejudicial than probative under Rules 403 and 703. Thus, Defendants' motion is **GRANTED** as to the confirmatory analysis and **DENIED** as to testimony regarding or relying on Mr. Pieri's discount rate opinion.

Entered this 14 day of February, 2019.

/s/ Richard G. Andrews
United States District Judge

---

[1] This confirmatory analysis was not shared with Mr. Meyer nor was it disclosed to Defendants until January 30, 2019, well after the close of fact and expert discovery. (D.I. 750-1, Ex. A at 201:14-17).