IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC.; AMGEN MANUFACTURING, LIMITED; and AMGEN USA INC.　　　　） | |
| 　　　　　　　　　　　　　　　　） | C.A. No.: 14-1317-RGA |
| 　　　Plaintiffs,　　　　　　　　） | (CONSOLIDATED) |
| 　　　　　　　　　　　　　　　　） | |
| 　　　v.　　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| SANOFI; SANOFI-AVENTIS U.S. LLC;　） | |
| AVENTISUB LLC, f/d/b/a AVENTIS　　） | |
| PHARMACEUTICALS INC., and REGENERON） | |
| PHARMACEUTICALS, INC.,　　　　　） | |
| 　　　　　　　　　　　　　　　　） | |
| 　　　Defendants.　　　　　　　　） | |

**FINAL JURY INSTRUCTIONS**

## GENERAL INSTRUCTIONS

**1.    INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room.

Please listen very carefully to everything I say.  In following my instructions, you must follow all of them and not single out some and ignore others.  They are all important.  You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

**2.    JURORS' DUTIES**

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the

1

burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**3.    EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions is evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard

2

things that you saw or heard.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**4.     DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**5.     CONSIDERATION OF EVIDENCE**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight

3

you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 6.    USE OF NOTES

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## 7.    CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.

Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness

may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

8.     **EXPERT WITNESSES**

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field – he or she is called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

5

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**9.    DEPOSITION TESTIMONY**

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played.  This testimony must be given the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

**10.    THE PARTIES AND THEIR CONTENTIONS**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiffs are Amgen Inc., Amgen Manufacturing, Limited and Amgen USA Inc. I will refer to plaintiffs collectively as "Amgen."

Defendants are Sanofi, sanofi-aventis U.S. LLC, Aventisub LLC, f/d/b/a Aventis Pharmaceuticals Inc., and Regeneron Pharmaceuticals, Inc.  I will refer to these parties as "Sanofi and Regeneron."

Plaintiff Amgen Inc. is the owner, and plaintiffs Amgen Manufacturing, Limited and Amgen USA Inc. are exclusive licensees, of U.S. Patent No. 8,829,165, which I will refer to as "the '165 patent" and U.S. Patent No. 8,859,741, which I will refer to as "the '741 patent."

Sanofi and Regeneron have made, marketed, used and/or sold an antibody called alirocumab, that is known commercially as Praluent®.

The parties agree that alirocumab infringes claims 7, 15, 19 and 29 of the '165 patent and claim 7 of the '741 patent, if the claims are valid.  These claims may be referred to as the "asserted claims" of the patents.  I will explain in more detail what patent claims are in a moment.

Sanofi and Regeneron contend that the asserted claims are invalid due to lack of sufficient written description and lack of enablement.  I will explain what written description and enablement mean a little later.

11.   **BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In this patent case, the burden of proof is called "clear and convincing" evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

You must decide, as to each of the asserted claims, whether Sanofi and Regeneron have proven that the asserted claims are invalid for lack of written description or lack of enablement.  For each of these two defenses, Sanofi and Regeneron must prove them by clear and convincing evidence.

## THE PATENT CLAIMS

### 12.    PATENT CLAIMS GENERALLY

Before you can decide whether or not any of the asserted claims are invalid, you will have to understand what patent "claims" are. Patent claims are the numbered paragraphs at the end of a patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

Claims are usually divided into parts, called "limitations" or "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

### 13.    DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, claim 1 of the '165 patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

8

For example, claim 15 of the '165 patent is a dependent claim.  If you look at claim 15, it refers to claim 1.  Therefore, to determine what claim 15 of the '165 patent covers, you must consider both the words of claims 1 and 15 together.  Likewise, claim 7 of the '741 patent refers to claim 2, and claim 2 refers to claim 1.  Therefore, to determine what claim 7 of the '741 patent covers, you must consider the words of claims 1, 2 and 7 of the '741 patent together.

## VALIDITY

### 14.   AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY

Sanofi and Regeneron have challenged the validity of the asserted claims on two grounds.  Although the patent was granted by the Patent and Trademark Office, it is your job to determine whether Sanofi and Regeneron have proven, by clear and convincing evidence, that the legal requirements for patentability were not met.  A party must meet its burden of proof on only one ground, either written description or enablement, in order to invalidate a claim.  In making your determination as to invalidity, you should consider each claim separately.

For a patent to be valid, the invention claimed in the patent must be adequately enabled, and must have a sufficient written description. The terms "enablement" and "written description" have special meanings under the patent laws, which I will explain shortly.

### 15.   PERSON OF ORDINARY SKILL IN THE ART

In this case, a person of ordinary skill in the art would have earned an M.D. or a Ph.D. in immunology, cellular biology, biochemistry, biophysics, or a related field, and would have had at least two years of post-doctoral or industry experience studying the structural and/or functional properties of complex proteins, including antibodies.

16.     **ENABLEMENT REQUIREMENT**

The patent law contains certain requirements for the part of the patent called the specification, which is the entirety of the patent before its claims.  Sanofi and Regeneron contend that the asserted patent claims are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention, and that therefore the asserted claims are invalid.  To be sufficiently full and clear, the description in the specification must contain enough information to have allowed a person having ordinary skill in the field of the technology of the patent to make and use the full scope of the claimed invention at the time of the priority date of the patent claim, which in this case is January 9, 2008.  This is known as the "enablement" requirement.  If the full scope of a patent claim is not enabled, it is invalid.  To succeed in its enablement defense, Sanofi and Regeneron must show by clear and convincing evidence that the specification fails to meet the law's requirements for enablement of the claimed invention.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of original filing without having to conduct undue experimentation.  However, some amount of experimentation to make and use the invention is allowable.  A patent specification need not include the information already known to and available to one of ordinary skill in the art.

In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

11

(1)     The time and cost of any necessary experimentation;

(2)     How routine any necessary experimentation is in the field of antibody technology;

(3)     Whether the patent discloses specific working examples of the claimed invention;

(4)     The amount of guidance presented in the patent;

(5)     The nature and predictability of the field of antibody technology;

(6)     The level of ordinary skill in the field of antibody technology;

(7)     The scope of the claimed invention; and

(8)     The state of the prior art.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the priority date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

17.    **WRITTEN DESCRIPTION REQUIREMENT**

The patent law contains another requirement for the specification called the written description requirement.  Sanofi and Regeneron contend that the asserted claims of Amgen's patents are invalid because the specifications of the patents do not contain an adequate written description of the claimed invention.  To succeed in this defense, Sanofi and Regeneron must show by clear and convincing evidence that the specifications fail to meet the law's requirements for written description of the claimed invention.

In deciding whether the specifications satisfy the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill in the art at the time of the priority date – here, January 9, 2008 – would have recognized, from reading the patent specifications, that the inventor described the full scope of the invention on or before the priority date.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. The specification is not required to expressly include what is well-known to a person of ordinary skill in the art at the priority date.  The level of required disclosure depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.  Under the doctrine of inherent disclosure, when a specification describes an invention that has certain undisclosed yet inherent properties, those inherent properties may be relied upon for written description support.  To be inherent, the feature that is alleged to have been inherent must necessarily

13

have existed in the specification.  The fact that the feature is likely to have existed is not sufficient.  It is not required, however, that persons of ordinary skill recognize or appreciate the inherent disclosure at the time the January 9, 2008 application was filed. The written description requirement does not demand either examples or an actual reduction to practice.

In this case, the patent claims are directed to a specific class of antibodies, which can be referred to as a "genus."  One way to consider whether the combination of words, structures, figures, diagrams, formulas, etc., contained in the specifications at issue is sufficient for a claimed genus is to assess whether the specifications (1) include a representative number of species falling within the scope of the claimed genus, or (2) describe structural features common to the members of the claimed genus, so that a person of ordinary skill in the art can "visualize or recognize" the members of the claimed genus.

With respect to satisfying written description by the disclosure of a representative number of species, there are no hard and fast rules concerning the number of species that constitutes a "representative number."  The specifications need not describe every species in a claimed genus in order to meet the written description requirement.  Instead, the specifications need to show that the inventors have truly invented the claimed genus, i.e., that the inventor has conceived of and described sufficient representatives encompassing the breadth of the claimed genus.  When there is a substantial variation within the claimed genus, the specifications must describe a sufficient variety of species to reflect the variation within the claimed genus.  The written description requirement does not require inventors, at the time of their application for a patent, to reduce to practice and be in physical possession of every species within the genus.

14

With respect to satisfying written description by the disclosure of structural features common to the members of the genus, structural features may be disclosed by functional language when there is an established correlation between structure and function. Functional claim language can meet the written description requirement when either the specifications or what was known in the art at the time of the filing date establishes a reasonable structure-function correlation.

## DELIBERATION AND VERDICT

### 18.    INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-3, or 5-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### 19.    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight

16

or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' claims. You must answer all of the questions posed, and you all must agree on each answer. When you have reached a unanimous agreement as to your verdict, you will advise the Court Security Officer that you have done so.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## 20.   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 5:00 p.m.  If we do not hear from you by 5:00, I will send you a note to see whether you are close enough to a verdict to want to deliberate after 5:00 or whether you are going to recess for the evening and resume your deliberations tomorrow.  You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may not read or listen to any news about the case in a newspaper, online, through any news apps, on the radio, through any social media, in blogs, or on television during the evening recess.

You may talk about the case only while you are in the jury room and everyone on the jury is present.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30 a.m.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone.  So whenever you are deliberating over the lunch hour, let me remind you, if you

ask a question during this time, you probably will not get an answer right away because we are all going to be stepping away from our phones.

21.   **COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.