# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., AMGEN MANUFACTURING LIMITED, and AMGEN USA INC., <br><br> Plaintiffs, <br><br> v. <br><br> SANOFI, SANOFI-AVENTIS U.S. LLC, AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) C.A. No. 1:14-01317-RGA <br> ) (CONSOLIDATED) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) REDACTED - PUBLIC VERSION <br> ) Filed: February 28, 2019 <br> ) <br> ) <br> ) |

**DEFENDANTS' MOTION UNDER FED. R. CIV. P. 50(A) FOR JUDGMENT AS A MATTER OF LAW**

Defendants respectfully move the Court, pursuant to Fed. R. Civ. P. 50(a), for an order granting judgment as a matter of law for Defendants and against Amgen.  Defendants move for judgment as a matter of law because no reasonable jury could conclude from the evidence that the asserted claims are valid under 35 U.S.C. §112.  *See* Fed. R. Civ. P. 50(a)(1).  Specifically, Defendants move for judgment as a matter of law that the asserted claims of the Amgen patents are invalid because clear and convincing evidence was presented at trial establishing that no reasonable jury would have a legally sufficient evidentiary basis to conclude that those claims satisfy either the written description standard or satisfy the enablement standard.  Failure to satisfy even one of these standards entitles Defendants to judgment of invalidity.  Amgen's asserted patent claims satisfy neither.

**I.     NO REASONABLE JURY COULD CONCLUDE THAT THE PATENTS-IN-SUIT SATISFY THE WRITTEN DESCRIPTION REQUIREMENT.**

Defendants adduced at trial clear and convincing evidence establishing that the asserted claims fail to satisfy the written description requirement such that a reasonable jury would not have a legally sufficient evidentiary basis to find for Amgen.  Under the patent statute, "[t]he specification shall contain a written description of the invention ... in such *full, clear, concise, and exact terms* as to enable any person skilled in the art to which it pertains ... to make and use the same."  35 U.S.C. §112(a) (emphases added).  The written description requirement ensures "that the inventor actually invented the invention claimed."  *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373 (Fed. Cir. 2017) (citing *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).  "To show invention, a patentee must convey in its disclosure that it 'had possession of the claimed subject matter as of the filing date.'"  *Id.*  "Demonstrating possession 'requires a *precise definition*' of the invention."  *Id.* (emphasis added).  "Functionally defined genus claims," like those at issue here, can be "inherently vulnerable to invalidity challenge for

lack of written description support." *Id.* at 1301.  That is because such claims often "simply claim a desired result . . . without describing species that achieve that result," and thus represent an impermissible "attempt[ ] to preempt the future before it has arrived." *Ariad*, 598 F.3d at 1349, 1353.

Where, as here, "a patent claims a genus using functional language to define a desired result," the patent specification must "show[] that the applicant has invented species sufficient to support a claim to the functionally-defined genus." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1299 (Fed. Cir. 2014).  "To provide th[e] 'precise definition' for a claim to a genus, a patentee must disclose 'a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can "visualize or recognize" the members of the genus.'" *Amgen*, 872 F.3d at 1373 (quoting *Ariad*, 598 F.3d at 1351).  Furthermore, in the antibody context specifically, the patent specification "must at least describe some species representative of antibodies that are structurally similar to" infringing antibodies.  *AbbVie*, 759 F.3d at 1301.

The evidence demonstrates that Amgen has not satisfied either the "representative species" or "common structural features" tests necessary to satisfy the written description requirement.

### A. The Evidence Demonstrates that Amgen Has Not Satisfied the "Representative Species" Test

Under Federal Circuit law, "[o]ne needs to show that one has truly invented the *genus*, *i.e.*, that one has conceived and described sufficient representative species encompassing *the breadth of the genus*."  *AbbVie*, 759 F.3d at 1300 (emphases added).  Otherwise, "one has only a research plan, leaving it to others to explore the unknown contours of the claimed genus."  *Id.* The clear and convincing evidence adduced at trial demonstrates that no reasonable jury would

2

have a legally sufficient evidentiary basis to conclude that Amgen's patent claims "describe[] sufficient representative species encompassing the breadth of" the broad claims that Amgen asserts.

For example, the parties agree that the antibodies invented by Regeneron, Merck, and Pfizer are within the scope of the claims. Trial Tr. 151:5-8. These "competitor antibodies" differ from the antibodies disclosed in the Amgen patents in two fundamental ways: (1) the nature and number of claimed residues to which they bind, and (2) the amino acid sequences of the antibodies. The competitor antibodies bind to 11 to 14 of the claimed residues. *Id.* at 300:19-22. ███ Dr. Boyd testified that the Amgen antibodies are not representative of the competitor antibodies because they do not contact as many residues as the competitor antibodies. *Id.* at 240:5-14; 300:24-301:3; 301:16-20.

Claim 7 of the '165 patent requires only that an antibody bind to at least D238 and block the binding of PCSK9 to the LDLR. ███

Additionally, Amgen's experts admitted that the claims cover examples that do not exist. Dr. Rees admitted that the claims would cover an antibody that binds to only two amino acids,

3

V380 and D238, but that he didn't "believe it would exist." Trial Tr. 795:24-796:21. ▮

▮

▮

Furthermore, Defendants' experts, Drs. Boyd and Eck, both testified that the antibodies disclosed in Amgen's patents are not representative species of the competitor antibodies—including Praluent—because their amino acid structures are not similar. Trial Tr. 236:8-10 (Boyd); 423:11-424:3 (Eck); *see AbbVie*, 759 F.3d at 1301. Amgen's experts admit that the sequences of the disclosed antibodies and the competitor antibodies are "completely different one from another." Trial Tr. 768:6-17; 784:18-21. Dr. Rees admitted that an antibody's amino acid sequence is its "primary structure" (Trial Tr. 781:15-782:4), and that an amino acid sequence is "a recipe." *Id.* at 790:6-8. Dr. Rees also admitted that there is no correlation between sequence and function. *Id.* at 797:22-25. Dr. Petsko testified that changing a single amino acid in an antibody's sequence can theoretically change that antibody's function, and turn an antibody that actually binds into an antibody that does not. Trial Tr. 688:21-689:1; 778:24-779:8; 781:10-14. ▮

▮

▮. Dr. Boyd testified that even if one considered Amgen's patent application to disclose 26 antibodies (although only two antibodies are disclosed by x-ray crystallography), those 26 antibodies are not representative of the full scope of the claims due to sequence differences. *Id.* at 306:14-17.

In short, the evidence presented at trial by Amgen is legally insufficient for a reasonable jury to conclude that the patents-in-suit satisfy the "representative species" test.

4

### B. The Evidence Demonstrates that Amgen Has Not Satisfied the "Common Structural Features" Test

At trial, Defendants likewise established by clear and convincing evidence that the asserted claims of the patents-in-suit fail to satisfy the "common structural features" test such that a reasonable jury would not have a legally sufficient basis to find for Amgen as to this test. The Amgen Patents fail to identify common structural features of the claimed *antibodies*. They merely identify the structural features of the target *antigen* of those antibodies, PCSK9—specifically, the amino acids on PCSK9 where the claimed antibodies bind, and argue that the antibodies that bind to those residues must share features that allow the binding to occur. But as the Federal Circuit held in this very case, patentees cannot "claim antibodies by describing something that is not the invention, i.e., the antigen." *Amgen*, 872 F.3d at 1378.

The evidence at trial confirms that there are no structural features common to the genus that distinguish antibodies within the scope of the asserted claims from antibodies not within the scope, such that a skilled person "can visualize or recognize the members of the genus." *Amgen*, 872 F.3d at 1373. Dr. Boyd testified that Amgen does not identify any common structural features of the claimed genus of antibodies that would identify which are within the scope of the claim and which are not within the scope of the claim. Trial Tr. at 307:2-10. In comparison, Drs. Petsko and Rees only identified: (1) structural features determined by the antigen, PCSK9 (without describing the structural features of the antibody), and (2) features of the antibody that are not exclusive to the claimed genus of antibodies. Amgen's expert, Dr. Petsko, did not identify any structure-function correlation beyond a circular definition of the structure via the function it performs. Trial Tr. at 698:22-699:2 ("I think about it in terms of the structure-function relationship. The antibody has a structure that allows it to bind to one or more residues on the sweet spot and blocks strongly. So I don't -- *I try not to really separate those things when*

5

*I'm talking about this issue*." (emphasis added)); *cf. Amgen*, 872 F.3d at 1378.

The evidence demonstrates that knowing where an antibody must bind to an antigen (which is all that the patents provide) reveals nothing whatsoever about that specific genus of antibodies' structures, and that one cannot create an antibody just from knowing the structure of an antigen or the binding sites on that antigen. For example, Amgen's expert, Dr. Rees, said that "when these two antibodies come together here in this way, the antibody has to have a structure, the PCSK9 has a structure, and in order for these two to bind in this way, there has to be a structural element involved." 725:8-15. And that "the common structural feature is that antibodies that bind across the sweet spot here must have complementary features that enable them to bind across that sweet spot." 772:18-21. But this tautology provides no information to one of ordinary skill in the art beyond the functional result of binding to the claimed residues on PCSK9.

To the extent that Amgen's experts attempt to describe any features on the antibodies, Amgen's experts rely on comparisons of the crystal structures of Praluent (Regeneron's antibody, alirocumab) and ▮ as well as the crystal structures of the Pfizer and Merck post-priority date antibodies to determine the common structural features of the antibodies. Trial Tr. 787:23-789:18. However, as admitted by Dr. Rees, the crystal structures of Praluent, ▮ and the Pfizer and Merck antibodies were not available as of January 2008. *Id.* at 788:13-189:14. And "without access to the crystal structure data, of course you can't do -- generate images of this sort." *Id; see also MorphoSys AG v. Janssen Biotech Inc.*, No. 16-221-LPS, 2019 WL 337091 at *8 (D. Del. Jan. 25, 2019).

Amgen's evidence regarding the so-called "greasy patch" does not cure the fatal flaw in its attempt to satisfy the "common structural features" test. To the contrary, the evidence

6

demonstrated that "almost all antibodies have a greasy spot on their tips." Trial Tr. 804:16-18; 309:16-310:1. Accordingly, this feature would not permit a skilled person to "visualize or recognize the members *of the genus,*" *Amgen*, 872 F.3d at 1373, as opposed to nearly all antibodies, whether within the scope of the claims or outside of them.

In short, the evidence presented at trial by Amgen is legally insufficient for a reasonable jury to conclude that the patents-in-suit satisfy the "common structural features" test. Because Amgen has failed to present evidence from which a reasonable jury could find that the patents satisfy either the "representative species" or "common structural features" tests, the patents do not satisfy the written description requirement and are thus invalid.[1]

## II. NO REASONABLE JURY COULD CONCLUDE THAT THE PATENTS-IN-SUIT SATISFY THE ENABLEMENT REQUIREMENT.

Defendants adduced at trial clear and convincing evidence establishing that the asserted claims fail to satisfy the enablement requirement such that a reasonable jury would not have a legally sufficient evidentiary basis to find for Amgen. Under the enablement requirement, "the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Amgen*, 872 F.3d at 1375 (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)). The Federal Circuit's "precedents make clear that the specification must enable the *full scope* of the claimed invention." *Trustees of Boston U. v. Everlight Elecs. Co., Ltd.*, 896 F.3d 1357, 1364 (Fed. Cir.

---

[1] Amgen is unable to marshal evidence demonstrating common structural features or representative species of the claimed antibodies because it never expected that it would have to do so. Until the Federal Circuit's decision in this case, Amgen could argue to the PTO (in obtaining its patents) or to a jury (in defending the patents' validity) that it satisfied the written description requirement pursuant to the "newly characterized antigen" test—formerly a third way to satisfy the written description requirement, and one that allowed Amgen to satisfy that requirement merely by describing the antigen, *i.e.*, by describing PCSK9. But the Federal Circuit rejected that test, *see Amgen*, 872 F.3d at 1375-79, and the PTO subsequently did so as well, *see* https://bit.ly/2PZWoQK (February 22, 2018 memorandum of PTO).

2018) (emphasis added) (citing cases). The enablement requirement "ensures that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims." *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999). Therefore, "[t]he scope of the claims must be less than or equal to the scope of the enablement." *Id.*

Dr. Boyd testified that "the claims are very broad" (Trial Tr. 315:15-23), a "huge amount of experimentation" would be needed to identify all of the antibodies within the scope of the claims (*id.* at 316:1-10), very little guidance was provided by the disclosure (*id.* at 316:13-22), only two working examples were provided (*id.* at 328:8-13), the nature of the invention is limited to specific antibodies (*id.* at 328:16-24), the state of the art is "a trial and error process" (*id.* at 329:2-13), the relative skill in the art involves trial and error (*id.* at 329:16-24), and the art is unpredictable (*id.* at 331:13-19).

Amgen's evidence confirms that the specification of the patents-in-suit does not "enable the *full scope*" of its broad, functional genus claims absent "undue experimentation." Dr. Boyd testified that the total number of antibodies in the universe is about $10^{15}$, that any one of them could potentially fall within the scope of the claims, and that to determine whether they did, one would have to make and test each one. Trial Tr. 223:12-225:4. He also testified that if one followed the amino acid substitutions suggested by the patent, one would quickly reach millions of potential antibodies and much more depending on which suggestions of the January 2008 application one followed. *Id.* at 349:3-12. Dr. Rees also acknowledged that it is possible that "the millions of antibodies that Dr. Boyd described . . . continued to fall, to bind and block, of course they would anyway fall within the claims." 733:2-11. He said testing them all would result in "an enormous amount of work making millions of . . . antibodies." *Id.*

8

Dr. Rees testified that one of ordinary skill in the art would make "intelligent substitution" to existing Amgen antibodies based on the patent's disclosure to arrive at the antibodies within the scope of the claims. *Id.* at 779:23-780:9. He admitted that "the sequences of alirocumab or Praluent, is not contained in the sequences that are disclosed in the patent" and the crystal structures are also not disclosed. *Id.* at 791:1-7. Therefore, to make Praluent based on Amgen antibodies, one would need to make substitutions. Dr. Rees admitted, however, that one cannot make Praluent by making substitutions to Repatha because "[t]he only way I could do that is by copying the CDRs from alirocumab"—which are not available from Amgen's January 2008 patent application—"because no one can—no one can take an antibody and convert it into a different antibody just by doing some computer design." *Id.* at 795:12-22. In addition, Amgen witnesses admitted that the claims at issue cover embodiments that would be impossible to create. *See, e.g.*, Trial Tr. 540:19-21; 795:24-796:21; *cf. Everlight Elecs.*, 896 F.3d at 1362 (no enablement where creating permutation within claim scope was "impossible" and thus constituted "undue experimentation").

Moreover, Dr. Eck testified that "x-ray crystallography is the only technique that can give you that kind of information." Trial Tr. 408:14-16. Dr. Petsko agreed that x-ray crystallography "allows a scientist to see with atomic precision the location of where one molecule binds to another" (*id.* at 678:16-18), but that x-ray crystallography is not predictable, and depends on "[l]uck, primarily" as to whether crystals will form. *Id.* at 680:2-8.

This evidence plainly demonstrates that the specification does not enable the full scope of the claims without undue experimentation. Application of the *Wands* factors to Amgen's evidence leads to the same result. *See In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). Indeed, the circumstances here are strikingly similar to those in *MorphoSys AG v. Janssen Biotech, Inc.*,

in which Judge Stark recently granted summary judgment for defendants after finding that plaintiff's functional claims to a genus of antibodies did not satisfy the enablement requirement and were therefore invalid.  *See* No. 16-221-LPS, 2019 WL 337091 (D. Del. Jan. 25, 2019).

In sum, the evidence presented at trial is legally insufficient for a reasonable jury to conclude that the patents-in-suit satisfy the enablement requirement and are thus invalid.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for judgment as a matter of law under Rule 50(a).

Dated: February 25, 2019

Respectfully submitted,

WILKS, LUKOFF & BRACEGIRDLE, LLC

 /s/ *Scott B. Czerwonka*
David E. Wilks (Bar No. 2793)
Scott B. Czerwonka (Bar No. 4844)
Wilks, Lukoff & Bracegirdle, LLC
Lancaster Pike, Suite 200
Wilmington, DE 19805
Telephone: (302) 225-0850
Facsimile: (302) 225-0851
dwilks@wlblaw.com
sczerwonka@wlblaw.com

ARNOLD & PORTER KAYE SCHOLER LLP

Matthew M. Wolf
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
matthew.wolf@arnoldporter.com

David K. Barr
Daniel L. Reisner
Arnold & Porter Kaye Scholer LLP

250 West 55th Street
New York, New York 10019-9710
david.barr@arnoldporter.com
daniel.reisner@arnoldporter.com

STEPTOE & JOHNSON LLP

John Josef Molenda
Vishal Chandra Gupta
1114 Avenue of the Americas
New York, NY  10036
(212) 378-7540
jmolenda@steptoe.com
vgupta@steptoe.com

KIRKLAND & ELLIS LLP

Paul D. Clement
George W. Hicks, Jr.
655 Fifteenth Street, N.W.
Washington, DC  20005
(202) 879-5000


*Attorneys for Regeneron Pharmaceuticals, Inc., Sanofi, Sanofi-Aventis U.S. LLC, Aventisub LLC*

11