IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC.; AMGEN MANUFACTURING, LIMITED; and AMGEN USA INC.<br><br>Plaintiffs,<br><br>v.<br><br>SANOFI; SANOFI-AVENTIS U.S. LLC; AVENTISUB LLC, f/d/b/a AVENTIS PHARMACEUTICALS INC., and REGENERON PHARMACEUTICALS, INC.,<br><br>Defendants. | C.A. No.: 14-1317-RGA (CONSOLIDATED)<br><br>**JURY TRIAL DEMANDED**<br><br>▓▓▓▓▓▓▓▓▓▓▓▓<br><br>REDACTED - PUBLIC VERSION |

## AMGEN'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Amgen respectfully moves the Court, pursuant to Fed. R. Civ. P. 50(a), for an Order granting judgment as a matter of law for Amgen, and against Defendants.

1. The grounds for the motion include the following: Defendants failed to present a legally sufficient evidentiary basis for a reasonable juror to find for Defendants with respect to their invalidity defenses of lack of written description and enablement relating to claims 7, 15, 19, and 29 of U.S. Patent No. 8,826,165 and claim 7 of U.S. Patent Nos. 8,859,741 (the "Selected Claims" of the "Amgen Patents").

2. As a preliminary matter, Defendants failed to provide evidence that they applied the Court's claim construction when opining on whether antibodies disclosed in the Amgen Patents fall within the scope of the asserted claims. For example, Defendants' experts testified to claim interpretations at odds with the Court's claim constructions. *See, e.g.*, Trial Tr. at 194:10-14, 194:22-195:1, 199:17-21; D.I. 151. Thus, their opinions should be disregarded and cannot be relied upon to support their evidentiary burden on either written description or enablement. *See Sprint Commc'ns Co. L.P. v. Cox Commc'ns Inc.*, 302 F. Supp. 3d 597, 620 (D. Del. 2017)

(excluding expert opinions that are contrary to the court's claim construction); *Quest Licensing Corp. v. Bloomberg L.P.*, No. 14-cv-561, 2017 WL 239345, *3 (D. Del. Jan. 19, 2017) (granting summary judgment where expert's opinion did not apply the Court's claim construction).

### I. WRITTEN DESCRIPTION

3. Defendants failed to present a legally sufficient evidentiary basis for a reasonable jury to find that the Selected Claims of the Amgen Patents fail to satisfy the written description requirement by clear and convincing evidence.

4. Written description requires an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art" to determine whether the specification "describe[s] an invention understandable to that skilled artisan and show[s] that the inventor actually invented the invention claimed." *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). The requirement has also been articulated as whether a person of ordinary skill in the art would understand from the disclosure that "the inventor had possession of the claimed subject matter as of the filing date." *Id.* The law is also "clear that the written description requirement does not demand either examples or an actual reduction to practice; a constructive reduction to practice that in a definite way identifies the claimed invention can satisfy the written description requirement." *Id.* at 1352.

5. The Federal Circuit has held that a genus claim is adequately described when the patent discloses "either [1] a representative number of species falling within the scope of the genus or [2] structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Id.* at 1350.

6. Defendants advanced an incorrect legal standard to prove lack of written description and elicited testimony from their experts based on that incorrect legal standard; namely that the patentee is required to have been in physical possession of every species in a

genus as of the priority date. *See, e.g.*, Trial Tr. at 227-240, 472:18-23. This is contrary to well-established Federal Circuit law. *Ariad*, 598 F.3d at 1352.

7. Defendants failed to offer a legally sufficient evidentiary basis for a jury to conclude that the Amgen Patents fail to disclose a representative number of species falling within the scope of the genus, nor did they offer a legally sufficient evidentiary basis for a jury to conclude that the antibodies disclosed in the Amgen Patents lack common structural features common to the members of the genus.

### A. REPRESENTATIVE SPECIES

8. The Federal Circuit has explained that a "representative number of species" means "the species which are adequately described are representative of the entire genus." *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1124 (Fed. Cir. 2008). There are no bright-line rules governing the number of species that must be disclosed to describe a genus claim. *Ariad*, 598 F.3d at 1351. The specification need only disclose enough so that "one of ordinary skill in the art can visualize or recognize members of the genus." *Id.* at 1350.

9. The Federal Circuit has held that "every species in a genus need not be described in order that a genus meet the written description requirement." *Regents v. University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 144 (Fed. Cir. 2001) ("[A]n applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention."); *In re Wallach*, 378 F.3d 1330, 1334 (Fed. Cir. 2004) ("Description of a representative number of species does not require the description to be of such specificity that it would provide individual support for each species that the genus embraces.").

10. Indeed, the Federal Circuit has held that, depending on the particular facts at issue, sufficient written description can be found in the total absence of any disclosed species or

working examples. *Alcon*, 745 F.3d at 1190 ("There is no requirement that the disclosure contain either examples or an actual reduction to practice"). The requirement to describe a "sufficient variety of species" also does not require that the specification disclose the infringing product. *Eli Lilly*, 119 F.3d at 1568.

11. Assessing "whether a patent complies with the written description requirement will necessarily vary depending on the context" and the necessary quantum of disclosure "varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad*, 598 F.3d at 1351.

12. Whether disclosed species are sufficiently representative of later-arising embodiments, if such embodiments are relevant or admissible at all, is a highly fact-intensive question, and the Federal Circuit has explained that assessment of written description "will necessarily vary depending on the context." *Ariad*, 598 F.3d at 1351.

13. Defendants offered no evidence under the correct legal standard from which a reasonable jury could conclude that the Amgen Patents do not disclose a representative number of species in the genus. *See, e.g.*, Trial Tr. at 227-240, 472:14-23. For example, Dr. Boyd suggested that the inventor is required to explicitly express, make or be in physical possession of every representative species in a disclosed genus. *See, e.g.*, Trial Tr. at 227-240. The law on written description does not require the inventor to make or be in physical possession of each embodiment. *Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, 555 F. App'x. 961, 968 (Fed. Cir. 2014) ("But written description does not require inventors, at the time of their application for a patent, to reduce to practice and be in *physical possession* of every species.") (emphasis added); *Endo Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, 2014 WL 334178, at *28 (D. Del. June 2, 2014) ("because written description does not require reduction to practice, inventors did

not have to *physically possess* the invention or report such test results in the application.") (emphasis added).

14. Defendants offered no evidence that the antibodies disclosed in the Amgen Patents do not bind to the residues in the asserted claims are therefore not species of the claimed genus. For example, both Dr. Boyd and Dr. Eck acknowledged that they made no effort to run experiments or otherwise prove that the disclosed antibodies do not fall within the scope of the claims. *See, e.g.*, Trial Tr. at 354:24-355:6; 462:24-463:2. Dr. Boyd and Dr. Eck also failed to adequately consider all the data within the four corners of the patent when determining which antibodies bind to the residues in the asserted claims and are therefore representative species of the claimed genus of antibodies. *See, e.g.*, Trial Tr. at 323:6-324:12, 463:15-467:15; 479:4-14; *see Ariad*, 598 F.3d F.3d at 1351.

15. Defendants failed to consider the full scope of the disclosures in Amgen's Patents in assessing written description. For example, Dr. Boyd and Dr. Eck failed to consider evidence of the inherent properties of antibodies disclosed in the Amgen Patents in rendering their opinions, thus ignoring probative evidence. *Kennecott Corp. v. Kyocera Int'l, Inc.*, 835 F.2d 1419, 1422-23 (Fed. Cir. 1987) (citing *In re Nathan*, 328 F.2d 1005, 1008-09 (CCPA 1964) (evidence discovered after the filing date regarding an inherent property of a disclosed embodiment may provide additional written description support for a patent claim)).

16. Moreover, Defendants failed to introduce any evidence showing that the post-priority antibodies they relied upon (*i.e.*, Praulent, J16, 1D05, AX132) were reflective of the state of the art at the priority date of the Amgen Patents, January 9, 2008. *See Amgen v. Sanofi*, 872 F.3d 1367, 73-74 (Fed. Cir. 2017).

17.     Moreover, Defendants and their experts failed to consider the claim elements when assessing whether characteristics among exemplary antibodies were sufficiently diverse to represent the full scope of the genus under the representative species test (or sufficiently common to meet the common structural features test and instead focused on parameters such as types of non-covalent interactions). *See, e.g.*, Trial Tr. at 437:11-25. For example, Defendants offered irrelevant evidence relating to sub-classes of allegedly unrepresented antibodies where none exist by focusing on unclaimed features. *See, e.g.*, Trial Tr. at 301:9-302:20. Yet, at the same time, Defendants contend that the "competitor antibodies" are not representative of each other. *See, e.g.*, Trial Tr. at 343:11-25.

18.     Defendants bore the burden to prove lack of representative species by clear and convincing evidence. *See Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (finding the burden of proof on invalidity is "always the same, clear and convincing evidence"). Defendants failed to prove by clear and convincing evidence that the Amgen Patents fail to disclose a representative number of species of the genus claimed by the Selected Claims.

### B.     COMMON STRUCTURAL FEATURES

19.     Common structural features can be disclosed in a number of ways, "such as by structure, formula, chemical name, physical properties, or other properties" so long as the disclosure demonstrates to a skilled artisan that the inventors were in possession of the claimed invention. *Ariad*, 598 F.3d at 350.

20.     Moreover, the common structural features inquiry is a multi-faceted test that can be independently satisfied for claims with functional language by establishing a "correlation between structure and function." *Id.* A reasonable structure-function correlation may be established by the inventor as described in the specification or by what was known in the art at the time of the filing date. *Enzo Biochem v. Gen-Probe, Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002).

Scientific evidence regarding where an antibody binds to an antigen may be relevant in the context of the common structural features test. *Amgen*, 872 F.3d at 1378.

21.     Defendants failed to establish with clear and convincing evidence that the antibodies of the genus disclosed in the Amgen Patents lack common structural features. *See, e.g.*, Trial Tr. at 374:19-24; 468:21-471:2; 475:15-476:5. Defendants also failed to establish that the antibodies of the genus disclosed in the Amgen Patents fail to possess a structure-function correlation and, instead, testified that they do. *See, e.g.*, Trial Tr. at 462:16-23 ("I think it's completely fair to say that antibodies that have a structure that lets them bind to a residue in the sweet spot are very likely to block provided they do so with enough…"); *see also* Trial Tr. at 476:1-5.

## II.     ENABLEMENT

22.     Enablement is a legal determination of whether the specification contains enough information to have allowed a person having ordinary skill in the field of the technology of the patent to make and use the full scope of the claimed invention at the time of the priority date of the patent claim. 35 U.S.C. § 112; *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988). A patent need not disclose what is well known in the art. *Id.* at 735. The enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation. *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *see also Erfindergemmeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 661 (E.D. Tex 2017), *aff'd Erfindergemmeinschaft UroPep GbR v. Eli Lilly & Co.*, 739 F. App'x 643 (Fed. Cir. 2018).

23.     Determining whether experimentation is "undue" is a conclusion reached by weighing the following factors: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature

of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 314 F.3d 1313, 1335 (Fed. Cir. 1988).

24. The Federal Circuit has consistently held that "a patent specification complies with the statute even if a 'reasonable' amount of routine experimentation is required in order to practice a claimed invention, but that such experimentation must not be 'undue.'" *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999). The determination of what constitutes undue experimentation in a given case requires the application of a standard of reasonableness, having due regard for the nature of the invention and the state of the art. *In re Wands*, 858 F.2d at 737.

25. A "considerable amount of experimentation is permissible, if it is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed." *Wands*, 858 F.2d at 737. In fact, even "extensive experimentation does not necessarily render the experiments unduly extensive where the experiments involve repetition of known or commonly used techniques." *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1338-1339 (Fed. Cir. 2013) (quoting *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998)). The Federal Circuit has explained that where the relevant technology was well-known and routine in the art, there is no requirement for a patent "to provide a detailed recipe for preparing every conceivable permutation of the compound they invented." *Pfizer*, 555 F. App'x at 967.

26. An expert's unsubstantiated statements that experimentation is undue because it is "complicated" and "difficult" where it involves "repetition of known or commonly used techniques" is not sufficient to prove by clear and convincing evidence that patents are invalid

for lack of enablement. *Cephalon*, 707 F.3d at 1338 (court reversed a finding of non-enablement because the amount of experimentation, while "complicated," was not undue).

27.     To prove invalidity for lack of enablement, Defendants were required to prove by clear and convincing evidence that the claims are not enabled. They failed to do so.

28.     Defendants failed to introduce legally sufficient evidence from which a reasonable jury could conclude that the Selected Claims of the Amgen Patents are not enabled. For example, Drs. Boyd and Eck applied the wrong legal standard on enablement, suggesting that enablement requires the Amgen Patents to provide a specific recipe for every antibody covered by the claims. *See, e.g.*, Trial Tr. at 325:24-326:1 (Boyd Testimony) ("Amgen did not identify antibodies that are like the competitor ones"); *id.* at 327:2-6 ("Using its road map, was Amgen able to make Pfizer's antibody? A. No. As we have seen, in the antibodies that Amgen did discover or invent, there is nothing like the Pfizer antibody which is the one they call J16".); *see also* Trial Tr. at 330:11-331:10; *see also Pfizer*, 555 F. App'x at 967 (where generation methods were "well-known and routine to a person of ordinary skill, we agree with the district court that the inventors were not required to provide a detailed recipe for preparing every conceivable permutation of the compound they invented to be entitled to a claim covering that compound."); *AK Steel*, 344 F.3d at 1244 ("That is not to say that the specification itself must necessarily describe how to make and use every possible variant of the claimed invention, for the artisan's knowledge of the prior art and routine experimentation can often fill gaps, interpolate between embodiments, and perhaps even extrapolate beyond the disclosed embodiments, depending upon the predictability of the art.").

29.     Defendants failed to introduce evidence showing that a person skilled in the art could not make and use the full scope of the claimed invention without undue experimentation.

For example, Dr. Boyd described conventional and routine technologies for making antibodies and did not testify that they would be insufficient for the person of ordinary skill to utilize to make and use the claimed invention with the patents in-hand. *See, e.g.*, Trial Tr. at 325:19-24 ("[H]ere it's saying generate a pool of antibodies, and that's, you know, as you have seen in the patent application, they just describe standard methods that were available prior to the patent being written so they immunize the mouse, see, what you get, hope you get the kind of antibodies you want"). He merely stated that using the techniques disclosed in the Amgen Patents, it would take a long time to make every antibody in the genus. *See, e.g.*, Trial Tr. at 330:15-331:3. Defendants' experts cited to no problem or hindrance that a person of ordinary skill in the art would confront in repeating the examples of the patent or in using any of the alternative methods described in the patent or known in the art to develop the claimed antibodies. Instead, they testified that the Amgen Patents employed standard techniques. *See, e.g.*, Trial Tr. at 329:18-21 (Boyd Testimony) ("But the methods that they talk about for making antibodies, they're just general ones. They're methods that were known in immunology and science well before the patent application was written"). Evidence regarding how much time it would take to make every conceivable permutation of the invention is not relevant to the enablement analysis. *See, e.g.*, Trial Tr. at 330:18-22 (Boyd Testimony) ("You could be immunizing mice for a hundred years. There might be kind of ***an antibody*** that you didn't come up with in that time period and no one else came up with but it might be still out there waiting to be found if you went one year longer") (emphasis added). *See Cephalon*, 707 F.3d at 1338-1339 (quoting *Johns Hopkins*, 152 F.3d at 1360). Instead, Defendants carry the burden of proof that a person of ordinary skill in the art, following the procedures in the Amgen Patents, would not be able to

make the claimed invention without undue experimentation. *See Sciele Pharma*, 684 F.3d at 1260.

30. Indeed, the Federal Circuit has reversed a finding of non-enablement on grounds similar to those alleged by Defendants, holding that because methods of screening and methods of making monoclonal antibodies were well known in the art, "there was not a shred of evidence that undue experimentation was required by those skilled in the art to practice the invention." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986). It is well-established that the "nature of monoclonal antibody technology is that it involves screening hybridomas to determine which ones secrete antibody with desired characteristics." *Wands*, 858 F.2d at 740. When the application of well-known methods in the monoclonal antibody arts to make antibodies requires only routine screening that does not amount of undue experimentation. *Id.* at 736.

31. Defendants have also failed to offer any evidence that the roadmap laid out in the Amgen Patents to generate claimed antibodies does not provide a shortcut leading the person of ordinary skill in the art to the claimed antibodies or that following such roadmap would lead to undue experimentation. Instead, Dr. Boyd merely testified that the roadmap laid out in Amgen's patents was unnecessary to practice the claimed invention. *See, e.g.*, Trial Tr. at 324:16-326:24, 353:23-354:20.

32. Accordingly, Amgen respectfully requests that the Court enter judgment as a matter of law on enablement.

### III. CONCLUSION

For the reasons explained above, Amgen respectfully requests judgment as a matter of law that the claims 7, 15, 19, and 29 of U.S. Patent No. 8,826,165 and claim 7 of U.S. Patent

Nos. 8,859,741 are not invalid for lack of written description or enablement under 35 U.S.C. § 112, ¶ 1.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Michelle M. Ovanesian (No. 6511)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
movanesian@ycst.com

*Attorneys for Amgen Inc., Amgen Manufacturing, Limited, and Amgen USA Inc.*

OF COUNSEL:

MCDERMOTT WILL & EMERY LLP
William G. Gaede, III
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
(650) 815-7400

Sarah C. Columbia
K. Nicole Clouse
28 State Street
Boston, MA 02109-1775
(617) 535-4074

Rebecca Harker Duttry
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001
(202) 756-8000

LONDON & MEAD
Christopher B. Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334

CRAVATH, SWAINE & MOORE LLP
Keith R. Hummel
David N. Greenwald
Lauren A. Moskowitz
Geoffrey G. Hu
Sharonmoyee Goswami
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019-7475
(212) 474-1000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Lauren Martin
Megan Y. Yung
111 Huntington Ave., Suite 520
Boston, MA  02199
(617) 712-7100

Dated:  February 22, 2019

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on February 22, 2019, I caused to be electronically filed a true and correct copy of Amgen's Motion for Judgment as a Matter of Law with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

David E. Wilks
Scott B. Czerwonka
Wilks, Lukoff & Bracegirdle, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805
dwilks@wlblaw.com
sczerwonka@wlblaw.com

I further certify that on February 22, 2019, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL (by agreement of counsel):**

Matthew M. Wolf
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Matthew.wolf@arnoldporter.com

David K. Barr
Daniel L. Reisner
Abigail Langsam
Michael A. Lynn
250 West 55th Street
New York, NY 10019-9710
David.barr@arnoldporter.com
Daniel.reisner@arnoldporter.com
Abigail.langsam@arnoldporter.com
Michael.lynn@arnoldporter.com

Deborah Fishman
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807

John Josef Molenda
Vishal Chandra Gupta
Siew Yen Chong
Richard Praseuth
Robert Greenfeld
Steptoe & Johnson LLP
1114 Avenue of the Americas
New York, NY 10036
jmolenda@steptoe.com
vgupta@steptoe.com
schong@steptoe.com
rpraseuth@steptoe.com
rgreenfeld@steptoe.com

Michael Flynn-O'Brien
1891 Page Mill Road, Suite 200
Palo Alto, CA 94304
mflynnobrien@steptoe.com

Kiley White
1330 Connecticut Avenue, NW

Deborah.fishman@arnoldporter.com

Paul D. Clement
George W. Hicks, Jr.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Seventh Floor
Washington, DC  20005-5793
Paul.clement@kirkland.com
George.hicks@kirkland.com

Washington, DC 20036
kwhite@steptoe.com

*/s/ Melanie K. Sharp*
_____
Melanie K. Sharp (No. 2501)